UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| _____ ) | | |
| ) | | |
| ETTA FANNING, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | Civil Case No. 18-cv-803 | |
| ) | | |
| CITY OF SHAVANO PARK, TEXAS ) | DECLARATORY AND INJUNCTIVE | |
| Defendant. ) | RELIEF SOUGHT | |
| ) | | |
| _____) | | |

**<u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

TO THE HONORABLE JUDGE XAVIER RODRIGUEZ:

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff ETTA FANNING moves for summary judgment for the reasons that follow and for any additional reasons that may appear of record at any hearing on this motion.

TABLE OF CONTENTS

Factual and Regulatory Background ..................................................................................3

I.        Summary of the City of Shavano Park's Sign Code ............................................3

II.       Summary of The City of Shavano Park's enforcement of the Sign Code against Plaintiff Fanning and her desire to display additional signage .........................................5

Argument ........................................................................................................................8

I.        Summary Judgment Standard .............................................................................8

II.       Plaintiff has Standing .........................................................................................9

III.      The Sign Code is subject to strict scrutiny because it is content based ...............11

      A.   Under a Strict Scrutiny analysis the Sign Code is facially unconstitutional.........14

            i.     The Sign Code does not serve a compelling interest ..................................15

                  1. Aesthetics and traffic safety are not recognized as compelling interests in the First Amendment Context ...................................................................17

                  2. Defendant's remaining purported interests are nothing more than bare recitations and are not compelling interests ...............................................18

            ii.    The Sign Code is not narrowly tailored ...................................................19

                  1. The Sign Code's distinction between public and private signs also means it is not narrowly tailored ..........................................................................21

IV.       The Sign Ban With Respect to Banner Signs At the "Entrances" to Neighborhoods Is Further Invalid Because It Is Unconstitutionally Vague and Constitutes Speaker-Based Censorship......................................................................................................21

V.        Remedies...........................................................................................................22

Conclusion.......................................................................................................................24

Certificate of Service .......................................................................................................25

FACTUAL AND REGULATORY BACKGROUND

Plaintiff challenges the City of Shavano Park's Sign Code, codified at chapter 24 of the City's code of ordinances (and attached as Exhibit 8), as a violation of her First Amendment rights.

## I.     Summary of the City of Shavano Park's Sign Code[1]

The Sign Code functions through an all-out ban on signs "on private property located in the City," Code § 24-3, declaring their posting to be unlawful and punishable as a public nuisance, § 24-15, unless the sign falls within one of the enumerated exceptions and satisfies the specific requirements applicable to that category.  Section 24-6 provides five categories of sign exceptions permissible in "residential zoning districts."   These include: (1) temporary commercial development signs allowed to developers (with no temporal limitations); (2) the "one sign" exception allowed to "[e]ach residential property" for up to 60 days annually; (3) student achievement signs; (4) sale or lease signs; (5) "voting period" signs; and (6) "banner signs."  Code §§ 24-6, 24-7.  For each of these sign categories, various restrictions are imposed that include a mixture of the size of the sign(s), location on the property, backlighting, sign height, and/or temporal limitations. *Id.*  In the case of "development" signs, each sign may be as large as sixty square feet in size and may be displayed until ninety-five percent of lots have been sold. *Id.* at § 24-6.  For voting period signs, each individual sign must be no more than twenty-four square feet and all voting period signs on a lot must be cumulatively no more than thirty-six feet. *Id.* Additionally, voting period signs may only be displayed for the sixty days preceding "the start of the voting period" to the first day following the end voting period. *Id.*  The "one sign" exception also carries separate restrictions, with its size being limited to six square feet and may only be displayed for sixty days of the year. *Id.*  Residential sale or lease signs are treated

---

[1] Plaintiff provides a summary of the most relevant provisions of the Sign Code here, but provides a fuller discussion in her complaint. Compl. ¶ 22-40.

more favorably than the "one sign" allowed on residential properties in that they are not subject to a hard temporal limit (they are instead permitted "[d]uring the period the residential property is listed for sale or lease"), and "[r]esidential lots fronting on two streets shall be allowed one sign facing each street." *Id.* In other words, a residential property owner is afforded two signs, for a potentially much longer duration, for commercial speech, whereas political or issue speech is relatively disfavored on the same lot. Similarly, "student achievement" signs have no temporal limitation, but may be no larger than four square feet and "within ten feet of the front facing primary residence." *Id.* Banner signs, such as those displayed by the Plaintiff, also have their own unique restrictions:

> Banner signs in residential zoning districts are allowed subject to the following requirements:
>
> (1)   Banner signs may be erected by property owners' associations as defined by the Texas Residential Property Owners Protection Act.
>
> (2)   Each property owner's association may erect one banner sign at each entrance.
>
> (3)   Each residential property owner may erect one banner sign.
>
> (4)   No banner sign may be erected more than seven days prior to the first Tuesday in October.
>
> (5)   Banner signs must be removed by 11:59 p.m. the day following the first Tuesday in October.
>
> (6)   Banner signs on public property shall be governed by a separate City policy.

*Id.* at § 26-7. The banner sign provision incorporates several additional features challenged herein, aside from the basic content distinction.

