# Transcript of the Testimony of

# Bill Hill

**Date:**

October 03, 2019

**Case:**

ETTA FANNING vs CITY OF SHAVANO PARK

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TEXAS
 2                     SAN ANTONIO DIVISION

 3
     ETTA FANNING,                  )
 4        Plaintiff,                )
                                    )
 5   VS.                            ) Civil Action
                                    ) No. 5:18-CV-0803-XR
 6   CITY OF SHAVANO PARK,          )
     TEXAS,                         )
 7        Defendant.                )

 8
     _____
 9

10                    ORAL DEPOSITION OF

11                        BILL HILL

12                     OCTOBER 3, 2019

13   _____

14

15        ORAL DEPOSITION of the witness, BILL HILL, taken at

16   the instance of the Plaintiff, in the above entitled

17   cause, before CATHEY RIMMER, Certified Shorthand

18   Reporter in and for Bexar County, Texas, on October 3,

19   2019, in the Law Offices of Charles S. Frigerio, 111

20   Soledad, Suite 840, San Antonio, Bexar County, Texas,

21   between the hours of 12:10 o'clock p.m. and 12:41

22   o'clock p.m., pursuant to the Federal Rules of Civil

23   Procedure and the provisions stated on the record or

24   attached hereto.

25                     *-*-*-*-*-*-*-*
```

```
 1                    A P P E A R A N C E S

 2

 3   APPEARING FOR PLAINTIFF:

 4       NAJVAR LAW FIRM, PLLC
         Mr. Austin M.B. Whatley
 5       2180 North Loop West, Suite 255
         Houston, Texas   77018
 6       (281) 410-2003

 7

 8   APPEARING FOR DEFENDANT:

 9       LAW OFFICES OF CHARLES S. FRIGERIO, P.C.
         Mr. Charles S. Frigerio
10       Mr. Hector X. Saenz
         111 Soledad, Suite 840
11       San Antonio, Texas   78205
         (210) 271-7877
12

13   ALSO PRESENT:

14       BILL HILL
             The Witness
15
         CATHEY RIMMER
16           Certified Shorthand Reporter
             in and for the State of Texas
17

18                    *-*-*-*-*-*-*-*

19

20

21

22

23

24

25
```

1    Q. Okay. Were you aware that she was asking for
2 permission to allow -- or let me rephrase. Were you
3 aware that she was asking permission for the HOA to
4 allow Ms. Fanning to place a banner sign?
5    A. Before I actually later talked to her, no. I
6 knew that she had questions about banner signs. I
7 cannot recall whether specifically she said in the
8 voicemail, Hey, Bill, this is Camille, I want to ask you
9 whether or not there's -- you know, if you would give
10 permission to put banner signs for this in front of the
11 HOA. I don't recall that she said that at all. I just
12 recall I have a question for banner signs, please call
13 knee. I called her numerous times. No answer. Then I
14 sent her an email I got your voicemail, please call me.
15    Q. Does the city have a set policy for exemptions
16 or a waiver to the sign code when requested?
17    A. There are no -- there are no exemptions or
18 exceptions. I mean, you can go get a variance, and
19 that's a process that goes through public hearings,
20 through planning and zoning and to the city council.
21    Q. So outside of a variance, in no situation would
22 the city allow a resident to put up a banner sign
23 outside of --
24    A. I'm not aware of one.
25    Q. Okay. So the only exception to this would be

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900    San Antonio, Texas 78232
210-697-3400      210-697-3408
8
Exhibit 5

