**ORDINANCE NO. O-2016-010**

**AN ORDINANCE AMENDING CHAPTER 24, ARTICLES I - II AND CHAPTER 36, ARTICLE II OF THE CITY OF SHAVANO PARK CODE OF ORDINANCES TO CONFORM SIGN REGULATIONS TO SUPREME COURT RULING IN REED V. TOWN OF GILBERT AND TO SET FORTH REGULATIONS PURSUANT TO CITY AUTHORITY TO REGULATE STRUCTURES UNDER TEXAS LOCAL GOVERNMENT CODE CHAPTER 211 AND ANY AUTHORITY THE CITY MAY HAVE UNDER TEXAS LOCAL GOVERNMENT CODE CHAPTER 216; PROVIDING A CUMULATIVE & CONFLICTS CLAUSE, PROVIDING FOR A SEVERABILITY CLAUSE; AND PROVIDING FOR AN EFFECTIVE DATE.**

**WHEREAS**, the City Council of the City of Shavano Park has a substantial interest in protecting the health, safety, welfare, convenience and enjoyment of the general public from injury which may be caused by the unregulated construction of signs; and

**WHEREAS** the City Council of the City of Shavano Park has a substantial interest in enhancing the economic value of the landscape by avoiding visual clutter which is potentially harmful to property values and business opportunities; and

**WHEREAS** the City Council of the City of Shavano Park has a substantial interest in promoting the safety of persons and property by providing that signs do not create a hazard due to collapse, fire, collision, weather or negligence; and

**WHEREAS** the City Council of the City of Shavano Park has a substantial interest in protecting the safety and efficiency of the City's transportation network by reducing the confusion or distraction to motorists and enhancing the motorists' ability to see pedestrians, obstacles, other vehicles, and traffic signs; and

**WHEREAS** the City Council of the City of Shavano Park has a substantial interest in providing for consistent, fair, and content neutral application and enforcement of regulations pertaining to signs and to ensure that the constitutionally guaranteed right of free speech is protected; and

**WHEREAS** the City Council of the City of Shavano Park has a substantial interest in protecting adjacent and nearby properties from the impact of lighting, size, height and location of signs; and



**WHEREAS,** on June 1, 2016 the Planning and Zoning Commission has conducted a public hearing and has rendered a recommendation to the City Council with respect to this ordinance; and

**WHEREAS,** the City Council has conducted a public hearing on June 27, 2016, considered the recommendation of the Planning and Zoning Commission, and has determined that the proposed change is in the best interest of the general welfare of the City of Shavano Park; and

**WHEREAS,** on August 3, 2016 the Planning and Zoning Commission conducted a second public hearing and has rendered further recommendations to the City Council with respect to this ordinance.

**NOW, THERFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF SHAVANO PARK, TEXAS:**

**I**
**CODE AMENDMENT**

Chapter 24, Article I of the City of Shavano Park Code of Ordinances is hereby amended to read as follows:

Sec. 24-1. - Purpose.

These regulations set forth by the City of Shavano Park, pursuant to its authority to regulate structures under Texas Local Government Code Chapter 211 and any authority it may have under Texas Local Government Code Chapter 216, combine the need to protect the public safety and welfare, the need to encourage pedestrian movement, the need for a well maintained and attractive community, and the need to adequately convey ideas, provide communication and identify features within the community. The provisions do not ensure or provide for every property or business owner's desired level of visibility for signs. The sign standards are intended to allow signs to have adequate visibility from streets and rights-of-way that abut a site, but not for visibility from streets and rights-of-way farther away. The regulations for signs and awnings have the following specific objectives:

    (1) To ensure that signs and awnings are designed, constructed, installed and maintained according to standards to safeguard life, health, property and public

Shavano Park Bates No. 00007
EXHIBIT 8

welfare and to eliminate excessive and/or confusing sign displays that create potential hazards to motorists, pedestrians and to property;

(2) To allow and promote positive conditions for sign communication while at the same time restrict signs which create continuous visual clutter and hazards at public right-of-way intersections;

(3) To reflect and support the desired character and development patterns of the various zoning districts in order to plan and promote an attractive environment;

(4) To allow for adequate and effective signs in business and office districts, while preventing signs from dominating the appearance of the area, thereby encouraging a positive business atmosphere;

(5) To establish a sign application and sign permit review process that effectively regulates issues pertaining to the location, placement and physical characteristics of signs in an effort to ensure compatibility with adjoining land uses, architecture and landscape; and

(6) To provide for consistent, fair, and content neutral application and enforcement of regulations pertaining to signs and to ensure that the constitutionally guaranteed right of free speech is protected.

Sec. 24-2. - Definitions.

The following words, terms and phrases, when used in this chapter, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:

*Advertising bench* means any bench providing seating to the general public without charge, which may bear advertising.

