UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ETTA FANNING, | § | |
| Plaintiff, | § | |
| v. | § | Civil Case No. 18-cv-803 |
| | § | |
| CITY OF SHAVANO PARK, TEXAS | § | |
| Defendant. | § | DECLARATORY AND INJUNCTIVE |
| | § | RELIEF REQUESTED |
| | § | |
| | § | |
| | § | |

## PLAINTIFF'S RESPONSE
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Etta Fanning, responds as follows to Defendant City of Shavano Park, Texas'

Motion for Summary Judgment (Doc. 29).

### FACTUAL BACKGROUND & ALLEGATIONS

Given the issues common across the parties' dueling dispositive motions, rather than re-

file with the Court exhibits already on file, in the interest of space and to avoid repetition,

Plaintiff hereby incorporates by reference the factual summary and all exhibits contained and

made part of her *Motion for Summary Judgment* (Doc. 31), as if set forth fully herein.  Plaintiff

provides additional elaboration and/or summary of such facts here as particularly appropriate or

helpful with respect to the instant motion.

Plaintiff, Etta Fanning, is a resident of the City of Shavano Park. She filed her Original

Complaint on August 3, 2018. (Doc. 1)  In her complaint Plaintiff alleges that the Defendant's

Sign Code, codified at chapter 24 of the City's code of ordinances, is a violation of her First

Amendment rights.

Plf's. Resp. to Def's Mtn. for Summ. J.

1

In preparation for a July 28, 2018, block party ("Raincheck Party") Plaintiff purchased two banner signs, whistles, and safety bracelets. **Plf's. Exhibit 1** (Fanning Depo. 15:18-21; 16:1-10).   In conjunction with neighbors, Plaintiff displayed flags and other festive decorations in front of her and others homes throughout the neighborhood. Fanning Depo. 14:6-15.   Plaintiff placed the two banner signs on HOA property at the entrances to Bently Manor, and three smaller yard signs. Fanning Depo. 20:23-25; 21:1-11.   Desiring to place the three yard signs in neighbors' private yards, Fanning requested permission from homeowners to display them. Fanning Depo. 22:4-11.   Plaintiff has always requested homeowners' permission to place yard signs. Fanning Depo. 67:14-17

Defendant determined the signs to be in violation of the Sign Code and confiscated Plaintiff's banner and yard signs, holding them "as evidence until such time as a municipal court summons is issued, or the statute of limitations on the Class C violation occurs." **Plf's. Exhibit 3** City Ordinance Violation Reports from M. Kerr and R. Lacy); Fanning Depo. 18:10-17; 21:24-25; 22:1. According to the officer confiscating the signs, all three yard signs were on the "public ROW." Plf's. Exhibit 3 ("These signs, commonly referred to as 'Bandit Signs' under the City of Shavano Park Code of Ordinances, Section 24-2.").

After the City Manager personally investigated the signs, the Defendant then "determined one [yard] sign was in fact on private property and not in violation [of the Sign Code]", and returned it to homeowner's yard. **Plf's. Exhibit 4** (July 27, 2018, text conversation between Etta Fanning and Bill Hill); Fanning Depo. 44:7-12; Plf's. **Exhibit 5** (Hill Depo. 16:5-25; 17:1-4).   Additionally, Defendant then reported that the other two yard signs  were on HOA property. Exhibit 4.   Attorney for Defendant, Daniel Santee, confirmed in a July 27, 2018, email that the Defendant believed that the two banner signs and two of the yard signs were in violation

of the Sign Code as they were on HOA property, but that in their estimation one yard sign was on private property and therefore not in violation. Fanning Depo. 65:17-24; Plf's. **Exhibit 6** (July 27, 2018, email from Daniel Santee to Jerad Najvar). Plaintiff's remaining signs were never returned to her. Fanning Depo. 43:4-7; 57:17-24.

If the Sign Code allowed, Plaintiff would place both banner signs and yard signs, outside the time periods allowed, on her own property and neighbors' property with their permission. Fanning Dep. 58:10-25 ("Well, yes, of course, because, just like during National Night Out, banner signs are placed in the individual yards where they have the parties, the block parties. We would like to place them); 59:1-2; 58:18-24; 60:1-10; 68:6-16 ("Sure. I want to put signs up to invite people to the events that we have to build our community. I want to put signs up for an election or for a neighborhood event, signs up regarding I don't want signs to be selective."). Additionally, Plaintiff desires to display political signs that are larger than allowable under the Sign Code. Fanning Depo. 67:7-9.  Plaintiff is currently constrained from displaying banner and yard signs by the Sign Code and only refrains from doing so on account of the fact that they will be confiscated and she will be at risk of fines under the Sign Code's penalty provisions.

