UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ETTA FANNING, | § | |
| Plaintiff, | § | |
| v. | § | Civil Case No. 18-cv-803 |
| | § | |
| CITY OF SHAVANO PARK, TEXAS | § | |
| Defendant. | § | DECLARATORY AND INJUNCTIVE |
| | § | RELIEF REQUESTED |
| | § | |
| | § | |
| | § | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR FOR SUMMARY JUDGMENT**

Jerad Wayne Najvar
Tex. Bar No. 24068079
S.D. Tex. No. 1155651
jerad@najvarlaw.com
Austin M. B. Whatley
Tex. Bar No. 24104681
austin@najvarlaw.com
NAJVAR LAW FIRM, PLLC
2180 North Loop West, Suite 255
Houston, TX 77018
281.404.4696 phone
281.582.4138 fax
*Counsel for Plaintiff*

Plaintiff replies in support of her *Motion for Summary Judgment* (Doc. 29) ("Plf's MSJ").

ARGUMENT

Plaintiff is entitled to summary judgment as the Sign Code ("Code") is an unconstitutional violation of her freedom of speech under the First Amendment. The City has failed to address Plaintiff's claims and arguments. Rather, it reiterates superficial statements that Plaintiff does not have standing and that the Code is content neutral. None of these statements address Plaintiff's chilled speech nor rebut her arguments on the Code's content-based distinctions. Plaintiff hereby incorporates by reference the arguments and all exhibits contained and made part of her *Response to Defendant's Motion for Summary Judgment* (Doc. 34) ("Plf's Resp."), as if set forth fully herein.

**I.      Plaintiff has Standing for Both her Claims of Past Harm and for Her Future Injury**

Plaintiff has shown that, even accepting City's recitation of the facts, that she has suffered injury in fact from prior enforcement of the Code and ongoing injury in the form of her chilled speech. *Plf's MSJ* at 9-11.  Each injury alone is enough to grant her standing.

**a.   Defendant has failed to address Plaintiff's claims for ongoing and future harm**

Plaintiff has shown she is suffering ongoing and continuing injury in the form of chilled speech to her First Amendment rights; this alone grants her standing. *See discussion Plf's Resp.* at 7. Plaintiff desires to display banner signs on her property, HOA property, and her neighbor's property with permission, outside the temporal restrictions imposed by § 24-7:

> Q. . . .Would you like to place a banner sign on your own property? . . . THE WITNESS: Well, yes, of course, because, just like during National Night Out, banner signs are placed in the individual yards where they have the parties, the block parties. . . So I would like to put a small banner in my yard and sign in my yard that says you're invited to a block party. The more of these that we can get out, the better it is to invite the neighborhood to a block party.

Fanning Depo. 59:18-25; 60:1-6; *see also* 59:1-25; 60:8-10 ("Q. Do you want to hang banner signs in your neighbors' yards? A. With permission, yes."). Likewise, Plaintiff has made clear

2

that she desires to display yard signs that would be in violation of Code § 24-6:

> Sure. I want to put signs up to invite people to the events that we have to build our community. I want to put signs up for an election or for a neighborhood event, signs up regarding I don't want signs to be selective. If you're Suzy on the basketball team you can put up a sign, but if you're a Bentley Manor neighbor you can't put up a sign or a banner to invite people to a party.

Fanning Dep. 68:5-16; *see also* Fanning Dep. 67:1-4 (desire to place "voting signs" outside the Code's temporal window). Plaintiff has shown that she will suffer imminent harm in the future as a result of the City's past and current enforcement against her. *Plf's. Resp.* at 7-9, *Plf's MSJ* at 6.