First, the banner sign provision makes speaker based distinctions, allowing only for "property owners' associations" and "residential property owner[s]" to place a banner

sign. Subsection (6) adds to these speaker based distinctions by clarifying that the Defendant is not comparably restrained in placing banner signs on city property by the Sign Code. Second, neither the terms "entrance" or "banner sign" are defined anywhere in the code.  *Id.*  Third, banner signs have a unique temporal limitation and are only allowed for "seven days prior to the first Tuesday in October." Id. §§ 24-7(3), (4).  While this severe temporal restriction is untethered to any particular event on its face, the intent and effect of this provision is to permit "banner signs" related to National Night Out, which is celebrated annually on first Tuesday in October.

II.     **Summary of The City of Shavano Park's enforcement of the Sign Code against Plaintiff Fanning and her desire to display additional signage.**

Plaintiff Etta Fanning is a resident of the City of Shavano Park. **Exhibit 1** (Fanning Deposition excerpts).  She is active in the community. She has served on the city council from 2010 to 2014, currently serves as the coordinator of the neighborhood watch program, and was the Republican political precinct chair for Shavano Park from 2010 to 2019.  Fanning Depo. 8:4-5; 14:18-25; 45:15-25; 46:1-14.  During her political campaigns, Plaintiff has placed signs in compliance with the Sign Code's voting period sign exception. Fanning Depo. 46:4-14.

As previously noted, Plaintiff desires to engage in other advocacy for current community issues or matters of public concern.  This includes, but are not limited to, alerting residents of Shavano Park on various community events, such as the annual Bentley Manor Fourth of July block party, and signs for political causes. Fanning Depo. 68:6-16.

As described in the live Complaint at ¶¶ 42-69, the Sign Code prohibits Plaintiff from placing the desired signs on her property or other citizens' private property with their permission, save for extremely limited and content based exceptions.  As a result of the foregoing, Plaintiff is

suffering past and ongoing harm, and will continue to suffer irreparable harm as a result of the Sign Code, unless it is declared unlawful and enjoined by this Court.

The City of Shavano Park's enforcement of the Sign Code has injured Plaintiff and continues to chill her speech.  A longtime resident of Shavano Park, Plaintiff has hosted block parties in celebration of the Fourth of July and veterans for over nine years. Fanning Depo. 56:3-8.  In order to raise awareness of these neighborhood parties, Plaintiff hung multiple signs and banners around Bently Manor each year. Fanning Depo. 56:3-8.  Plaintiff has previously displayed signs in her own yard for Fourth of July block parties and National Night Out. Fanning Depo. 51:3-9.

On July 3, 2018, Homeowners Association ("HOA") President, Adam Holzhauer, left a voicemail with City Manager Bill Hill complaining about signs displayed for the 2018 Fourth of July Block Party. **Exhibit 2**.  In his voicemail, Mr. Holzhauer specifically requested that Mr. Hill forward to him a copy of the Sign Code so that he could give it to the Plaintiff. *Id.*  However, no further action was taken as the 2018 Fourth of July block party was rained out. Fanning Depo. 17:11-20.

In preparation for the July 28, 2018, block party ("Raincheck Party") Plaintiff purchased two banner signs, whistles, and safety bracelets. Fanning Depo. 15:18-21; 16:1-10.  All costs and expenses for the block parties are born by volunteers, including Plaintiff, or charitable donations. Fanning Dep. 15:15-25.  In conjunction with neighbors, she displayed flags and other festive decorations in front of her and others homes throughout the neighborhood. Fanning Depo. 14:6-15.  Plaintiff placed the two banner signs on HOA property at the entrances/exits to Bently Manor, and three smaller yard signs. Fanning Depo. 20:23-25; 21:1-11.  Desiring to place the

three yard signs in neighbors' private yards, Fanning requested permission from homeowners to display them. Fanning Depo. 22:4-11.

On July 26, 2018, Ray Lacy, a law enforcement officer for the Defendant, observed the three yard signs and the banner signs displayed by Plaintiff. **Exhibit 3** (City Ordinance Violation Reports from M. Kerr and R. Lacy). Determining the signs to be in violation of the Sign Code, the Officer Lacy confiscated Plaintiff's banner and yard signs, holding them "as evidence until such time as a municipal court summons is issued, or the statute of limitations on the Class C violation occurs." Exhibit 3; Fanning Depo. 18:10-17; 21:24-25; 22:1. After the City Manager personally investigated the signs, the Defendant then "determined one [yard] sign was in fact on private property and not in violation [of the Sign Code]", and returned it the homeowner's yard. **Exhibit 4** (July 27, 2018, text conversation between Etta Fanning and Bill Hill); Exhibit 2 44:7-12; **Exhibit 5** (Hill Depo. 16:5-25; 17:1-4). Attorney for Defendant, Daniel Santee, confirmed in a July 27, 2018, email that the Defendant believed that the two banner signs and two of the yard signs were in violation of the Sign Code, but that in their estimation one yard sign was on private property and therefore not in violation. Fanning Depo. 65:17-24; **Exhibit 6** (July 27, 2018, email from Daniel Santee to Jerad Najvar). Plaintiff's remaining signs were never returned to her. Fanning Depo. 43:4-7; 57:17-24.