```
 1        A.   I did.
 2        Q.   What did you review?
 3        A.   I reviewed the sign ordinance.  I reviewed the
 4   lawsuit.  I reviewed some of the -- I reviewed basically
 5   the development of sign ordinance in 2014, '15 and '16
 6   and '17.
 7        Q.   Okay.  Were you involved in discussions
 8   concerning the adoption of the updated sign code in any
 9   of those years?
10        A.   Yes, absolutely.
11        Q.   Which years?
12        A.   What's that?
13        Q.   Which years?
14        A.   2014 while Etta Fanning was on city counsel.
15   We passed sign ordinances in 2014.  I don't think she
16   recalled that.  But 2015, 2016, and there was a review
17   of the sign ordinance in 2017.
18        Q.   Okay.  Do you recall what the purpose for
19   updating the sign code was?
20        A.   Which year?
21        Q.   For each, please.
22        A.   In 2014 the purpose -- well, city council
23   member Charles Brame put on the agenda a discussion for
24   political signs.  I can't recall the exact purpose but I
25   believe he wanted to eliminate all political signs from
```

1　being displayed in the city.  Ultimately that resulted
2　in a political sign -- the political sign ordinance
3　which limited political signs to three per candidate.
4　　　　Q.   Okay.  And the next?
5　　　　A.   The next was 2015.  Okay.  No, it was not.
6　There was nothing in 2015.  I stand corrected.  2016.
7　And the reason that we initiated a review of the sign
8　ordinance was to ensure we complied with the Gilbert
9　versus Reed Supreme Court ruling on signs.
10　　　Q.   Okay.
11　　　A.   And in 2017 there was a city council directive
12　to review the sign ordinance to conform with the Texas
13　Election Code.
14　　　Q.   What efforts did the city make to ensure in
15　2017 that the sign code conformed to the Texas Election
16　Code?
17　　　A.   There were -- there was a discussion, quite a
18　bit of discussion and proposals to amend the sign
19　ordinance to conform with the code, the election code,
20　and so there was actually two proposals.  There was
21　option A and option B.  Option A would basically say
22　that the cumulative amount of square footage of signs in
23　a single property could not exceed 36 square feet.  And
24　option B said something to the nature -- and I don't
25　have it with me -- that -- it retained all the language

1   A.  Initially I went there personally with the
2 chief.  I said, Where did you take the sign?  He showed
3 me the sign at -- on -- was it Farn Castle?
4           MR. FRIGERIO:  202 Farn Castle.
5           THE WITNESS:  202 Farn Castle.  The sign
6 was -- it was actually at a corner lot, at a residential
7 corner lot, and the actual location technically was not
8 on the residential property.  It was in the homeowners
9 association street right-of-way.  At the time I did not
10 really make that connection, and so at the time I said,
11 well, they may have gotten homeowners' permission.  I'm
12 not sure.  Let's just put the sign back.  Because I knew
13 that a homeowner could put a sign up.  So I incorrectly
14 said the sign is in compliance with the sign ordinance
15 because technically the sign would have had to have been
16 placed outside of the homeowners association street
17 right-of-way, which the sign was placed probably five
18 feet from the curb, which would mean that it was five
19 feet inside the homeowners association right-of-way.
20 The sign would have had to have been placed
21 approximately ten or eleven feet from the curb, but I
22 did not make that distinction at the time.  Our
23 ordinance clearly says signs cannot be placed in the
24 right-of-way in all streets.  But giving them the
25 benefit of the doubt we left the sign.  I replaced the

```
 1  sign and said it's on residential property.  If she
 2  would have had permission to from the owner, then it
 3  would have been a legal sign if it was in that property.
 4  So without benefit of the doubt, I just replaced it.
 5       Q.  Right.  So if you could turn to previous
 6  Exhibit Number 5.
 7            MR. FRIGERIO:  Are you going to attach it?
 8            MR. WHATLEY:  Do you mind if we go off the
 9  record?
10            (Brief discussion off the record.)
11            (Deposition Exhibit 3 was marked.)
12       Q.  (BY MR. WHATLEY)  We'll turn to Exhibit
13  Number 3, Bates labeled 34.  So when you texted
14  Ms. Fanning that the sign was on private property,
15  you're now saying that was not correct?
16       A.  I am now saying that it was not correct.  It
17  was in the right-of-way of the homeowners association
18  which was adjacent to private property.
19       Q.  Do you mind reading me that text?
20       A.  After further investigation, I determined one
21  sign was on private property and not in violation.  That
22  was returned.  Your attorney has response from our
23  attorney.  Call if you have questions.
24       Q.  Turning to Bates label 35 on a contemporaneous
25  conversation, do you mind reading me this message?
```