*Animated or moving sign* means any sign, or part of a sign, which changes physical position or appearance by any movement or rotation or which gives the visual impression of such movement or rotation.

*Awning, canopy or marquee sign* means a sign that is mounted, painted on, or attached to, an awning, canopy, or marquee that is otherwise permitted by this chapter.

*Back-to-back sign* means a structure containing two parallel signs whose faces are oriented in opposite directions and are spaced no more than ten feet apart.

*Bandit signs* shall mean any sign erected without the written permission of the land owner which is tacked, nailed, posted, pasted, glued or otherwise attached to trees, utility poles, street signs, street furniture, stakes or fences or other objects, and any temporary sign which is attached to another sign. No sign owned or placed by the City, the State, or a public utility shall be considered a bandit sign. A bandit sign is considered trash and may be discarded in accordance with Sec. 24-13.

*Billboard* means any outdoor sign, display, device, figure, painting, drawing, message, placed, poster, structure or thing that is designed, intended, or used to advertise or inform.

*Billboard operator* means any person who installs, erects, services, maintains, alters, repairs or demolishes billboards.

*Bill posters* means advertising poster or handbill.

*Chief of Police* means the City's duly appointed Chief of Police.

*City* means the City of Shavano Park, Texas.

*City Code Compliance Officer* means one or more individuals duly appointed by the City to enforce City Code violations.

*Early Voting Period* means that period as prescribed by Tex. Elections Code § 85.001, as amended.

*Electric sign* means:
(1) Any sign on which letters, figures, designs, or messages are formed or outlined by electric illumination, or by a transparent or translucent medium which is electrically illuminated, whether the illuminating device is contained within or on the sign, including digital signs illuminated by LCD, LED, plasma displays, projected images or any other illumination format;
(2) Any outside building outlining;
(3) Any interim decorative displays; and
(4) Any gas tube window outlining.
Any portable sign that has electrical components attached, connected to, or part of the sign, or support, whether electrified or not, shall be considered an electric sign and all provisions of this chapter pertaining to electric signs shall apply to such signs.

*Embellishments* means any feature such as a cutout, neon, or plastic letters, clock, electric device, or space extension, which is added to an outdoor advertising structure. All embellishments shall be included when measuring the sign area.

*Fireproof structure* means a sign constructed entirely of steel members including structural support for the sign face. The sign face and its support members shall be constructed of metal panels, and all electric signs on commercial property shall have a fireproof structure.

*Flashing sign* means any directly or indirectly illuminated sign that exhibits changing natural or artificial light or color effects by any means whatsoever.

*Loop 1604 frontage* means and shall include all Loop 1604 frontage and access roads.

*Monument sign* means any sign that is a ground-mounted structure of masonry, rock, brick, stone or stucco. Monument signs shall be made of at least 90 percent masonry materials such as rock, brick, stone or stucco.

*Neighborhood* means a distinct segment of the community, usually consisting of essentially similar housing stock, whose boundaries are defined by physical barriers such as major arterial streets and/or natural features such as creeks and rivers.

*On-premise sign* means a freestanding sign identifying or advertising a business, person, or activity, and installed and maintained on the same premises as the business, person, or activity.

*On-site sign* means a monument or pole/pylon sign that is located along the street frontage.

*Park or municipal property* means property classified as Park Area District, Municipal and Utility District and any other properties owned by the City. Except for signs permitted under subsection 24-4(3) and signs authorized in advance by the City Council, no signs of any kind may be posted in a park or municipal property.

*Pole sign* means any sign:

(1) Supported by poles, uprights, or braces which are not concealed in an enclosed base but are permanently placed on or in the ground and wholly independent of any building for support, either single- or double-faced; or

(2) Whose only structural support consists of exposed poles, posts, beams, or other devices mounted in the ground.

*Political sign* means any sign which is designated to influence the action of voters for the passage or defeat of a measure or candidate appearing on the ballot in connection with any national, state or local election.

*Portable sign* means any sign that is readily capable of being moved or removed, whether attached or affixed to the ground or any structure that is typically intended for temporary display. Portable signs include, but are not limited to:

(1) Signs designed and constructed with a chassis or support with or without wheels;

(2) Menu and "sandwich" board signs;

(3) "A" and "T" frame signs;

(4) Posters, flags or banners affixed to windows, fences, railings, overhangs, trees, hedges, or other structures or vegetation, except for pole-mounted community event banners;

(5) Signs mounted upon vehicles parked and visible from the public right-of-way, except signs identifying the related business when the vehicle is being used in the normal day-to-day operation of the business, and except for signs advertising for sale the vehicle upon which the sign is mounted;

(6) Searchlights; and

(7) Inflatables.

For the purposes of this definition, no sign owned or placed by the City, the State, or a public utility shall be considered a portable sign.

*Private property* means all property other than public property, as defined herein.