On October 31, Defendant filed his motion for summary judgment. (Doc. 29)  Plaintiff filed her own motion for summary judgment (Doc. 31) on November 4, 2019. Plaintiff incorporates her arguments contained therein here.

STANDARD OF REVIEW

Plaintiff incorporates the standard of review as stated on pages 8-9 of her *Motion for Summary Judgment*.

**ARGUMENT**

**I.    Summary of the Argument**

Plf's. Resp. to Def's Mtn. for Summ. J.

The City has failed to meet its burden by showing that it is entitled to summary judgment. Defendant is not entitled to summary judgment because: (1) there are questions of fact regarding the placement of Plaintiff's yard signs; (2) Defendant has not even addressed Plaintiff's claims for current and future harm; and (3) even if placement of the signs was not disputed, Defendant's enforcement of the Sign Code was a direct cause of Plaintiff's past injuries entitling her to standing.

Having failed to sufficiently brief the merits, Defendant has waived his argument on the merits for summary judgment purposes. Fed. R. Civ. P. 56.  However, in the event the Court determines the Defendant has not, Plaintiff Fanning still prevails.[1] In fact, even inversing the summary judgment standard and interpreting the facts in Defendant's favor, it is clear that Plaintiff is entitled to summary judgment because: (1) under *Reed*, the Sign Code is content based; (2) the content based distinctions do not serve a compelling interest; and (3) even if the distinctions did serve a compelling interest, they are not narrowly tailored.

## II.     Defendant's recitation of the "undisputed" facts is not correct

Summary judgment is only appropriate when there is no genuine issue of material fact. *Breen v. Texas A&M Univ*., 485 F.3d 325, 331 (5th Cir. 2007) (citing Fed. R. Civ. P. 56(c)). While even if the Defendant's recitation of facts was correct, it would not be entitled to summary judgement, Defendant's recitation of the "undisputed" facts is not correct.

While it is undisputed that the actions taken against Plaintiff were an enforcement of the Sign Code, a question of fact exists regarding the placement of all of the yard signs.  In her deposition, Plaintiff has contended, and continues to contend, that one yard sign was placed in the Barbario's yard with their permission. Fanning Depo. 22:4-11 ("No, I just went to the door

---

[1] Plaintiff hereby incorporates by reference her arguments on the merits contained and made part of her *Motion for Summary Judgment* (Doc. 31), as if set forth fully herein.

Plf's. Resp. to Def's Mtn. for Summ. J.

and asked if -- I said, you know, We're having a 4th of July party and can we put a sign in your yard? . . . And they all just said, Sure, no problem."); 23:22-25, 24:1-5 ("Yes, we had permission from all three people we asked[.]").  Contemporaneous records of the City's enforcement of the Sign Code against Plaintiff show that the City was aware that the yard sign in question was on private property and subsequently returned it. Plf's. Exhibit 4 ("After further investigation, I determined one sign was on private property and not in violation – that was returned."); Plf's. Exhibit 6 ("[O]ne of the confiscated yard signs was returned to its original location after further review.").  Plaintiff's object to hearsay proffered in the City Manager's deposition that the sign was placed without permission; an assertion he has proffered no evidence supporting. Hill Depo. 19:3-12.

Likewise, contemporaneous evidence contradicts the City's claim that the other two yard "signs were placed on HOA property." **Plf's. Exhibit 2** (July 27, 2018, Voicemail From HOA President to City Manager complaining of banner signs on HOA property, but not complaining of yard signs on HOA property); Plfs. Exhibit 3 (stating all signs were placed in the "public ROW"); Fanning Depo. 24:1-5 ("Yes, we had permission from all three people we asked[.]"), 39:24-25, 40:1-24 (If somebody answers the door, we tell them, [h]ere's what we're here for, can we put a sign in your yard? . . . If they say yes, we put the sign up. So we put signs in the yard, three signs..."); Plf's. Exhibit 4 ("One was on the HOA median another was on the HOA property next to a residence (it looks like it is on private property and is very close, but outside). I made them take me out and show me where the signs were.").  It wasn't until the instant litigation that the City claimed the precise litigation of all *all* three yard signs, particularly, that they were on HOA property and not on a right of way.  The Defendant's assertion that the precise location of all three yard signs was on HOA property is supported only by statements