**b. Plaintiff has standing based on the past enforcement of the Code against her**

Plaintiff has shown that she has standing for the City's past enforcement of the Code against her and her past chilled speech. *Plf's Resp.* at 8-10.  Defendant admits that the removal of Plaintiff's signs was an enforcement of the Code. Exhibit 3 ("Under CoSP Code of Ordinance 24-3, banner signs are prohibited. One approved banner sign may be erected by [HOAs] seven days prior to the First Tuesday in October (National Night Out).  The banner sign in question is; 1. Not related to National Night Out..."); Exhibit 6 ("In regards to your emails about the [Code], one of the confiscated yard signs was returned to its original location after further review."); Exhibit 4 ("After further investigation, I determined one sign was on private property and not in violation–that was returned.").  Whether an HOA President agreed with the City's actions is irrelevant, for—assuming he had authority to approve or disapprove of the signs—they were removed by the City pursuant to its authority under the Code, *not* some other enforcement authority or HOA procedures. The City's own attorney made this clear prior to this suit:

> The City only seeks compliance and will return the remaining signs without issuing citations if we agree on the following: 1) Banners may not be placed at the entrance unless during the authorized period in October and by the HOA. 2) 18" x 27" signs can be displayed for this event if solely on private residential property with the property owner's permission. Adherence to these stipulations will be in conformance with the ordinance.

It is only now that litigation is ongoing that the City provides post hoc justifications based off of hearsay evidence. Further, Plaintiff's past inability to display desired signs is an injury for standing purposes in of itself. *Amawi v. Pflugerville Indep. Sch. Dist.*, 373 F. Supp. 3d 717, 738 (W.D. Tex. 2019).

### c. Traceability and redressability

Plaintiff has shown that her injuries are traceable to the Code and redressable by this Court. A plaintiff has to show "a causal connection between the injury and the conduct complained," and the "likelihood that a favorable decision will redress the injury" *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009). "The removal of even one obstacle to the exercise of one's rights, even if other barriers remain, is sufficient to show redressability." *Sierra Club v. United States Dep't of the Interior*, 899 F.3d 260, 285 (4th Cir. 2018); *See Larson*, *v. Valente*, 456 U.S. 228, 242–43 (1982). A plaintiff need only show that a favorable decision will relieve *an* injury, not "every injury." *Larson,* at 243 n.15; *Doe v. DeWine*, 910 F.3d 842, 851 (6th Cir. 2018). Plaintiff is unaware of any post-*Reed* sign code challenge finding injury, but not traceability or redressability. *See e.g. Wagner v. City of Garfield Heights,* 675 Fed. Appx. 599 (6th Cir. 2017).[1]

## II.  The Code is Content-Based

Plaintiff has shown that Code is both facially content-based and the City's underlying motives for its enactment were content-based. *See discussion Plf's Resp.* at 10-13; *Plf's MSJ* at 11-14. In the entirety of its response, Defendant asserts only two superficial points. First, it argues that the banner sign provision is *facially* non-content-based. But, this ignores both the plain text of the Code and that a law passed in order to favor one type of speech over another is content-based despite being content neutral in its text. Second, that § 24-6(3) is content neutral as

---

[1] A plaintiff had shown redressability even when the sign in question was also barred by a separate and unchallenged ordinance. To the court, the fact that enforcement letter from the city citing only the challenged ordinance as authority was enough for the plaintiff to enjoin its enforcement. It was entirely irrelevant whether the plaintiff would even be able to post the sign that he desired to.

its clear language is merely aspirational and not enforced. This is unavailing for two reasons: (1) the Court cannot ignore the plain meaning of the Code merely because Defendant promises to adopt a narrowing interpretation; and (2) this does not address the other content and speaker based distinctions found within § 24-6.

It is *indisputable* that a sign code requiring a sign to be read to determine the restrictions applicable is facially content-based regardless of benign motive or content neutral justification. *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227-2228 (2015. While no evidence of an "improper censorial motive" is required, motive can make a facially neutral provision content-based. *Id.*; *Auspro Enterprises, LP v. Texas Dep't of Transp.*, 506 S.W.3d 688, 694 (Tex. App.— Austin 2016, no pet.), rev. granted, judgm't vacated w.r.m. (Apr. 6, 2018). "[T]he fact that a distinction is event based does not render it content neutral." *Id.* at 2231. Whether it is apparent on the face of the law, a law is content-based if it applies to particular speech because of the topic discussed. *Reed*, 135 S. Ct. at 2227; *Cent. Radio Co. Inc. v. City of Norfolk, Va.*, 811 F.3d 625, 632 (4th Cir. 2016) (finding distinction of governmental or religious flags, and non-commercial works of art was a content distinction). "Laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference." *Reed*, 135 S. Ct. at 2230 (internal citations omitted). A ban on speech is content-based if the ban is content neutral, but the exceptions are content-based. *Thomas v. Bright*, 937 F.3d 721, 728 (6th Cir. 2019); *See also Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 96 (1972) ("Selective exclusions from a public forum may not be based on content alone, and may not be justified by reference to content alone."); *City of Ladue v. Gilleo*, 512 U.S. 43, 51 (1994) ("[T]he notion that the exceptions to a restriction of speech may be insufficiently expansive 'is firmly grounded in basic First Amendment principles'").