Again in 2019, Plaintiff desired to display signs notifying residents of the annual block party and advocating various other causes or ideas. Plaintiff has expressed the desire to place banner signs on her and her neighbors' property to notify residents of the Fourth of July Block Party and other messages outside of the two week National Night Out allotment. Fanning Depo. 32:14-25; 33:1-9; 34:4-6; 59:18-25; 60:1-10. In fact, Plaintiff was informed by a representative of the HOA, Camille Belcher, that they had no issue placing her banner signs for the July 2019

block party, but that the Defendant would not allow it. Fanning Depo. 61:1-25. However, the HOA did give Plaintiff permission to display yard signs allowable under the Sign Code. Fanning Depo. 62:1-4. Outside of granting a variance, the Defendant does not allow exemptions or exceptions in displaying of signs out of compliance to the Sign Code. Hill Depo. 7:15-24.

To this day, Plaintiff is constrained from placing banner and yard signs by the Defendant's Sign Code and only refrains from doing so on account of the fact that they will be confiscated and she will be at risk of fines under the Sign Code's penalty provisions. If the Sign Code allowed, Plaintiff would place both banner signs and yard signs on her own property and neighbors' property with their permission. Fanning Dep. 58:10-25; 59:1-2; 58:18-24; 60:1-10; 68:6-16.[2] Additionally, Plaintiff desires to display political signs that are larger than allowable under the Sign Code. Fanning Depo. 67:7-9.

ARGUMENT

## I.  Summary Judgment Standard

Summary judgment is appropriate "where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Breen v. Texas A&M Univ.,* 485 F.3d 325, 331 (5th Cir. 2007) (citing Fed. R. Civ. P. 56(c)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1423 n.11 (5th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

---

[2] "Sure. I want to put signs up to invite people to the events that we have to build our community. I want to put signs up for an election or for a neighborhood event, signs up regarding I don't want signs to be selective. If you're Suzy on the basketball team you can put up a sign, but if you're a Bentley Manor neighbor you can't put up a sign or a banner to invite people to a party. The signs are restrictive and they are selective and they are enforced selectively, and I would like for that to stop because I think our citizens deserve better." Fanning Depo. 68:6-16.

The nonmoving party's bare allegations, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247-48. Moreover, conclusory allegations unsupported by specific facts will not prevent an award of summary judgment; the nonmovant cannot rest on his allegations to get to a jury without any significant probative evidence tending to support his position. *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*, 40 F. 3d 698, 713 (5th Cir. 1994). If a reasonable jury could not return a verdict for the nonmoving party, then summary judgment is appropriate. *Liberty Lobby, Inc.*, 477 U.S. at 248. The nonmovant's burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (internal quotations omitted). Furthermore, it is not the function of the court to search the record on the nonmovant's behalf for evidence which may raise a fact issue. *Topalian v. Ehrman*, 954 F.2d 1125, 1137 n.30 (5th Cir. 1992). Therefore, "although we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the nonmoving party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000) (internal quotation omitted).

## II.        Plaintiff has Standing

To satisfy Article III standing requirements, a plaintiff must show: (1) he has suffered an injury in fact to a legally protected interest that is (a) concrete and particularized and (b) actual or imminent (as opposed to conjectural or hypothetical); (2) the injury is fairly traceable to the challenged statute; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC),*

*Inc.*, 528 U.S. 167, 180-81 (2000). *Allen v. Wright*, 468 U.S. 737, 750-52, (1984); *see also*

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185. For First

Amendment purposes, "[c]hilling a plaintiff's speech is a constitutional harm adequate to satisfy

the injury-in-fact requirement." *Freedom Path, Inc. v. Internal Revenue Serv.*, 913 F.3d 503, 507

(5th Cir. 2019) (citing *Houston Chronicle Publ'g Co. v. City of League City*, 488 F.3d 613, 618

(5th Cir. 2007)).

Here, Plaintiff has been injured by both the past confiscation of her signs and by the

continued chilling of her speech. Plaintiff personally desires to place various signs on her private

property and private property of other residents with their permission. Fanning Depo. 58:10-25;

59:18-25; 60:8-10; 67:7-8. Plaintiff desires to place non-campaign related signs in excess of the

Defendant's "one sign" policy and sixty day temporal restraints. Compl. ¶¶ 37-38; Fanning

Depo. 68:5-16. Additionally, based on the Defendant's history of removing her signs and

continuing enforcement of the Sign Code. Compl. ¶¶ 11-21; Fanning Depo. 43:4-7; 57:17-24;

61:1-25; Hill Depo. 7:15-24.  These facts reflect the injury-in-fact necessary for a challenge

under the First Amendment. Plaintiff has shown that her speech has been chilled by the

Defendant's Sign Code.

Plaintiff continues to desire to post signs that currently prohibited by the Sign Code either

due to their size, numerosity, location, or the time of their posting. Fanning Depo. 58:10-25;

59:18-25; 60:8-10; 67:7-8. The Defendant has made clear that it strictly enforces the Sign Code

and will continue to do so. Plaintiff's chilled speech alone represents a cognizable injury for

standing purposes. *Freedom Path, Inc.,* 913 F.3d at 507.

Additionally, Shavano Park residents are also injured because they are deprived of the

right to hear Plaintiffs' message regarding the merits of various matters of public concern. The

free speech and associational rights of others not before the Court will be similarly infringed as the challenged provisions are applied to other Shavano Park residents and enforced by these Defendants. *See Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974); *Catholic Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 423-424 (5th Cir. 2014).