*Prohibited neon* means any use of neon lighting other than for lettering or logos. For the purposes of this chapter, all uses of neon lighting shall be considered a sign.

*Public property* means property owned by, or dedicated to the City, or owned by, or dedicated to other governmental entities. Signs located on public property shall be governed by a separate City policy.

*Pylon sign* means any freestanding sign with visible support structures or with a support structure with a pole cover or pylon cover.

*Safety signs* mean signs owned, placed, or required by any governmental entity.

*Setback* means the area from property lines back to buildings. Signs posted within building setbacks should not be an obstruction to traffic vision.

*Sign* means an outdoor structure, sign, display, light device, figure, painting, drawing, message, plaque, poster, billboard, or other thing that is designed, intended, or used to advertise or inform.

*Sign area* means the entire advertising area of a sign excluding the framing, trim, molding and supporting structure. Sign area shall be measured from the highest, lowest and widest points in a rectangular or square format.

*Sign face* means that portion of the sign dedicated to the message, logo, name, etc. and the sign face may be of a different material than the monument it is on. If mounted or located on a building structure, the sign face and its framing, trim molding and/or supporting structure shall not protrude above the premises and shall not be of such a character as to violate any other provisions of this chapter. Other than a monument sign, no sign face shall be deeper than two feet.

*Site* means a parcel of land developed for commercial use. A site may be a single platted lot, or may be a group of lots with a common or shared frontage.

*Voting Period* means the period beginning with the early voting period and ending when the polls close or the last voter has voted, whichever is later. The voting period corresponds only with elections administered by Bexar County.

*Wall sign* shall mean any sign attached to or erected against the wall of a building or structure, with the exposed face of the sign parallel to the surface of the wall of the building.

Sec. 24-3. - Prohibited signs.

Except as otherwise provided for in this chapter, it shall be unlawful to erect, display, maintain, or cause to be erected, displayed or maintained, on private property located in the City, any advertising bench, animated or moving sign, awning, canopy or marquee

sign, back-to-back sign, bandit sign, billboard, bill poster, electric sign, embellishment, flashing sign, monument sign, on-premise sign, prohibited neon, blinking, rotating, animated, moving, flashing or intermittently illuminated sign, pole sign, portable sign, pylon sign, any sign protruding above the building roof line or parapet line, painted or Day-Glo colored sign, banner sign, valance or display constructed of cloth, canvas, light fabric, paper, pliable vinyl, plastic or other light material, wall sign, any sign placed in exchange for a monetary or bartered benefit, any sign, displaying any matter in which the dominant theme of the material taken as a whole appeals to the prurient interest in sex, or is patently offensive because it affronts contemporary community standards relating the description or representation of sexual matters, and is utterly without redeeming social value. Such action is hereby declared to be a public nuisance. Any sign not specifically listed as being allowed in this chapter is expressly prohibited.

### Sec. 24-4. - Grandfather provisions.

This chapter is not intended to require the relocation, reconstruction, or removal of a sign which is already in place at the time of the adoption of the ordinance from which this chapter is derived and which was erected in compliance with local ordinances, laws and regulations applicable at the time of its erection, to the extent that Chapter 216 of the Texas Local Government Code preempts the application of this chapter to those signs or to any signs otherwise approved pursuant to Ordinance 100-03-99, as amended from time to time, or by City Council approval, provided that all such signs are constructed in accordance with such approval. Nor shall this chapter apply to on-premise signs in the extraterritorial jurisdiction of the City, which are located in a county, which is exempt from regulation under Chapter 216 of the Texas Local Government Code.

### Sec. 24-5. - Non-nuisance signs in business and office districts.

The following signs are not deemed to be a public nuisance and may only be erected within the City limits in accordance with the following terms and conditions:

(1) Beginning at the time of the issuance of the certificate of occupancy, a single sign may be erected temporarily on each approved plat or development, provided, however, that such sign shall not exceed 60 square feet in sign area, including its framing, trim and molding, and shall be placed so as not to interfere with the occupancy or use of the business or office development. All such signs shall only be displayed for a maximum of one continuous ninety (90) day period beginning no earlier than thirty (30) days from the date of the issuance of the certificate of occupancy.

(2) No monument sign shall be placed in such a manner that the total distance from the top of the sign to the ground exceeds the following specifications:

(a) Signs fronting on any road other than Loop 1604 frontage roads and any part of Loop 1604 within 150 feet of any other City street shall not exceed ten feet from the top of the sign to the ground for lots with street frontage greater than 250 feet, and shall not exceed six feet in height for lots with a street frontage less than or equal to 250 feet.

(b) Signs fronting on Loop 1604 frontage roads more than 150 feet from N.W. Military Drive shall have a minimum spacing of 150 feet and shall not exceed 25 feet from the top of the sign to the ground, except as expressly provided in section 24-11.