Plf's. Resp. to Def's Mtn. for Summ. J.

made by the City Manager, which are exclusively based on out-of-court representations by City employees to him *after* the signs had been confiscated and he returned to investigate. Plf's. Exhibit 4 ("I made them take me out and show me where the signs were."). Plaintiff objects to this to the extent it is hearsay. Defendant has only proffered conflicting information regarding the location of Plaintiff's yard signs.

## III.    The Plaintiff has Standing

To satisfy Article III standing requirements, a plaintiff must show: (1) he has suffered an injury in fact to a legally protected interest that is (a) concrete and particularized and (b) actual or imminent (as opposed to conjectural or hypothetical); (2) the injury is fairly traceable to the challenged statute; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). *Allen v. Wright*, 468 U.S. 737, 750-52, (1984*); see also Friends of the Earth*, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 185.  Defendant has failed to brief how Plaintiff's injuries are not traceable or redressable, but as seen in e numerous post-*Reed* decisions, an unconstitutional sign provision is easily traceable to and redressed by the sign provision being declared unconstitutional.[2]  Each of the three harms alleged by the Plaintiff grant her standing for Article III purposes.

### a.  Defendant has not addressed Plaintiff's claims for ongoing and future harm, which alone grant her standing

The City has deemed it important to only address some of Plaintiff's claims making summary judgment inappropriate.  Plaintiff has alleged ongoing and future injuries to her First

---

[2] *See* cases cited infra note 4

Plf's. Resp. to Def's Mtn. for Summ. J.

Amendment rights from Defendant's continued enforcement of the sign code. Plaintiff's chilled speech and future injury *alone* are independent bases for her standing.

It is settled law that for First Amendment purposes, chilling a plaintiff's speech is a cognizable injury adequate to satisfy the injury-in-fact requirement." *Ctr. for Indiv. Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006); *Dombrowski v. Pfister,* 380 U.S. 479, 486–87 (1965). Further, "[a]n allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Contender Farms, L.L.P. v. U.S. Dept. of Agric.*, 779 F.3d 258, 267 (5th Cir. 2015) (*quoting Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334, 2341 (2014)). A past history of enforcement of a law is substantial evidence that there is an imminent threat of enforcement in the future. *Driehaus*, 573 U.S. at 164. A plaintiff does not have to confess that he will violate the law to challenge its constitutionality. *Id.* at 163; *Contender Farms, L.L.P.*, 779 F.3d at 267.

Here, Plaintiff's speech is currently being chilled by the Sign Code. This alone is an injury-in-fact granting her standing. Plaintiff desires to display signs in excess of the allowable number, time-frame, and thereby content restrictions of the banner sign provision. Compl. ¶¶ 50-53; Fanning Depo. 32:14-25; 33:1-9; 34:4-6; 59:18-25; 60:1-10. Plaintiff additionally desires to display signs that would be in violation of Code § 24-6. Compl. ¶¶ 43, 45; Fanning Depo. Fanning Dep. 58:10-25; 59:1-2; 58:18-24; 60:1-10; 68:6-16. Among other types, Plaintiff desires to display political signs larger than allowed under the Sign Code. Compl. ¶¶ 37-38; Plaintiff has only avoided doing so because of the City's enforcement of the Sign Code, which carries criminal penalties and would lead to additional confiscation of her personal property. Plf's. Exhibit 3; **Plf's. Exhibit 10** (City's history of enforcing Sign Code violations).