**a.  Defendant fails to address multiple facial content distinctions within § 24-6**

Plaintiff has shown that multiple exceptions within § 24-6 are content-based and they alone require strict scrutiny. Under *Reed*, at least one district court has found temporal limits in of themselves on election signs to be unconstitutional. *See e.g. Marin v. Town of Se*., 136 F. Supp. 3d 548 (S.D.N.Y. 2015) (striking down sign ban based on existence of exemptions, including election-sign exemption, that differentiated based on content).

Here, § 24-6 contains three additional content-based restrictions unaddressed by the City: (1) an up to 60 square foot sign for "approved" developments so long as 95 percent of lots have not been sold; (2) a sign for a residential property during the period it is up for sale or lease; (3) "voting period" signs, which are allowed up to 60 days before and 1 day after the "voting period."  Each one of these distinctions is a content-based exception that requires a reading of the sign to determine what restriction applies. This alone subjects the statute to strict scrutiny.

**b.  The Banner Sign provision is content-based**

"A regulation that targets a sign because it conveys an idea about a specific event is no less content-based than a regulation that targets a sign because it conveys some other idea." *Reed*, 135 S. Ct. at 2231.

Here, the banner sign provision *appears* to be content neutral on its face, but a quick look at its unique temporal limitation makes it apparent that it is tied to approval for a specific event and the targeting of all others. It is anything but content neutral:

> Banner signs in residential zoning districts are allowed subject to the following requirements:
> (1) Banner signs may be erected by property owners' associations...
> (2) Each property owner's association may erect one banner sign at each entrance.
> (3) Each residential property owner may erect one banner sign.
> *(4) No banner sign may be erected more than seven days prior to the first Tuesday in October.*
> *(5) Banner signs must be removed by 11:59 p.m. the day following the first Tuesday in October.*

(6) Banner signs on public property shall be governed by a separate City policy.

Code § 24-7 (emphasis added). Plaintiff has shown this temporal limitation was passed explicitly to favor speech regarding National Night Out, which occurs the first week of October, over other speech. *Plf's Resp.* at 12-13. Precisely, the "more subtle" act of "defining regulated speech by its function or purpose" warned of by the *Reed* court. 135 S. Ct. at 2227. Additionally, the banner sign provision also contains speaker based distinctions. *See discussion Plf's MSJ* at 21-24.

### c.   The "Student Achievement" sign provision is facially content-based

Plaintiff has shown that § 24-6 makes multiple content-based distinctions, of which only § 24-6(3) has been addressed by the City. While courts must accept a reasonable narrowing construction of a law, the law must be "readily acceptable" to this. *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 182 (5th Cir. 2018). Courts have no authority to rewrite a "law to conform it to constitutional requirements," as it would be a "serious invasion of the legislative domain." *Id.* A "readily acceptable" construction cannot contradict the plain terms of a law. *See Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975); *City of El Cenizo, Texas*, 890 F.3d at 182.

Here, the plain text of § 24-6(3) shows that it is a content-based restriction. The relevant part states: "*In encouragement of the practice of recognizing achievements and student activities*, each residential property may erect two signs..." Code § 24-6(3) (emphasis added). Now in the face of litigation, the City asks the court to ignore the plain words on the page with no supporting evidence. Rather, Defendant asserts that its interpretation allows for *any* sign regardless of the plain language or its purpose in creating such a section. This, however, is irrelevant as it simply ignores the *plain text* of the statute. Plaintiff's constitutional rights cannot be held at the mercy of noblesse oblige based on an unreasonable interpretation. Fanning Depo. 38:4-16.[2]