Plaintiff's injuries are directly traceable to the Sign Code and would be redressed by a declaratory judgment and injunction preventing the Defendant from imposing the unconstitutional ordinance.

**III.     The Sign Code Subject to Strict Scrutiny Because it is Content Based**

The Supreme Court has clearly and unequivocally established that sign codes requiring a sign to be read before determining the restrictions applicable is facially a content based restriction. *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015). "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Id.* at 2228. Strict scrutiny "requires the [g]overnment to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reagan Nat'l Advert. of Austin, Inc. v. City of Cedar Park*, 387 F. Supp. 3d 703, 715 (W.D. Tex. 2019), *reconsideration denied*, AU-17-CA-00717-SS, 2019 WL 3845455 (W.D. Tex. Aug. 15, 2019); *Reed*, 135 S. Ct. at 2231. According to the Supreme Court:

> This type of ordinance may seem like a perfectly rational way to regulate signs, but a clear and firm rule governing content neutrality is an essential means of protecting the freedom of speech, even if laws that might seem "entirely reasonable" will sometimes be "struck down because of their content-based nature."

*Reed*, at 231. "A law can be content based in either of two ways: (1) by distinguishing speech by the topic discussed; and (2) where the government's purpose or justification for enacting the law depends on the underlying 'idea or message expressed'—i.e., the law is facially content neutral,

but the motives in enacting it were content based. "Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny." *Auspro Enterprises, LP v. Texas Dep't of Transp.*, 506 S.W.3d 688, 694 (Tex. App.—Austin 2016, no pet.), review granted, judgment vacated w.r.m. (Apr. 6, 2018) (citing *Reed* 135 S. Ct. at 2228).  It is exceedingly clear that a sign code that "imposed different restrictions on outdoor signs based on the signs' message" is content based if the regulation targets or limits anyone seeking to engage in a specific type of speech. *Thomas v. Schroer*, 248 F. Supp. 3d 868, 872 (W.D. Tenn. 2017), reconsideration denied, 13-CV-02987-JPM-CGC, 2017 WL 6489144 (W.D. Tenn. Sept. 20, 2017).[3] Content based restrictions are presumptively unconstitutional.  *Reed, supra,* at 2226.

Courts within Texas have also recognized that sign codes that require reading the sign to determine what strictures to apply are content based and subject to strict scrutiny. *Auspro Enterprises, LP*, 506 S.W.3d at 688 (vacating judgment due to Texas Legislature amending highway sign code to conform to First Amendment principles); *Reagan Nat'l Advert. of Austin, Inc.*, 387 F. Supp. 3d at 714. As in the case here and in *Reed*, *Auspro* concerned a state-wide sign code based on a complete ban on outdoor signs with specific content based restrictions, such as those previously permitted. *Auspro Enterprises, LP*, 506 S.W.3d at 691. Notably, the Texas Highway Beautification Act made a near identical exceptions for political signs if they were only displayed within ninety days prior to, and ten days after an election. *Id.* at 691. The plaintiff had placed a Ron Paul campaign sign outside these limitations and refused to take it down, leading

---

[3] Numerous courts have recognized that *Reed* requires any sign code that makes noncommercial content based distinctions must be analyzed under strict scrutiny. *See Act Now to Stop War & End Racism Coal. & Muslim Am. Soc'y Freedom Found. v. D.C.*, 846 F.3d 391 (D.C. Cir. 2017), cert. denied sub nom. *Muslim Am. Soc'y Freedom Found. v. D.C.*, 138 S. Ct. 334 (2017); *Cent. Radio Co. Inc. v. City of Norfolk, Va.*, 811 F.3d 625 (4th Cir. 2016); *Wagner v. City of Garfield Heights*, 675 Fed. Appx. 599 (6th Cir. 2017); *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192 (9th Cir. 2016); *Citizens for Free Speech, LLC v. County of Alameda*, 194 F. Supp. 3d 968 (N.D. Cal. 2016); *Geft Outdoor LLC v. Consol. City of Indianapolis & County of Marion, Indiana*, 187 F. Supp. 3d 1002 (S.D. Ind. 2016); *Int'l Outdoor, Inc. v. City of Troy*, 17-10335, 2017 WL 2831702 (E.D. Mich. June 30, 2017), reconsideration denied, 17-10335, 2017 WL 6512550 (E.D. Mich. Dec. 20, 2017); *Marin v. Town of Se.*, 136 F. Supp. 3d 548, 554 (S.D.N.Y. 2015).

the Department of Transportation to seek an injunction in Travis County District Court. *Id.* at 691. To the district court this content based regime meant that "[i]n Reed's wake," the "principal issue [was] not whether the Texas Highway Beautification Act's outdoor-advertising regulations violate[d] the First Amendment, but to what extent." *Id.* Likewise, a court in the Western District of Texas has found that a sign code was content based, solely for applying differing restrictions to on and off premises signs. *Reagan Nat'l Advert. of Austin, Inc.*, 387 F. Supp. 3d at 714.