(c) Signs fronting on Loop 1604 frontage roads that are more than 150 feet but less than 500 feet from N.W. Military Drive where the site elevation is below the adjacent driving lanes of Loop 1604 frontage roads, shall not exceed 25 feet in height as measured from the top of the sign to the adjacent elevation of the Loop 1604 driving lanes, nor shall it exceed 48 feet in height as measured from the top of the sign to the ground.

(3) A single on-premise sign of not more than 40 square feet pertaining to the sale, rental, or lease of property zoned O-1, B-1, B-2, or MXD is permitted, provided such sign is located entirely within the property to which the sign appears, is not illuminated, and is removed within ten days after the sale, rental or lease has been consummated.

(4) Multi-tenant buildings.

(a) Each multi-tenant building that has exterior access to each individual business may attach one wall sign, and one awning sign for each window and/or exterior door, as set forth in this subsection. This sign shall be compatible with the character of the premises upon which it is placed. Each sign shall require a permit, which may be obtained separately or within a building permit. Such signs shall not exceed an aggregate of 50 square feet of sign area per wall per business on up to two walls. Signage for rear delivery identification shall not exceed five square feet per business.

(b) Each multi-tenant building that has interior access to individual businesses or office suites shall be permitted either:

1. One wall sign not to exceed 120 square feet in sign area; or
2. Up to three wall signs may be placed on one side of a building, and said signs shall not exceed 120 square feet in sign area; or
3. For a building over 30,000 square feet in area, up to five wall signs may be place on one side of a building, said signs not to collectively exceed 200 square feet in sign area and no one sign may exceed 120 square feet in sign area.

(c) All lit signs directed toward residential areas shall comply with Sec. 24-8.

(5) Single-tenant buildings. Each single-tenant building in the may have one wall sign, and one awning sign for each window and/or exterior door, subject to the limitations of this section. Such signs shall not exceed an aggregate of 50 square feet of sign area per wall on up to three walls.

(6) Convenience Stores. Each convenience store, as defined by Section 36-1 of the City of Shavano Park Code of Ordinances, may erect one monument sign with electric display that conforms with Sec. 24-10. Convenience stores fronting on two streets shall be allowed one monument sign with electric display facing each street. The electric sign shall not be neon, blinking, rotating, animated, moving, flashing or intermittently illuminated.

(7) Permits

a. No non-nuisance signs in business or office districts shall be erected within the City unless a building permit for such sign has first been issued by the City's building official. The permit application shall be accompanied by engineered drawings and a site plan showing the proposed sign location.

b. An electrical permit shall be required for any sign requiring the use of electricity in the operation of such sign.

c. Before any permit is granted and before any work is begun, the person making such application for such sign permit shall pay to the City a fee in the amount as specified in the schedule of fees, as approved by the City Council.

d. If the building official or his designee finds that the proposed sign conforms in all respects to this Chapter he shall issue the permit; otherwise he shall deny it.

e. Any permit that does not comply with the provisions of the Chapter or which is issued in violation of any provision hereof, shall be void and no right or privilege whatsoever shall accrue thereunder.

f. The city manager shall have the building official immediately inspect all permitted signs upon completion to determine compliance with the permit.

g. No person may reconstruct, move, alter, modify or relocate any sign without first obtaining a sign permit from the City. However, merely changing the price of advertised goods or services is not deemed to be altering the sign, and shall not require an additional permit.

Sec. 24-6. – Non-nuisance signs in residential zoning districts.

In A-1, A-2, A-3, A-4, A-5 PUD, MXD and CE zoning districts the following signs are hereby not deemed to be a public nuisance:

(1) Upon final plat approval, a single sign may be erected temporarily on each approved plat or development, provided, however, that such sign shall not exceed 60 square feet in sign area, including its framing, trim and molding, and shall be placed so as not to interfere with the occupancy or use of any lots in the subdivision. All such signs shall be removed upon completion of the sale of ninety-five percent (95%) of the lots in the subdivision.

(2) Each residential property may erect one sign on the property that conforms to the following requirements:
   (a) The sign cannot be displayed in such a manner that it can be visibly viewed from the public right-of-way for more than sixty days per calendar year;
   (b) The gross sign area shall not exceed six (6) square feet in sign area including framing, trim and molding;
   (c) The sign shall not be higher than six (6) feet above grade;
   (d) The sign shall not be placed on public property including a public easement or right-of-way; and
   (e) The sign cannot be an illuminated or backlit.

(3) In encouragement of the practice of recognizing achievements and student activities, each residential property may erect two (2) signs that conform to the following requirements:
   a. The signs cannot exceed 4 square feet in sign area, including framing, trim and molding;
   b. Signs shall be placed within 10 feet of the front facing of the primary residence;
   c. Signs shall not be higher than four (4) feet above grade;
   d. The sign cannot be an illuminated or backlit.