There is substantial risk that Plaintiff will suffer imminent harm in the future based on the unconstitutional Sign Code.  She has already suffered from the City's enforcement of the very same provisions of the Sign Code that she is challenging. On July 26, 2018, the City confiscated banner and yard signs belonging to her citing the Sign Code as the reason. Plf's. Exhibit 3 ("[S]tandard procedure of the CoSP Police Department is to remove these signs, and municipal court citations could be issued.").  Again in 2019, Plaintiff was stopped from exercising her First Amendment rights by the City's enforcement of the Sign Code. Fanning Depo. 33:16-25; 34:19; Hill Depo. 5:18-25; 6:1-25; 7-14. The City itself admits that it never allows signs in violation of the Sign Code and that it has no intention to do so:

> Q. Does the city have a set policy for exemptions or a waiver to the sign code when requested?
> A. There are no -- there are no exemptions or exceptions. I mean, you can go get a variance, and that's a process that goes through public hearings, through planning and zoning and to the city council.
> Q. So outside of a variance, in no situation would the city allow a resident to put up a banner sign
> outside of –
> A.· I'm not aware of one.
> Q.· Okay.· So the only exception to this would be for the two weeks for National Night Out?
> A.· That is allowed by our laws and our ordinances.

Hill Depo. 8:15-25; 9:1-8.  Since the passage of the current Sign Code in 2016, the City has an extensive track record of enforcement and has not allowed a single exception, and admits that it has enforced the Sign Code after every complaint reviewed. **Plf's Exhibit 7** (Defendant Shavano Park's Answers to Plaintiff's First Set of Interrogatories); **Plf's. Exhibit 10A-10B** (Enforcement History of Sign Code).[3]

---

[3] INTERROGATORY NO. 10: Identify all instances in which the City has received a complaint about a potential violation of the Sign Code, not already identified in response to Interrogatory No. 9; that is, complaints after which the City took no enforcement action. This interrogatory is limited to the period since the adoption of Ordinance No. 0-2016-010.

**b. Defendant is not entitled to summary judgment as his bare recitation of the elements of standing and reliance on disputed facts does not show Plaintiff lacked standing regarding her claims for past injury.**

Defendant has failed to meet his burden of showing that Plaintiff has not met the requirements of Article III standing regarding her past injuries. Defendant merely has asserted that Fanning has "failed to meet all three prongs of the article III standing requirement[s]," but offers no explanation beyond the fact that it the banner signs were on Homeowners' Association ("HOA") property and all three yard signs were *allegedly* on HOA property or without a homeowner's permission. Def's. Mot. for Summ. J. at 3.  No further evidence or reasoning is offered by the Defendant. Further, even if the City was correct regarding the signs' placement, the City confiscated them pursuant to the Sign Code.

Regardless of the placement of Plaintiff's signs, the confiscation of her signs for Raincheck Party were confiscated pursuant to the Sign Code provision regarding right-of-ways and easements, which *may* still be on private property. Code § 24-6(2)(d).  No matter where Plaintiff's signs were located, Defendant has expressly relied upon the various provisions of the Sign Code to justify their confiscation. At no time during Defendant's during the period in question did Defendant think it was enforcing anything other than the Sign Code. Even if it had shown as a matter of law where the signs were located, Defendant has not asserted how the location of the signs changes the fact that its enforcement of the Sign Code alters Plaintiff's standing.

Again in 2019, Plaintiff suffered past harm when she desired to display signs notifying residents of the annual block party and advocating various other causes or ideas.  Plaintiff was informed by a representative of the HOA, Camille Belcher, that HOA would permit her to display banner signs for her July 2019 block party, but that the Defendant would not allow it.

---

CITY OF SHAVANO PARK'S ANSWER TO INTERROGATORY NO. 10: I am not aware of any such incident.

Plf's. Resp. to Def's Mtn. for Summ. J.

Fanning Depo. 60: 11-25, 61:1-25.  The HOA did give Plaintiff permission to display yard signs allowable under the Sign Code. Fanning Depo. 62:1-4.  It was only through the City's continued enforcement of the Sign Code that Plaintiff suffered further injury to her First Amendment rights.

Additionally, Shavano Park residents are also injured because they are deprived of the right to hear Plaintiffs' message regarding the merits of various matters of public concern. The free speech and associational rights of others not before the Court will be similarly infringed as the challenged provisions are applied to other Shavano Park residents and enforced by these Defendants. *See Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974); *Catholic Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 423-424 (5th Cir. 2014).