---

[2] Q. Well, there's a preamble to it, but it doesn't say it can only be for that. It says each residential property may erect two signs. A. Sir, I can read . . . To encourage the practice of recognizing achievements and student activities --

### III.    The Code is not in Furtherance of a Compelling Interest and is not Narrowly Tailored

Defendant has not met *its burden* of showing that the Code's content-based distinctions serve a specific compelling interest and are narrowly tailored to serve that interest. *Reed*, 135 S. Ct. at 2231; *see Plf's MSJ* at 15-21. Instead of meeting *its* burden, the City has left the Court to rely upon bare assertions within the Code's own preamble that are not even compelling interests. Exhibit 8; *Plf's MSJ* at 14-19.  But, even if these were compelling interests, the City has not asserted or shown the necessary "causal" connection between these interests and the content-based distinctions. Rather, the single piece of evidence even partially addressing the City's motivation in implementing these onerous restrictions actually shows that it explicitly *sought to discriminate based on content.* Hill Depo. 10:22-25; 11:1-3 (admitting one policymaker's actual intent was "to eliminate all political signs from being displayed in the city.").

Likewise, the City has completely ignored its burden to show that these exceptions are narrowly tailored. There is no evidence in the record that banner signs are less of a traffic risk during a short period in October than the rest of the year. There is no evidence that the 60 day temporal restriction on the single sign exception avoids "a hazard due to collapse, fire, collision, weather or negligence[.]" Why a for sale sign may "protect[] adjacent [] properties from the impact of lighting, size, height and location of signs[,]" more than a voting period sign. Nor is there evidence showing how a student achievement sign "enhance[es] the economic value of the landscape" more than any other type of sign. Exhibit 8.

### IV.    Only Complete Rescission of the Sign Ban will Afford Plaintiff the Relief to which She is Entitled.

Having shown that the Code provisions challenged by Plaintiff are unconstitutional, the only

---

that's the subject – each residential property may erect two signs that conform to  the following requirements. That is if you're recognizing achievements and student activities. That relates to that and only that. Q. Well, I guess we'll let the court decide on that.

remedy left to this Court is to enjoin the Defendant from enforcing § 24-3's sign ban. "The severability of provisions of a state statute or a city ordinance, when a part is held to be unconstitutional, is a question of state law." *Unincorporated Non-profit Ass'n of Concerned Eastside Citizens & Prop. Owners v. City of San Antonio*, 657 Fed. Appx. 279, 282 (5th Cir. 2016). In determining whether a provision is severable, a court seeks to limit the "solution to the problem," by *when possible* severing "its problematic portions while leaving the remainder intact." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006). A Court has three guiding principles in making this determination: (1) it tries "not to nullify more of a legislature's work than is necessary;" (2) it restrains itself from "'rewrit[ing] state law to conform it to constitutional requirements;" and (3) "the touchstone for any decision about remedy is legislative intent, for a court cannot "use its remedial powers to circumvent the intent of the legislature." *Id.* at 321.

The *Auspro* court provides helpful illustration on what parts of a similar sign code are severable and which are not. Functioning similarly to the Code, the Texas Highway and Beautification Act imposed an outright sign ban that made exceptions, including for political signs for 90 days before to 10 days after an election. *Auspro Enterprises, LP*, 506 S.W.3d at 691. After finding this distinction was content-based on its face, the court turned to whether the exception was severable under the Code Construction Act's severability provision. *Id.* at 698; *see also* Tex. Gov't Code § 311.032(c). Utilizing *Ayotte's* guiding principles; the court quickly determined that, among others, provisions within the act regarding regulations over junkyards and the ability to acquire property were unrelated to "speech" and therefore severable. *Auspro* 506 S.W.3d at 703. Likewise, the act's separate additional bans on commercial speech along specified highways were severable as they were "complete in themselves," functioning under a

completely different ban and exception regime in a separate subchapter. *Id.* at 703-704. However, when it came to the general sign ban and exception scheme, which implicated both commercial and non-commercial speech, the court found that:

> [S]evering only the election-sign exemption . . . would not cure the constitutional infirmities caused by the remaining content-based exemptions. In fact, severing only the election-sign exemption would not even remedy Auspro's harm because the Act would still ban Auspro's election campaign sign—all year, every year—while allowing other categories of signs at all times, all based on their content. In other words, even with the election-sign exemption invalidated, the Act would still treat speech differently based on the content of that speech.