The Sign Code contains virtually identical restrictions and actually goes further than the unconstitutional code in *Reed* and *Auspro* in making content based restrictions, and therefore must be subject to strict scrutiny. The Sign Code makes both the "obvious" content based restrictions and those "more subtle, defining regulated speech by its function or purpose." *Reed*, 135 S. Ct. 2227. Chapter 24 of the Sign Code completely bans signs on private property unless they fall into one of the many content based exceptions. Code §§ 24-3; 24-6. Among these exceptions are exceptions for: (1) temporary signs noting a "plat or development" to be removed when "95 percent of the lots" are sold; (2) a single sign exception for 60 days of the year; (3) two "student achievement" signs; (4) a single sale or lease sign; (5) "voting period" signs that may be displayed 60 days prior to an election that are subject to an individual and aggregate size limitation; and (6) a single "banner sign" limited to an eight day period to be placed by "property owners' associations." Code §§ 24-6, 24-7. The Sign Code places extensive restrictions on signs based on the "obvious" content distinctions (e.g. the differing treatment of voting signs and student achievement signs), and the "more subtle" content based restrictions, as can be seen by the special "banner sign" exception meant specifically to accommodate signs promoting National Night Out. Compl. ¶¶ 68-69.[4] Each category of sign is further subjected to differing size, location, or temporal requirements based on exclusively on the content of the sign. Code §§ 24-6,

---

[4] For the exact language of the provisions in question, see Compl. ¶¶ 57-58, 67.

24-7.  When a code enforcement officer sees a potential violation he must read and determine the content of a sign before determining what temporal, size, and location requirements apply to the sign.

The Defendant asserts that the Sign Code is "constitutional and not in violation of the First Amendment," while citing *Reed*, Def's Original Answer at 6 (ECF No. 22), despite the fact that the Sign Code directly conflicts with *Reed*'s holding. *Reed*, 135 S. Ct. 2232 (stating that while a sign code "narrowly tailored to the challenges of protecting [] safety. . . might survive strict scrutiny.  The signs at issue in this case, including political and ideological signs and signs for events, are far removed from those purposes . . . they are facially content based and are neither justified by traditional safety concerns nor narrowly tailored.").

### A.  Under a Strict Scrutiny analysis, the Sign Code is facially unconstitutional

In order to survive strict scrutiny, the government has the burden of showing the law in question serves a compelling interest *and* it must be narrowly tailored to serve that interest." *Reed*, 135 S. Ct. at 2231.  To survive strict scrutiny a government defendant must "specifically identify an 'actual problem' in need of solving, and the curtailment of free speech must be actually necessary to the solution. *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 799 (2011) (internal citations omitted).  Strict Scrutiny is "a demanding standard" and "[i]t is rare that a regulation restricting speech because of its content will ever be permissible." *Id.* However, even when the government has shown a compelling interest, a law is not narrowly tailored when it is underinclusive.  *Reed*, 135 S. Ct. at 2231.  A law cannot be "regarded as protecting an interest of the highest order, and thus as justifying a restriction on truthful speech, when it leaves appreciable damage to that supposedly vital interest unprohibited." *Id* (citing *Republican Party of Minn. v. White*, 536 U.S. 765, 780 (2002)).

### i.  The Sign Code does not Serve a Compelling Interest

The Defendant has not identified a compelling interest actually served by the Sign Code. In content-based regulation of speech, the government has the burden of showing the regulation in question is justified by a compelling interest and even if some justification is proffered, giving "a content-neutral justification for the regulation, that justification is not given controlling weight without further inquiry." *Catholic Leadership*, 764 F.3d at 425; *Neighborhood Enterprises, Inc. v. City of St. Louis*, 644 F.3d 728, 737 (8th Cir. 2011) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)).  Bare recitation of a compelling interest is not enough; rather any identified compelling interest must be actually served by the content based restrictions.  *Brown*, 564 U.S. at 799 (internal citations omitted) (finding plaintiff entitled to summary judgment when defendants' assertion that violent video games caused child violence and presented a safety risk failed to create a compelling interest absent a "direct causal link."); *Moussazadeh v. Tex. Dep't of Crim. Justice*, 703 F.3d 781, 794 (5th Cir.2013) (finding bare assertion that food policy's purpose was prison security and costs was "insufficient to establish a compelling interest"); *Williams v. Champagne*, 13 F. Supp. 3d 624, 631 (E.D. La. 2014) (denying defendants' motion for summary judgment as inmate "safety and hygiene" were not shown to be compelling interests when only supported by "bare assertions").  In other words "[w]hen strict scrutiny is applicable, the Government 'must specifically identify an actual problem in need of solving,' and the 'curtailment of [the constitutional right] must be actually necessary to the solution.' *Brown*, 564 U.S. at 799.

Here, the interests asserted by the Defendant are not compelling, but even if they were they are not served by the content based restrictions in the Sign Code.