(4) During the period the residential property is listed for sale or lease, a sign may be erected on the property, subject to the restrictions noted in Sec. 24-6(2)(b - e). Residential lots fronting on two streets shall be allowed one sign facing each street.

(5) Signs during voting periods. Each residential property may erect signs in addition to those described in Sec. 24-6(2) and Sec. 24-6(3) during voting periods, as defined in Sec. 24-2, subject to the following restrictions:
   (a) No sign may be erected more than sixty (60) days prior to the start of the voting period;
   (b) All signs must be removed by 11:59 p.m. the day following the Voting Period;
   (c) The total sign area of all voting period signs must be no more than thirty-six (36) square feet, and no one sign shall be larger than twenty-four (24) square feet;
   (d) No voting period sign may be higher than six (6) feet above grade; and

(e) The signs cannot be illuminated or backlit.

Signs erected in violation of these regulations are considered a nuisance and may be removed by the City Manager or his/her designee.

## Sec. 24-7. – Banner Signs

Banner signs in residential zoning districts are allowed subject to the following requirements:

(1) Banner signs may be erected by property owners' associations as defined by the Texas Residential Property Owners Protection Act.
(2) Each property owner's association may erect one (1) banner sign at each entrance.
(3) Each residential property owner may erect one (1) banner sign.
(4) No banner sign may be erected more than seven (7) days prior to the first Tuesday in October.
(5) Banner signs must be removed by 11:59PM the day following the first Tuesday in October.
(6) Banner signs on public property shall be governed by a separate City policy.

## Sec. 24-8. - Exterior lighting and hours for business and building wall signs.

Exterior lighting of the building and building wall signs shall not exceed the maximum height of the building or wall sign. Lighting for signs fronting on any street other than streets adjacent to or abutting commercial property shall be turned off not later than 11:00 p.m. or one-half hour after the business is no longer open to the public, if later.

## Sec. 24-9. - Displayed address of commercial property.

Each commercial establishment shall prominently display its address as to be easily legible from the adjacent street. Addresses and monuments displaying the address shall not constitute a sign in terms of limiting or eliminating the rights to a sign as allowed in other sections of this chapter.

## Sec. 24-10. - Monument signs.

A monument sign may have a "sign face" inserted into the structure provided the insert shall not exceed 75 percent of the average height and/or 90 percent of the average width of the structure.

(1) Each monument sign located along Loop 1604 frontage shall not exceed an average of 25 feet in width at the base and not exceed an average of 20 feet in width above the base. The base shall not be less than 75 percent of the average width of the sign. The base of the monument sign can include signage for

commercial center identification. No canister within the Loop 1604 frontage monument sign shall exceed 150 square feet in area. The sign face insert may be backlit or externally lit.

(2) Monument signs are allowed on the east and west side of N.W. Military Highway within 500 feet of the South right-of-way limits of Loop 1604. Only one monument sign will be allowed on each side of N.W. Military Highway. Monument signs located on N.W. Military Highway shall not exceed an average of 15 feet in width at the base and not exceed an average of ten feet in width above the base. Monument signs on N.W. Military Highway do not require that a base be constructed. If a base is constructed on the monument sign, the base can include signage for commercial center identification. The height of a monument sign on N.W. Military Highway shall not exceed 12 feet. No canister within the N.W. Military Highway monument shall exceed 55 square feet. The sign face insert may be backlit or externally lit.

(3) Each nonresidential lot fronting on a public or private street shall be allowed one multi-tenant on-premise monument sign, in addition to the wall signs referred to in subsection 24-4(4). Each nonresidential lot fronting on two public or private streets shall be allowed one monument sign on each street.

(4) The sign face or insert of a monument sign shall not exceed 50 square feet of sign area per side, except on (a) Loop 1604 frontage and (b) N.W. Military Highway frontage within 500 feet of the South right-of-way limits of Loop 1604.

(5) Neighborhood monument signs shall be a maximum of ten feet in height and not exceed an average of six feet in width above the base, regardless of location.

Sec. 24-11. - City Council sign approval.

(a) On Loop 1604 frontage only, more than 150 feet from N.W. Military Drive, the City Council may, at its sole discretion, approve pole/pylon signs within the following parameters: one sign per site with a maximum height of 48 feet from the top of the sign to the site grade, but not to exceed 25 feet above the adjacent driving lane of Loop 1604. This sign may not exceed 150 square feet per side (two sides maximum) and may be allowed in place of, or in addition to, any signs allowed by other provisions of this chapter. On a corner lot that qualifies for two monument signs the total sign face allowance may be adjusted up to 70/30 for the major artery. (i.e. A total of 100 square feet of sign face may be allocated 70 square feet on Lockhill Selma and 30 square feet on DeZavala.) Such reallocation shall be at the sole discretion of the City Council.

(b) The City Council reserves the right to establish policies governing signage on City property.