**IV.     Even when Taking Defendant's Facts are True, it is Clear That Plaintiff is Entitled to Summary Judgment**

The parties agree that *Reed* is controlling.  However, according to *Reed*, the Sign Code is content based and must be analyzed under strict scrutiny. *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015). As the Sign Code is subject to strict scrutiny, the defendant has failed to meet *its burden* of showing the content based distinctions serve both a compelling interest and that the Sign Code is narrowly tailored to serve that interest. *Id.* at 2231; *Reagan Nat'l Advert. of Austin, Inc. v. City of Cedar Park*, 387 F. Supp. 3d 703, 715 (W.D. Tex. 2019), reconsideration denied, AU-17-CA-00717-SS, 2019 WL 3845455 (W.D. Tex. Aug. 15, 2019). Even inverting the summary judgment by interpreting the facts in the favor of the movant, the Plaintiff has shown a violation of her First Amendment rights.

**a.  Under Reed, the the City's Sign Code is content based and is therefore subject to strict scrutiny**

Plf's. Resp. to Def's Mtn. for Summ. J.

The Supreme Court has clearly and unequivocally established that sign codes requiring a sign to be read before determining the restrictions applicable is facially a content based restriction. *Reed*, 135 S. Ct. at 2227.[4] "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Id*. at 2228. Further, a law can be content based in one of two ways: "(1) by distinguishing speech by the topic discussed; and (2) where the government's purpose or justification for enacting the law depends on the underlying 'idea or message expressed'—i.e., the law is facially content neutral, but the motives in enacting it were content based." *Auspro Enterprises, LP v. Texas Dep't of Transp*., 506 S.W.3d 688, 694 (Tex. App.—Austin 2016, no pet.), review granted, judgment vacated w.r.m. (Apr. 6, 2018); *Reed*, 135 S. Ct. at 2228 (listing cases). "Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny." *Reed*, 135 S. Ct. at 2227.  The Supreme Court has repeatedly determined facially content neutral laws to be otherwise the product "[i]llicit legislative intent."  *Id*. at 2228 (listing cases). Content based restrictions are presumptively unconstitutional. *Id.* at 2226.

Courts within Texas have also recognized that sign codes that require reading the sign to determine what strictures to apply are content based and subject to strict scrutiny. *Auspro Enterprises, LP*, 506 S.W.3d at 688 (vacating judgment due to Texas Legislature amending

---

[4] Numerous courts have recognized that Reed requires any sign code that makes noncommercial content based distinctions must be analyzed under strict scrutiny. *See Act Now to Stop War & End Racism Coal. & Muslim Am. Soc'y Freedom Found. v. D.C.,* 846 F.3d 391 (D.C. Cir. 2017), cert. denied sub nom. *Muslim Am. Soc'y Freedom Found. v. D.C.,* 138 S. Ct. 334 (2017); *Cent. Radio Co. Inc. v. City of Norfolk, Va.,* 811 F.3d 625 (4th Cir. 2016); *Wagner v. City of Garfield Heights,* 675 Fed. Appx. 599 (6th Cir. 2017); *Thomas v. Schroer*, 248 F. Supp. 3d 868, 872 (W.D. Tenn. 2017), reconsideration denied, 13-CV-02987-JPM-CGC, 2017 WL 6489144 (W.D. Tenn. Sept. 20, 2017);  *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192 (9th Cir. 2016); *Citizens for Free Speech, LLC v. County of Alameda*, 194 F. Supp. 3d 968 (N.D. Cal. 2016); *Geft Outdoor LLC v. Consol. City of Indianapolis & County of Marion, Indiana*, 187 F. Supp. 3d 1002 (S.D. Ind. 2016); *Int'l Outdoor, Inc. v. City of Troy*, 17-10335, 2017 WL 2831702 (E.D. Mich. June 30, 2017), reconsideration denied, 17-10335, 2017 WL 6512550 (E.D. Mich. Dec. 20, 2017); Marin v. Town of Se., 136 F. Supp. 3d 548, 554 (S.D.N.Y. 2015).

highway sign code to conform to First Amendment principles); *Reagan Nat'l Advert. of Austin, Inc.*, 387 F. Supp. 3d at 714. As in the case in *Reed* and here, *Auspro* concerned a state-wide sign code based on a complete ban on outdoor signs with specific content based restrictions, such as those previously permitted. *Auspro Enterprises*, LP, 506 S.W.3d at 691.   Notably, the Texas Highway Beautification Act made a near identical exceptions for political signs if they were only displayed within ninety days prior to, and ten days after an election. *Id*. at 691. The plaintiff had placed a Ron Paul campaign sign outside these limitations and refused to take it down, leading the Department of Transportation to seek an injunction in Travis County District Court. *Id*. at 691. To the district court this content based regime meant that "[i]n Reed's wake," the "principal issue [was] not whether the Texas Highway Beautification Act's outdoor-advertising regulations violate[d] the First Amendment, but to what extent." *Id*. Likewise, a court in the Western District of Texas has found that a sign code was content based, solely for applying differing restrictions to on and off premises signs. *Reagan Nat'l Advert. of Austin, Inc.*, 387 F. Supp. 3d at 714.