*Id.* The court continued that the mere presence of exemptions (e.g., allowing advertising "the sale or lease of the property;" "to advertise [on-site] activities;" and "to warn about issues affecting life and property") indicated that the legislative intent of the law was "to protect[] traditional rights enjoyed by property owners." *Id.* Removing the exceptions, but not the complete ban would thwart the legislature's intent *and* potentially "raise other free-speech and property-rights concerns" even if it was now content neutral. *Id.* at 705 (citing *City of Ladue v. Gilleo*, 512 U.S. 43, 53 (1994) ("[T]he City might theoretically remove the defects in its ordinance by simply repealing all of the exemptions. If [] the ordinance is also vulnerable because it prohibits too much speech, that solution would not save it.").

Other courts faced with similar sign codes have repeatedly determined that sign codes with unconstitutional definitions or broad bans remaining cannot be salvaged through severing the offending provisions. *Thomas v. Schroer*, 248 F. Supp. 3d 868, 895 (W.D. Tenn. 2017), reconsideration denied, 13-CV-02987-JPM-CGC, 2017 WL 6489144 (W.D. Tenn. Sept. 20, 2017), aff'd sub nom. Thomas v. Bright, 937 F.3d 721 (6th Cir. 2019) and aff'd sub nom. Thomas v. Bright, 937 F.3d 721 (6th Cir. 2019) (finding on-premises exception of statewide billboard act inseverable and the act as a whole unconstitutional); *Neighborhood Enterprises, Inc. v. City of St.*

*Louis, Mo.*, 4:07CV1546 HEA, 2014 WL 5564418, at *2 (E.D. Mo. Oct. 31, 2014) (holding that without the definition of "sign" intact, the unconstitutional provisions were inseverable and entire sign code was unconstitutional); *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1274 (11th Cir. 2005)(finding broad sign ban paired to exceptions meant that the unconstitutional exceptions were inseverable and entirety of code must be declared unconstitutional).

Here, the Code creates a content-based scheme of regulation analogous to those in *Thomas*, *Solantic*, and *Auspro*; codes that were found to be both unconstitutional and inseverable. Likewise, the Code's content-based distinctions found in the exceptions are unconstitutional and inseverable from the ordinance while still providing Plaintiff relief, preserving the City's original intent, and without the Court writing law. For example, if the court simply struck the temporal limitations for National Night Out from the banner sign provision, the speaker based distinctions would still remain; nor would this cure the fact that there is no definition of a "banner sign" anywhere in the Code. As in *Neighborhood Enterprises*, lacking even a basic definition of what a banner sign is, the banner sign provision is already completely unenforceable. 2014 WL 5564418, at *2.

Likewise merely striking out the other unconstitutional provisions within § 24-6(1)-(5) cannot cure this deficiency. Severing the offending provisions would leave only § 24-3's complete ban on all signs within residential voting districts; a course of action other courts have consistently refused to take. This would also thwart the City's original intent, fail to provide Plaintiff her requested relief, and fail to allow residents of Shavano Park their traditional property rights. Facing unconstitutional provisions that are inseverable from the whole code, this court is "required to find the sign code unconstitutional." *Solantic, LLC*, 410 F.3d at 1269.

Respectfully submitted,

Jerad Wayne Najvar
Tex. Bar No. 24068079
S.D. Tex. No. 1155651
jerad@najvarlaw.com
2180 North Loop West, Suite 255
Houston, TX 77018
281.404.4696 phone
281.582.4138 fax
*Lead Counsel for Plaintiffs*

*Of counsel:*
NAJVAR LAW FIRM, PLLC
Austin M.B. Whatley
Tex. Bar No. 24104681
2180 North Loop West, Ste. 255
Houston, TX 77018
281.410.2003 phone
austin@najvarlaw.com

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on November 27, 2019, the foregoing document, and any accompanying exhibits and proposed order, was served by CM/ECF as follows:

Charles S. Frigerio
Law Offices of Charles S. Frigerio
111 Soledad Street, Suite 840
San Antonio, Texas 78205

/s/ Jerad Najvar
Jerad Najvar