Fanning specifically asked the Defendant what governmental interests were purportedly furthered by the content-based restrictions in the Sign Code, and the Defendant responded with a mere reference to the statements of legislative purpose included as a preface in the Sign Code ordinance when it was enacted in 2016. **Exhibit 7** (Def's. Resp. to Interrogatory No. 3). In the preface to the ordinance, the City Council stated that it "has a substantial interest in" the following purported justifications:

> … protecting the health, safety, welfare, convenience and enjoyment of the general public from injury which may be caused by the unregulated construction of signs…

> … enhancing the economic value of the landscape by avoiding visual clutter which is potentially harmful to property values and business opportunities…

> … promoting the safety of persons and property by providing that signs do not create a hazard due to collapse, fire, collision, weather or negligence…

> … protecting the safety and efficiency of the City's transportation network by reducing the confusion or distraction to motorists and enhancing the motorists' ability to see pedestrians, obstacles, other vehicles, and traffic signs…

> … providing for consistent, fair, and content neutral application and enforcement of regulations pertaining to signs and to ensure that the constitutionally guaranteed right of free speech is protected…

> … protecting adjacent and nearby properties from the impact of lighting, size, height and location of signs . . .

Ord. No. O-2016-010 (**Exhibit 8**).[5] Code § 24-1 additionally asserts similar purposes of the Sign Code, including public safety and welfare, various aesthetic aims, ease of pedestrian movement, sound sign construction, and providing regulations that "ensure that the constitutionally guaranteed right of free speech is protected." Code § 24-1.  Stated at their broadest levels, the interests asserted by the Defendant in both the preamble and § 24-1 can be restated as: (1) aesthetics (paragraphs two and six); (2) the general interests in the health, safety, and welfare of

---

[5] Available at https://library.municode.com/tx/shavano_park/ordinances/code_of_ordinances?nodeId=797937.

the general public (paragraphs one and three); (3) traffic safety (paragraph four); and (4) to the curious aim of protecting First Amendment rights (paragraph five) by restricting them.

None of these proffered governmental interests are sufficiently compelling to satisfy strict scrutiny as they are either not a compelling interest in the First Amendment context or merely a bare recitation of an interest that *can* be compelling when actually served.  In fact, the Defendant has admitted one of the underlying motivations of some of the Sign Code's provisions was actually "to eliminate all political signs from being displayed in the city." Hill Depo. 10:22-25; 11:1-3.

Plaintiff will discuss these interests in turn.

> 1. Aesthetics and traffic safety are not recognized as compelling interests in the First Amendment context.

Plaintiff begins with aesthetics and traffic safety, as those are the two interests routinely relied upon by governments attempting to justify sign restrictions.  However, Plaintiff is not aware of any federal court that has found either interest to be a compelling justification for regulation of non-commercial signs. *See e.g. Thomas v. Bright*, 17-6238, 2019 WL 4282488, at *8 (6th Cir. Sept. 11, 2019) (finding that "no court has ever found public aesthetics to be a compelling interest" nor has the Supreme Court or "this court"  found in "the First Amendment context that traffic safety was a compelling interest."); *Cent. Radio Co. Inc. v. City of Norfolk, Va.*, 811 F.3d 625, 633 (4th Cir. 2016) ("Although interests in aesthetics and traffic safety may be 'substantial government goals, neither we nor the Supreme Court have ever held that they constitute compelling government interests.'")(internal citations omitted); *Neighborhood Enterprises, Inc.,* 644 F.3d at 737–38 ("But 'a municipality's asserted interests in traffic safety and aesthetics, while significant, have never been held to be compelling.'"); *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1267 (11th Cir. 2005) ("[T]he sign code is not narrowly

tailored to accomplish the City's asserted interests in aesthetics and traffic safety, nor has our case law recognized those interests as 'compelling'"); *Knutson v. City of Oklahoma City*, CIV-14-606-SLP, 2019 WL 3291574, at *7 (W.D. Okla. July 22, 2019) ("[A] municipality's asserted interests in traffic safety and aesthetics, while significant, have never been held to be compelling.") (quoting *Whitton v. City of Gladstone, Mo*., 54 F.3d 1400, 1408 (8th Cir. 1995)).

2.  <u>Defendant's remaining purported interests are nothing more than bare recitations and are not compelling interests</u>

The Defendant's remaining purported interests (e.g. the general interests in the health, safety, and welfare of the general public, and content neutral enforcement of a sign code to protect First Amendment rights) are likewise not compelling as they are nothing more than bare recitations and the Defendant has provided no evidence of a direct causal link between the content-based lines incorporated in the Sign Code and the purported governmental interests.

While a local government has an interest in protecting the public's general health and safety, a bare recitation of this does not create a compelling interest. Defendant asserts that Sign Code's content based distinctions further its interest in protecting the general welfare, but have presented no evidence creating the "direct causal link" as required by the *Brown* court. 564 U.S. at 799. This holds true for every one of the interests in generalized safety or welfare asserted by the Defendant. The Defendant has not, and indeed cannot, present any evidence showing that a political sign or for lease sign may be any more harmful to the general welfare than a student achievement sign may be any. Nor has it presented evidence how a banner sign in February may harm the public when one in October would not.

Next, the Defendant relies upon an assertion that the Sign Code serves the compelling interest of protecting the First Amendment rights of Shavano Park residents, the very same residents who would be able to exercise their rights, but for the Sign Code. The Defendant has it

inside out.  The Defendant's burden is to explain why it is necessary to *restrict* the *types of speech it restricts* to advance some compelling interest.  Pointing to the fact that the Sign Code permits some signs does not amount to a rationale for the banning of the signs that are banned.

Further, just as in the case of the asserting the public's general welfare, even assuming this was not an inversion of the inquiry, a bare recitation of something that *could be* a compelling interest, *does not mean it is* a compelling interest when there is no direct causal connection. *See Brown,* 564 U.S. at 799.