Sec. 24-12. - Authority to issue citation.

The City Code Compliance Officer (or such other Individual or classification of individuals as may be appointed by the City Council) may issue a citation requiring the removal, relocation, or reconstruction of any sign which does not meet the spacing, height, size and setback requirements of this chapter and other City ordinances for which the erection or construction was began on or after the effective date of the ordinance from which this chapter is derived. All safety signs shall be approved by the City Code Compliance Officer.

Sec. 24-13. - Removal of prohibited signs.

Bandit signs may be removed and discarded without notice notwithstanding any conflicting regulation or requirement within this section.

Sec. 24-14. - Variances.

(a) Purpose. Any person, business, or other organization desiring to construct, continue to construct, reconstruct, place, install, relocate, alter, or use any sign which does not conform to the provisions of this chapter may make application to the Board of Adjustment for a variance to the provisions of this chapter.

(b) Application. Application for a variance from the provisions of this chapter shall be made upon a form provided by the City Code Compliance Officer. The variance application shall include the application for a sign permit and shall also state the applicant's reasons for requesting the variance in accordance with the criteria set forth in this chapter.

(c) Fees.

(1) The applicant shall pay the fee as prescribed in the most recent adopted fee schedule passed and approved by the City Council. The fee shall be nonrefundable. If work requiring a variance is begun/completed before obtaining approval for such variance, the owner of the property and/or the person/entity responsible for the commencement of such work shall request approval of an "after-the-fact" variance and pay triple the established, nonrefundable fee. Payment of such fee does not relieve the applicant from liability under the penalty provisions of this chapter.

(2) Acceptance of the increased fee by the City does not constitute any commitment or warranty to approve the variance requested, nor does it relieve any person/entity from fully complying with the requirements of this chapter. A stop work order shall be in effect until a decision on approval/denial is taken. Fees shall not be refunded if the request for variance is disapproved.

(d) Hearing. Upon receipt of a variance application, the City Secretary shall set a date for hearing before the Board of Adjustment within 45 days of receipt of an administratively complete variance request.

(e) Standards for variances. The Board of Adjustment may approve a variance only it if makes affirmative findings, reflected in the minutes of the Board of Adjustment's proceedings, as to all of the following:

   (1) The variance will not authorize a type of sign which is specifically prohibited by the chapter;

   (2) The variance is not contrary to the goals and objectives outlined by the City;

   (3) The variance is not contrary to the public interest;

   (4) Due to special conditions applying to the land, buildings, topography, vegetation, sign structures, or other unique matters on adjacent lots or within the adjacent right-of-way, a literal enforcement of this chapter would result in unnecessary hardship. Ordinarily, hardship that is self-induced or that is common to other similarly classified properties will not satisfy this requirement. Financial or economic hardship alone will not satisfy this requirement;

   (5) The spirit and purpose of this chapter will be observed and substantial justice done; and

   (6) The applicant has not sought a variance from the City Council within the past 12 months.

(f) Conditions of variances. The Board of Adjustment may impose such conditions or requirements in a variance as are necessary in the Board of Adjustment's judgment to achieve the fundamental purposes of this chapter. A violation of such conditions or requirements shall constitute a violation of this chapter. A variance, if granted, shall be for a specific event, use, or other applications of a business and shall not continue with the property. If a variance is granted and the sign so authorized is not substantially under construction within three months of the date of approval of the variance, the variance shall lapse and become of no force or effect.

Sec. 24-15. - Violations to be reported as nuisances.

Signs posted or placed in violation hereof are hereby declared to be public nuisances; and such violations shall be reported promptly to the Chief of Police or City Code Compliance Officer.

Sec. 24-16. - Provisions cumulative.

This chapter shall be cumulative of all provisions of ordinances of the City of Shavano Park, Texas, except where the provisions of this chapter are in direct conflict with the provisions of such ordinances, in which event the conflicting provisions of such ordinances are hereby repealed. Any and all previous versions of this chapter to the extent that they are in conflict herewith are repealed.

Secs. 24-17 - 24-50. - Reserved.

## II
## CODE AMENDMENT

Chapter 24, Article II of the City of Shavano Park Code of Ordinances is hereby amended to read as follows:

Sec. 24-51. - Purpose.

Within the City's jurisdiction, there may be roadway corridors that have been and/or will continue to be very significant to the City. These corridors are amenities and assets of great value to the City, its inhabitants and its economy. The City Council aims to preserve, enhance and perpetuate the value of these roadway corridors and hereby authorizes the establishment of urban corridors.

Sec. 24-52. - Designation criteria.

To be designated as an urban corridor, an area must meet one or more of the following criteria:

(1) The corridor serves as a recognized primary entryway to the City.
(2) There is substantial commitment of private resources for development of at least 50 percent of the street frontage.
(3) The corridor traverses residential areas where housing is present along at least 50 percent of the street frontage.