Here, the City's Sign Code is content based.  The yard sign provisions require an officer to read the content of the sign in order to determine what restrictions actually apply, something *Reed* and its progeny have made explicitly clear subjects it to strict scrutiny. Code § 24-6.  The code creates different size, location, and temporal restrictions based on whether a yard sign is a "voting period sign," a "student achievement" sign, a residential sale or lease sign, or a development sign. Code § 24-6.   Each of these categories contains completely separate requirements.   However, the banner sign provisions are both content based *and* speaker based. The banner sign provision makes speaker based distinctions, allowing only for "property owners' associations" and "residential property *owner[s]*" to place a banner sign.  Subsection (6) adds to these speaker based distinctions by clarifying that the Defendant is not comparably restrained in

Plf's. Resp. to Def's Mtn. for Summ. J.

placing banner signs on city property by the Sign Code. Code § 24-7; **Plf's. Exhibit 9** (City Policy 11). Banner signs are content based due to a unique temporal limitation allowing them only for "seven days prior to the first Tuesday in October." *Id*. §§ 24-7(3), (4). While this severe temporal restriction is untethered to any particular event on its face, the intent and effect of this provision is to permit "banner signs" related to National Night Out, which is celebrated annually on first Tuesday in October. Precisely, the "more subtle" act of "defining regulated speech by its function or purpose" warned of by the *Reed* court. 135 S. Ct. 2227. In fact, the Officer Lacy, who removed Plaintiff's Raincheck Party signs, explicitly stated his reasoning for removing them was that they were "[n]ot related to national night out" and "[n]ot erected by the Home Owners Association." Plf's. Exhibit 3. Likewise, in a prior enforcement Officer Kerr referred to the HOA entrances as the "places the national Night Out banners" are located. Plf's Exhibit 3.

### b. The City has failed to show that the Sign Code serves a compelling interest and is narrowly tailored to meet that interest

In order to survive strict scrutiny, the government has the burden of showing the law in question serves a compelling interest and it must be narrowly tailored to serve that interest." *Reed*, 135 S. Ct. at 2231. To survive strict scrutiny a government defendant must "specifically identify an 'actual problem' in need of solving, and the curtailment of free speech must be actually necessary to the solution. *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 799 (2011) (internal citations omitted). Strict Scrutiny is "a demanding standard" and "[i]t is rare that a regulation restricting speech because of its content will ever be permissible." *Id*. However, even when the government has shown a compelling interest, a law is not narrowly tailored when it is underinclusive. *Reed*, 135 S. Ct. at 2231. A law cannot be "regarded as protecting an interest of the highest order, and thus as justifying a restriction on truthful speech, when it leaves

Plf's. Resp. to Def's Mtn. for Summ. J.

appreciable damage to that supposedly vital interest unprohibited." *Id* (citing *Republican Party of Minn. v. White*, 536 U.S. 765, 780 (2002)).

Here, merely asserting that the Sign Code is not content based, the City has not asserted a single compelling interest nor shown how it has narrowly tailored to meet any interest. For the purposes of summary judgment, the City has not even begun to meet its burden. There is no evidence that any of the content based distinctions in the Sign Code—whether they be disparate treatment based on who the speaker or whether the sign in question supports National Night Out—actually serve a compelling interest, let alone are narrowly tailored to do so.