### ii.  The Sign Code is Not Narrowly Tailored

As noted above, no federal court has found even the most frequently-cited justifications Shavano Park could advance here—aesthetics and traffic safety—to be compelling.  But even assuming, *arguendo*, that Shavano Park had asserted a compelling interest, Fanning is still entitled to summary judgment because the Sign Code is not narrowly tailored to advance *any* asserted interest.

*Reed* and numerous other courts have proceeded by assuming, without deciding, that certain interests were compelling, simply because it was so obvious that the government could not justify the content-based distinctions it had drawn as narrowly tailored to the interest.  *Reed*, 135 S. Ct. at 2223 ("The Town cannot claim that placing strict limits on temporary directional signs is necessary to beautify the Town when other types of signs create the same problem."); *Knutson*, 2019 WL 3291574, at *7 ("Defendant [] has not shown that limiting certain categories of signs is necessary to eliminate threats to traffic safety . . . [or] to improve the aesthetics of the . . . but that limiting other categories of signs is not"); *Morris*, 350 F. Supp. 3d at 557; *Geft Outdoor LLC*, 187 F. Supp. 3d at 1015; *Foti*, 146 F.3d at 637.  A law cannot be "regarded as protecting an interest of the highest order, and thus as justifying a restriction on truthful speech,

when it leaves appreciable damage to that supposedly vital interest unprohibited." *Reed*, 135 S. Ct. at 2231 (citing *Republican Party of Minn.*, 536 U.S. at 780). The same is true here.

In *Reed*, the Supreme Court directly addressed the tailoring of each of these interests in regards to a city's restrictions on "temporary direction" signs. The Court found that the signs in question were "no greater an eyesore" than other signs that received preferential treatment. *Id.* Likewise, it saw no merit to the argument that these types of signs may pose different threats to traffic safety than other types of signs. *Id.* at 2232.

Here, the Defendant's Sign Code is not narrowly tailored as it is both underinclusive and it does not actually serve any of the compelling interests asserted. The Defendant claims that aesthetics, traffic safety, content neutral enforcement of the Sign Code itself, and the general public's well-being are all served by the Sign Code. However, there is no evidence that any of the content based distinctions in the Sign Code—whether they be disparate treatment based on who the speaker or whether the sign in question supports National Night Out—actually serve those ends, let alone are narrowly tailored to do so. The Defendant has not and cannot produce evidence that a "student achievement sign," allowable year round, may be less injurious to the public than a sign a sign advocating for fiscal responsibility. Likewise, the Defendant has not and cannot show that a banner sign that rallies the neighborhood in support of National Night Out is somehow less damaging to traffic safety or a "greater an eyesore" than one organizing an annual neighborhood block party or expressing an opinion on a matter of public concern. These content based distinctions are almost identical to those found in the *Reed* decision, and the Defendant has completely failed to meet its burden to present evidence of how the purported interests in question are served by the Sign Code or how the distinctions made have been narrowly tailored.

The analysis for each content-based distinction made by the Defendant is the same—even assuming that these interests are compelling—the sign code's restrictions are not narrowly tailored to those interests *nor* actually serve those interests.

      1.   The Sign Code's Distinction between public and private signs also means it is not narrowly tailored.

Distinguishing between public and private signs requires that the distinction serve a compelling interest and the restrictions are narrowly tailored to that end.  Even when a compelling interest has been asserted, sign codes incorporating preferential treatment which allows "'the government to build any signs without any restrictions,' while including a variety of different restrictions for different permitted signs . . . is the antithesis of narrow tailoring. *Citizens for Free Speech, LLC,* 194 F. Supp. 3d at 986 (citing *Reed*, 135 S. Ct. at 2231-32) (internal citations omitted)

Here, the Sign Code allows the Defendant to build and place any sign on public property without restriction while, in effect, placing numerous restrictions on private signs based on the content of their speech.  In its entirety, the Sign Code fails to place a single restriction on the Defendant's ability to post signs; instead, there is a single reference to a "separate City policy." However, this policy is also a further restriction on citizens' speech rather than a restriction on the Defendant. **Exhibit 9** (City Policy No. 11). City Policy No. 11 restricts private citizens from posting voting signs outside the voting period and "public awareness signs" unless direct approval is given by the City Manager. Exhibit 9.  Nothing in the policy limits the Defendant's ability to display whatever signage it desires, nor ensures that the asserted interests in the Sign Code are served.

**IV.**    **The Sign Ban With Respect to Banner Signs At the "Entrances" to Neighborhoods Is Further Invalid Because It Is Unconstitutionally Vague and Constitutes Speaker-Based Censorship.**

Referring to "banner signs in residential zoning districts," the Sign Code permits one "banner sign at each entrance," but only so long as it is erected by a "property owner's association." Code 24-7.

First, this provision is unconstitutionally vague. It is unclear exactly what area constitutes the "entrance" where only a property owner's association may display a banner sign. Additionally, it is not even clear what a "banner sign" is under the Sign Code. Without a functioning way to determine what is actually being regulated no regulation can actually be enforced. *See e.g. Neighborhood Enterprises, Inc. v. City of St. Louis, Mo.,* 4:07CV1546 HEA, 2014 WL 5564418, at *2 (E.D. Mo. Oct. 31, 2014) (finding that without a definition of "sign" a sign code's unconstitutional provisions could not be severed out to save the code as whole). Neither the definitions section or § 24-7 offer any indication as to what a banner sign actually is.