Sec. 24-53. - Designation process.

(a) This article authorizes the establishment of urban corridors within the City's jurisdiction to regulate sign standards. Ordinances designating each urban corridor shall identify the designated street corridor and specify the sign standards for that corridor.

(b) Application for designation of a specific urban corridor shall be initiated by submission to the City Manager of an application in compliance with Sections 24-54 through 25-58. After reviewing the application for its compliance with Sections 24-54 through 25-

58, the City Manager shall forward any application found to be in compliance to the Planning and Zoning Commission.

(c) The Planning and Zoning Commission shall hold one or more public hearings on a proposed urban corridor sign application and submit a recommendation to the City Council, and each public hearing shall be subject to the general notice standards that apply to zoning cases. The City Council shall also hold a public hearing prior to considering a proposed urban corridor sign application, which shall be subject to the general notice standards that apply to zoning cases.

Sec. 24-54. - Sign standards.

(a) General. Ordinances establishing specific urban corridors may include requirements for on- and off-premises signs subject to the guidelines included herein. Specific corridor ordinances may include more or less restrictive standards for off-premises signs. All off-premises signs must be located solely within the specific urban corridors. In the event of a conflict between a specific corridor ordinance and other provisions of this Code, the specific corridor ordinance shall apply.

(b) Application. As part of each application, the applicant must submit proposed terms and conditions for an Urban Corridor Signage Ordinance, subject to approval by both the City's Planning and Zoning Commission and City Council. The application shall be subject to negotiation and approval by the City's Planning and Zoning Commission and final revision and approval by City Council as provided herein. In such agreement between the City and such party or parties establishing a sign corridor with the City (collectively with the City the "Parties"), the Parties shall specifically provide the following in an Urban Corridor Signage Ordinance:

(1) Agreement term;

(2) Terms for extensions;

(3) Replacement schedule;

(4) Technical drawing of proposed signage;

(5) Master component list for non-masonry components, including heights, widths, grades, finishes, and types of components;

(6) Lighting limitations, if any;

(7) Maintenance, including replacement of faded sign fronts; and

(8) Other information as follows:

    a. Legal description and exhibit of the property on a scaled map sufficient to determine details showing the area to be included in the urban sign corridor;

    b. An exhibit showing the location and type of each sign to be located within the urban corridor sign plan;

Shavano Park Bates No. 00022
EXHIBIT X

      c. An exhibit showing the height of each sign and the sign area of each sign to be located within the urban corridor sign plan; and

      d. An exhibit showing the architectural drawings for each sign to be located within the urban corridor sign plan.

(c) Acreage limitation. Such party or parties seeking to establish an urban corridor with the City must own or control by agreement with other property owners not less than 50 acres of real property eligible for commercial development and/or real property previously developed as commercial property located along the west side of Lockhill Selma road or the within 600 feet of improved roadway for Loop 1604.

(d) Prohibited signs. Unless expressly authorized by the City Council to create a unifying theme in a specific urban corridor, signs otherwise prohibited under this Chapter are prohibited as urban corridor signage.

(e) Temporary signs. The City Manager shall have the authority to issue permits and approve temporary signs as urban corridor signage within the following limitations:

    (1) Temporary signs shall only be displayed for a maximum of one continuous ninety (90) day period beginning no earlier than thirty (30) days from the date of the issuance of the certificate of occupancy;

    (2) No more than three (3) temporary signs shall be allowed during the continuous thirty (30) day period noted above; and

    (3) All temporary signs in total shall not exceed more than two hundred (200) square feet in sign area, including framing, trim and molding.

Sec. 24-55. - Corridor pole signs.

(a) Corridor pole signs shall be designed with a uniform branding logo approved by the City Council comprised of materials specifically authorized in the Urban Corridor Signage Ordinance. Permitted pole signs shall be placed no more frequently than every 150 linear feet of street frontage. A pole sign shall not be erected closer than every 150 linear feet along one side of the street to another pole sign.

(b) Except as provided in Section 24-5(3) and as to signs erected prior to the date this article is adopted, signage permitted under subsection (a) is in lieu of all on-premises pole, pylon and monument signage unless otherwise allowed by the Urban Corridor Signage Ordinance.

Sec. 24-56. - Urban corridor sign plan.

The City Council, after receiving a recommendation from the Planning and Zoning Commission, shall be responsible for approving the urban corridor sign plan, approving the urban corridor sign plan with conditions, or denying the urban corridor sign plan. In order for the Planning and Zoning Commission and City Council to consider an urban

corridor sign plan, the applicant must submit the materials and design information specified in Section 24-54 to the City Manager not less than 45 days prior to consideration by the Planning and Zoning Commission.

Sec. 24-57. - Designation of the Loop 1604 urban corridor.