### c.  Defendant's case law is not only distinguishable, but actually supports Plaintiff's claims

Under *Reed*, Plaintiff Fanning, not the Defendant, is entitled to judgment as a matter of law as argued in her *Motion for Summary judgment* (Doc. 31). The City relies on *Palmer v. City of Missoula MT*, 2017 WL 1277460 (D. MT, Apr. 4 2017), as an "instructive" example to how *Reed* is applied.  Indeed, it is quite "instructive" that Defendant could not find provide a single analogous application of Reed showing that the Sign Code is content neutral. Notably, *Palmer* concerned commercial speech. *Id.* ("The parties agree that the issue is whether the wind sign ordinance unconstitutionally infringes upon Plaintiffs' First Amendment rights—more specifically, Plaintiffs' right to *commercial speech*.") (emphasis added). The *Palmer* plaintiff only challenged the single wind sign provision, which stated "banners, flags, pennants, streamers, spinners or other types of wind signs" were prohibited, and defined "wind signs" as "attention-getting device with or without copy ... fastened in such a manner as to move in the wind." "attention-getting device with or without copy ... fastened in such a manner as to move in the wind." *Id.* at *1.  His claim that the ordinance was content based, relied on two *separate* ordinances that made distinctions between commercial speech—when signs were allowed—and

made a distinction for flags and window displays. *Id.* at 2.  The City of Missoula sign ordinance in question did "not make any distinction based on the words or symbols printed on signs that could be remedied by granting Plaintiffs' requested relief." *Id*. The court *only* looked to the sign ordinance in question (and even alluded that the other provisions might be content based), but as no matter what message was displayed on the plaintiff's signs they were banned, the single sign ordinance in question was valid. *Id.*

Here, Sign Code § 24-7 is distinguishable from Palmer in three ways. It is: (1) content based; (2) unconstitutionally vague; (3) speaker based restriction on Plaintiff's speech.

As noted herein, the Sign Code is content based as the temporal limitations restricting banner sign displays to "seven days prior to the first Tuesday in October" were passed exclusively to support celebration of National Night Out. *Auspro Enterprises, LP v. Texas Dep't of Transp*., 506 S.W.3d 688, 694 (Tex. App.—Austin 2016, no pet.), review granted, judgment vacated w.r.m. (Apr. 6, 2018) ("[A] law can be content based in either of two ways: (1) by distinguishing speech by the topic discussed; and (2) where the government's purpose or justification for enacting the law depends on the underlying "idea or message expressed"—i.e., the law is facially content neutral, but the motives in enacting it were content based."). Code § 24-6 makes similar content based distinctions to those found in *Reed.* The very same distinctions that the *Palmer* court noted would make a sign code content based.  *Palmer*, 2017 WL 1277460, at *2 (stating that the Town of Gilbert's distinctions between "Political Sign[s]," "Ideological Sign[s]," and "Temporary Directional Signs Relating to a Qualifying Event" were content based).

The Sign Code is also unconstitutionally vague and makes speaker based distinctions.  It seems the City did not see it beneficial to define what an "entrance" is, nor did not even define

Plf's. Resp. to Def's Mtn. for Summ. J.

what constituted "banner sign" at all.  Likewise, unlike the *Palmer* sign ordinance, the Sign Code § 24-7 is also speaker based. Only property owners' associations may place a banner at an entrance to a neighborhood, only property *owners* have the ability to display a banner sign in their yard, and the City has an unfettered ability to display any banner sign it so desires. Under the plain text of the Sign Code, a renter or any organization/entity that is not a property owners' association would face criminal sanction for speaking, based purely on the identity of the speaker.

PRAYER

Plaintiff respectfully requests that the Court deny the Defendant's motion for summary judgment in its entirety.  Plaintiff further requests any additional relief to which she may be justly entitled.

Respectfully submitted,

Jerad Wayne Najvar
Tex. Bar No. 24068079
S.D. Tex. No. 1155651
jerad@najvarlaw.com
2180 North Loop West, Suite 255
Houston, TX 77018
281.404.4696 phone
281.582.4138 fax
*Lead Counsel for Plaintiffs*

*Of counsel:*
NAJVAR LAW FIRM, PLLC
Austin M.B. Whatley
Tex. Bar No. 24104681
2180 North Loop West, Ste. 255
Houston, TX 77018
281.410.2003 phone
austin@najvarlaw.com

16

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on November 14, 2019, the foregoing document, and any accompanying exhibits and proposed order, was served by CM/ECF as follows:

Charles S. Frigerio
Law Offices of Charles S. Frigerio
111 Soledad Street, Suite 840
San Antonio, Texas 78205


/s/ Jerad Najvar
Jerad Najvar

Plf's. Resp. to Def's Mtn. for Summ. J.