Even if this provision were free of vagueness, it is blatantly unconstitutional in that it limits the right to display a banner sign to a particular category of speaker. Only property owner's associations may place a banner at an entrance to a neighborhood, and only property *owners* have the ability to display a banner sign in their yard. Under the plain text of the Sign Code, a renter or any organization/entity that is not a property owners' association would face criminal sanction for speaking, based purely on the identity of the speaker.

## V.       Remedies

Having shown that the Sign Code is unconstitutional the only remedy left to this Court is to declare the Sign Code's sign ban unconstitutional and enjoin the Defendant from enforcing it. Severability of a local ordinance is a question of law. *City of Lakewood v. Plain Dealer Pub. Co*., 486 U.S. 750, 772 (1988). Court's faced with similar sign codes have repeatedly determined that sign codes with unconstitutional definitions or broad bans paired with exceptions cannot be

salvaged through severing the offending provisions from the code as a whole. *Thomas v. Schroer*, 248 F. Supp. 3d at 895 (W.D. Tenn. 2017), reconsideration denied, 13-CV-02987-JPM-CGC, 2017 WL 6489144 (W.D. Tenn. Sept. 20, 2017), aff'd sub nom. *Thomas v. Bright,* 937 F.3d 721 (6th Cir. 2019) and aff'd sub nom. *Thomas v. Bright*, 937 F.3d 721 (6th Cir. 2019) (finding on-premises provision of Tennessee's Billboard Regulation and Control Act of 1972 was not severable and the act as a whole was unconstitutional); *Neighborhood Enterprises, Inc.,* 2014 WL 5564418, at *2 (holding that without the definition of sign intact, the unconstitutional provisions in a sign code were not severable and entire sign code was unconstitutional); *Solantic, LLC*, 410 F.3d at 1274 (finding sign code regime of a broad ban with enumerated exceptions meant that the unconstitutional provisions were not severable and entirety of sign code must be declared unconstitutional).

Here, the Sign Code creates a content-based scheme of speech regulation analogous to those found in *Thomas* and *Solantic*.  The content based distinctions found in the exceptions to the Defendant's sign ban are unconstitutional and cannot be severed from the Sign Code as a whole while still providing Plaintiff relief.

 Regarding banner signs, if the court simply struck the temporal limitations for National Night Out from the banner sign provision, the speaker based distinctions would remain, nor would this cure the fact that there is no definition of a "banner sign" anywhere in the Sign Code. As in *Neighborhood Enterprises, Inc.,* lacking even a basic definition of what a banner sign is, the banner sign provision is already completely unenforceable. 2014 WL 5564418, at *2. Simply striking out the other unconstitutional provisions within § 24-7 cannot cure this deficiency.

Likewise, Plaintiff may only be afforded relief concerning yard signs by the Court declaring that both the exceptions contained within § 24-6 and § 24-3's sign ban unconstitutional

and enjoining the Defendant from enforcing the Sign Code.  Plaintiff has shown that she has suffered injury from the Sign Code's non-content neutral restrictions on her First Amendment rights.  If the Court's remedy was to only strike down portions of § 24-6, leaving the ban in place, these injuries would not be abated.  Leaving certain exceptions to the ban, such as the "one sign" provision, still does not allow Plaintiff to display the multiple and varied community and political signs she desires to display for more than sixty days. Nor would leaving this provision allow her to display signs in neighbors' yards, as they would be unable to display signs in excess of the sixty day single sign limitation or they would be unwilling to utilize their paltry allotment for her speech.  Only through removal of the both the exceptions and overarching prohibition will Plaintiff receive the relief to which she is entitled.

Facing unconstitutional provisions that are inseverable from the code as a whole, this court is "therefore required to find the sign code unconstitutional." *Solantic, LLC*, 410 F.3d at 1269.

CONCLUSION

For the above reasons, Plaintiff respectfully requests that the Court grant this motion for summary judgment and enter a declaratory judgment declaring the challenged ordinance unconstitutional.  Plaintiff further requests that, after any consideration the Court deems necessary of the particular additional procedures appropriate, the Court enter a permanent injunction by separate order, enjoining Defendant from enforcing the unconstitutional ordinance. Plaintiff further requests any additional relief to which they are justly entitled.

Respectfully submitted,


_____/s/ Jerad Najvar_____
Jerad Wayne Najvar
Texas Bar No. 24068079
NAJVAR LAW FIRM, PLLC
2180 North Loop West, Suite 255
Houston, TX 77018
281.404.4696 phone
281.582.4138 fax
jerad@najvarlaw.com
*Lead Counsel for Plaintiff*


## Certificate of Service

The undersigned counsel hereby certifies that on November 4, 2019, the foregoing document, and any accompanying exhibits and proposed order, was served by CM/ECF as follows:

Charles S. Frigerio
111 Soledad, Suite 840
San Antonio, TX 78205
Attorney for City of Shavano Park, Texas


_____/s/ Jerad Najvar_____
Jerad Najvar