(a) Location. The commercially zoned area fronting on the south right of way of Loop 1604 is hereby designated as the Loop 1604 urban corridor.

(b) Tracts eligible for inclusion in the Loop 1604 urban corridor shall be those tracts which have a minimum of 1,000 feet of continuous frontage along Loop 1604.

(c) The maximum height for a pole sign along Loop 1604 shall be 45 feet and a maximum of 12 feet for signage on any other street.

(d) For 45-foot signs, the maximum allowable sign area for each pole sign in this corridor shall be 350 square feet, and for all other signs, the maximum allowable sign area for each pole sign shall 200 square feet.

(e) Off-premise signs advertising businesses locations outside the City's city limits are prohibited in the Loop 1604 corridor.

Sec. 24-58. - Designation of the Lockhill Selma urban corridor.

(a) Location. The commercially zoned area fronting on the west side of Lockhill Selma is hereby designated as the Lockhill Selma urban corridor.

(b) Tracts eligible for inclusion in the Lockhill Selma urban corridor shall be those tracts, which have a minimum of 500 feet of continuous frontage along Lockhill Selma.

(c) Within 100 feet of the City's city limits with the City of San Antonio, the maximum height for a pole sign in this corridor shall be 25 feet, and a maximum of 12 feet for any other signage.

(d) The maximum allowable sign area for each pole sign in this corridor shall be 300 square feet.

(e) Off-premise signs advertising businesses locations outside the City's city limits are prohibited in the Lockhill Selma corridor.

## III
## CODE AMENDMENT

Chapter 36 - Zoning, Article II – Districts, Sec. 36-39(4) of the City of Shavano Park Code of Ordinances is hereby amended to read as follows:

(4) Other regulations.

a. Sanitary sewer. All permitted uses under B-1, B-2 and O-1 shall be connected to a public sanitary sewer system to insure proper disposal of waste.

b. Edwards recharge zone. All land use or development occurring in the Edwards Aquifer recharge zone, or watersheds draining into the recharge zone, must comply with applicable requirements prescribed by the Texas Natural Resources Conservation Commission ("TNRCC") regarding the production of products or waste which could adversely affect the water supply if introduced into the aquifer through the recharge zone.

c. Display signs. All signs shall conform to the sign criteria set forth in Chapter 24 of the Code of Ordinances of the City of Shavano Park, as may be amended from time to time.

d. Portable construction buildings. Portable construction buildings are only allowable under the following conditions:

1. Authorization may be issued by the City Building Official to permit a portable construction building to be temporarily located on a lot upon which a building permit has been previously issued for construction of any building or structure.

2. A certificate of occupancy related to construction shall not be issued by the City Building Official until the portable construction building has been removed from the premises and further, that the certificate of occupancy shall not be issued until the electrical connection which served the portable construction building has been removed from the lot in question.

3. A temporary permit issued pursuant to this section shall be void upon issuance of the certificate of occupancy, or 12 months after issuance of the building permit, whichever time is shorter.

4. In any case in which construction is not completed within the 12-month period, the City Building Official, after due consideration and determination that active construction is being accomplished, may issue an extension of time for the temporary permit, not to exceed a six-month period.

## IV
## CUMULATIVE CLAUSE

That this ordinance shall be cumulative of all provisions of the City of Shavano Park, Texas, except where the provisions of this Ordinance are in direct conflict with the

Shavano Park Bates No. 00025

provisions of such Ordinance, in which event the conflicting provisions of such Ordinance are hereby repealed.

## V
## SEVERABILITY

That it is hereby declared to be the intention of the City Council of the City of Shavano Park that the phrases, clauses, sentences, paragraphs, and sections of this Ordinance are severable, and if any phrase, clause, sentence, paragraph or section of this Ordinance should be declared unconstitutional by the valid judgment or decree of any court of competent jurisdiction, such unconstitutionality shall not affect any of the remaining phrases, clauses, sentences, paragraphs or sections of the Ordinances, since the same would have been enacted by the City Council without incorporation in this ordinance of any such unconstitutional phrases, clause, sentence, paragraph or section.

## VI
## PROPER NOTICE AND MEETING

It is hereby officially found and determined that the meeting at which this Ordinance was adopted was open to the public and that public notice of the time, place and purpose of said meeting was given as required by the Open Meetings Act, Chapter 551 of the Texas Government

## VII
## EFFECTIVE DATE

This ordinance shall be effective upon passage and publication as required by State and Local law.

**PASSED AND APPROVED** on the first reading by the City Council of the City of Shavano Park this the 19th day of September, 2016.

**PASSED AND APPROVED** on the second reading by the City Council of the City of Shavano Park this the 24th day of October, 2016.

ROBERT WERNER, MAYOR

Attest: _____
ZINA TEDFORD, City Secretary

Approved as to Form: _____
CHARLES E. ZECH, City Attorney