IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ETTA FANNING,<br>　　　　*Plaintiff*,<br><br>v.<br><br>CITY OF SHAVANO PARK, TEXAS,<br>　　　　*Defendant*. | §<br>§<br>§　　SA-18-CV-00803-XR<br>§<br>§<br>§<br>§<br>§<br>§ |

## ORDER

On this date, the Court considered Plaintiff Etta Fanning's Motion to Alter or Amend Judgment (ECF No. 46), Defendant City of Shavano Park's Response (ECF No. 47), and Plaintiff's Reply (ECF No. 48). For the reasons stated herein, Plaintiff's motion is **DENIED**.

## BACKGROUND

Plaintiff Etta Fanning ("Plaintiff") sued Defendant City of Shavano Park, Texas ("City"), alleging that the City's Sign Code[1] violated her rights under the First and Fourteenth Amendments of the U.S. Constitution. The dispute arose out of the City's removal of several of Plaintiff's banner and yard signs in her neighborhood, Bentley Manor, to promote a Fourth of July "raincheck" party in late July 2018. The removed signs were: (a) banner signs hung on trees at two gate exits of Bentley Manor, and (b) small yard signs that Plaintiff testified were placed on the private property of three homeowners who had given her permission to do so. The City Police Chief, Ray Lacy ("Chief Lacy") removed the banner signs because they were on property that is part of the public right-of-way, in violation of the general prohibition on banner signs in

---

[1] The City's sign regulations are found in Chapter 24 of its Code of Ordinances. The Sign Code is attached in its entirety at ECF No. 32-10.

1

the Sign Code Section 24-3[2] and outside of the temporal limitations allowing banner signs in Code Section 24-7.[3] Chief Lacy removed the yard signs because he believed they were "bandit signs" posted without permission of the landowner[4] in violation of Code Section 24-2.[5]

Plaintiff, through her counsel, demanded the return of the signs. The City attorney explained that the banner signs "were placed at the entrance of the subdivision on HOA owned property…without HOA permission" and that banner signs "are allowed in residential districts under very strict limitations concerning the time of year." The City attorney also explained that the confiscated yard signs "were on HOA owned property without permission and in violation of the ordinance." The City offered to return all signs to Plaintiff if the parties could agree that "(1) Banners may not be placed at the entrance unless during the authorized period in October and by the HOA," and "(2) 18"x27" signs can be displayed for this event if solely on private residential property with the property owner's permission." Plaintiff did not agree to these stipulations, the signs were never returned, and Plaintiff filed this lawsuit on August 3, 2018.

After filing suit, in July 2019 Plaintiff again planned for the annual Fourth of July party. According to Plaintiff, she wanted to place banner signs on HOA property and received

---

[2] Code Section 24-3 makes all signs on private property unlawful unless they fall within one of several "non-nuisance sign" categories laid out in the Code.

[3] Code Section 24-7 addresses "banner signs," which are allowed subject to the following requirements:
   (1) Banner signs may be erected by property owners' associations as defined by the Texas Residential Property Owners Protection Act.
   (2) Each property owner's association may erect one banner sign at each entrance.
   (3) Each residential property owner may erect one banner sign.
   (4) No banner sign may be erected more than seven days prior to the first Tuesday in October.
   (5) Banner signs must be removed by 11:59 p.m. the day following the first Tuesday in October.
   (6) Banner signs on public property shall be governed by a separate City policy.

This Section 24-7 is referred to herein as "the banner sign limitation" and was the subject of Count I of Plaintiff's Complaint.

[4] Chief Lacy initially believed all three signs were posted on the public right-of-way without the permission of the Bentley Manor Homeowners' Association ("HOA"). He later discovered the third sign was in fact on a private homeowner's property and replaced that sign.

[5] Code Section 24-2 defines "bandit signs" as signs "erected without the written permission of the land owner." Section 24-13 of the Code provides that such signs "may be removed and discarded without notice."

2

permission from an HOA representative to do so, but she could not place the signs because they would have been in violation of the City's Sign Code. The HOA also gave Plaintiff permission to place yard signs allowable under the Sign Code on HOA property, which she did. Plaintiff claimed that, in addition to desiring to put banner signs on HOA property with permission, she desired the ability to place banner signs on her own property and on her neighbors' property with their permission to promote the Fourth of July party and other messages, but she has not done so because it would violate the Sign Code.

Plaintiff brought two challenges to the City's Sign Code: she challenged the banner sign limitation as a facially unconstitutional content-based speech restriction (Count I), and she challenged the Code's "one-sign limitation"[6] as facially invalid and unenforceable as a content-based speech restriction (Count II). Plaintiff and the City filed cross-motions for summary judgment, and the Court heard oral argument on the motions on December 16, 2019.

On December 19, 2019, the Court granted the City's motion for summary judgment and denied Plaintiff's. ECF No. 44. The Court's order granting summary judgment in favor of the City found that Plaintiff lacked standing to challenge the Code's one-sign limitation, and so Count II of Plaintiff's Complaint was dismissed. ECF No. 44 at 9–11. As to Plaintiff's challenge to the banner sign limitation in Count I, the Court found Plaintiff had adequately alleged chilled speech to satisfy the standing requirement and proceeded to analyze her claim on the merits. *Id.* at 8–9.

---

[6] Section 24-6(2) of the Sign Code allows one sign to be erected on each residential property that conforms to the following requirements:
    a.  The sign cannot be displayed in such a manner that it can be visibly viewed from the public right-of-way for more than 60 days per calendar year;
    b.  The gross sign area shall not exceed six square feet in sign area including framing, trim and molding;
    c.  The sign shall not be higher than six feet above grade;
    d.  The sign shall not be placed on public property including a public easement or right-of-way; and
    e.  The sign cannot be an illuminated or backlit.

This "one-sign limitation" allows one sign in addition to five other categories of "non-nuisance" signs found in Section 24-6.

First, the Court agreed with Plaintiff that the banner sign limitation was subject to strict scrutiny under *Reed v. Town of Gilbert* because the restriction on speech could only be justified by reference to content. *Id.* at 14–16. The Court explained that even though the banner sign limitation is facially content-neutral, it is nevertheless subject to strict scrutiny:

> The Court is persuaded that the banner sign limitation at issue was motivated by content-based concerns. The tight one-week period where banner signs are allowed falls every year as the week before National Night Out, which is celebrated in the state of Texas on the first Tuesday of October… There can be no justification for the one-week exception to the general ban on banner signs without "reference to the content of the regulated speech"—that is, the one-week exception is so obviously related to National Night Out and cannot be justified without referencing that event.

*Id.* at 15 (citing *Reed v. Town of Gilbert*, 135 S.Ct. 2218, 2227 (2015)).

Next, applying strict scrutiny to the banner sign limitation, the Court held that the City had successfully shown the limitation was narrowly tailored to the City's compelling interest in aesthetics. ECF No. 44 at 16–18. The Court found that the purpose of the City's Sign Code was to "reflect and support the desired character" of the City in order to "promote an attractive environment." *Id.* at 17 (citing Code Section 24-1). The Court found the City's interest in aesthetics compelling in this case, "where the government asserting that interest has a mission or focus based on aesthetics." *Id.* at 17–18 (discussing Shavano Park's "central focus on its appearance, beauty, and charm"). Finally, the Court found the banner sign limitation narrowly tailored to that interest because the Sign Code prohibits almost all banner signs that harm the City's compelling interest, with a mere one-week exception. *Id.* at 18. For those reasons, the Court entered summary judgment in favor of the City. *Id.* at 19. A final judgment in favor of the City was entered that same day. ECF No. 45. Plaintiff now brings this motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e).

## DISCUSSION

I.   **Legal Standards**

Federal Rule of Civil Procedure 59(e) allows a court "to prevent a manifest injustice" by altering or amending a judgment upon a timely motion. FED. R. CIV. P. 59(e); *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). Altering or amending a judgment under Rule 59(e) "is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012). Plaintiff here urges only the third ground: that the Court's previous order was manifestly erroneous. "Manifest error is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see also Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 311 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1037 (2018).

A Rule 59(e) motion "cannot be used to raise arguments which could, and should, have been made before the judgment issues." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990). Nor can it be used to "relitigate old matters" that have already been resolved. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2810.1 (2d ed. 1995)); *see also Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) ("[S]uch a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."). A Rule 59(e) motion "calls into question the correctness of a judgment" and "is an extraordinary remedy that should be used sparingly." *Id.* at 478–79 (internal citations omitted). "A district court has considerable

discretion in deciding whether to grant or deny a motion to alter a judgment," and "must strike the proper balance between the need for finality and the need to render just decisions on the basis of all the facts." *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995). Though a court must consider these competing interests, Rule 59(e) favors the denial of a motion to alter or amend a judgment. *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

## II.   Analysis

Plaintiff argues that the Court's order granting summary judgment in favor of the City was manifestly erroneous because the banner sign limitation is not narrowly tailored to serve the City's interest in aesthetics.[7] The Court, according to Plaintiff "misconstrue[d] the tailoring analysis." ECF No. 46 at 3. Plaintiff argues "not only must [the City] justify how banner signs harm the City's aesthetics more than other types of signs, it must also show how banner signs placed outside of the week of National Night Out are more harmful to aesthetics than signs during the permitted period." *Id.*

First, Plaintiff claims that to survive a narrow tailoring analysis, the City "must defend distinctions in the speech-restrictive law, explaining why limiting speech of certain types or during certain periods of time furthers the asserted interest, while other speech may remain unrestricted." *Id.* at 4 (citing *Wagner v. City of Garfield Heights*, 675 F. App'x 599, 607 (6th Cir. 2017)). Plaintiff cites to *Zimmerman v. City of Austin* for the proposition that "temporal restrictions on speech require the government prove that the temporal parameters actually further the asserted interest." ECF No. 46 at 4 (citing *Zimmerman v. City of Austin, Texas*, 881 F.3d 378, 392-93 (5th Cir. 2018), *cert. denied*, 139 S.Ct. 639). Plaintiff believes that "because the City has not—and cannot—explain how a banner sign displayed…in July does any more damage

---

[7] Although Plaintiff "disputes that the City has met its burden of establishing that aesthetics, traffic safety, or any other interest qualifies as 'compelling,'" she does not argue that the Court's finding that the City had in fact established a compelling government interest was manifestly erroneous. ECF No. 46 at 3.

to the City's aesthetics than a banner sign displayed for the same limited time in October," the banner sign limitation must fail strict scrutiny.  ECF No. 46 at 5.

This is nothing more than a regurgitation of arguments Plaintiff already raised at the summary judgment phase, which the Court has already rejected.  *See* ECF No. 31 at 19–21 (arguing the Sign Code is not narrowly tailored).  In its order granting summary judgment, the Court found that "[i]f the City believes banner signs damage its interest in the aesthetics of its community and prohibits such signs for 51 weeks out of the year, then the restriction can hardly be more narrowly drawn."  ECF No. 44 at 18.  As the Court explained, the banner sign limitation is unlike that discussed by the Supreme Court in *Reed*; whereas the code at issue in *Reed* allowed many other types of signs that posed a threat to the governmental interest in safety, the City's code leaves open a mere one-week window where banner signs are allowed.  *Id.*  The one-week exception to the City's banner sign limitation does not leave open the type of "appreciable damage" to the City's interests in aesthetics that was fatal in *Reed*.  Plaintiff's disagreement with this Court's holding does not constitute "plain and indisputable" error "that amounts to a complete disregard of the controlling law" so as to justify altering or amending the judgment. *See Crown Equip. Corp.*, 394 F.3d at 325.  Plaintiff's present motion merely rehashes arguments with additional citations to inapposite case law that could have been raised before judgment was entered.  *See Templet*, 367 F.3d at 479 ("A Rule 59(e) motion…is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.").  The Court declines to alter or amend its judgment on this basis.

Next, Plaintiff argues that the banner sign limitation's "speaker-based restriction" is not narrowly tailored and fails strict scrutiny.  ECF No. 46 at 6.  According to Plaintiff, because the Sign Code allows only homeowners' associations to place a banner at an entrance to a

7

neighborhood, and only property owners to place banner signs in their yard during the allowed time period in October, the Code discriminates based on speaker. Plaintiff argues "[t]here are neighborhoods in Shavano Park not represented by an HOA" and that "a renter or any organization/entity that is not a property owners' association would face criminal sanction for placing a banner sign that would be legal if placed by another category of speaker." ECF No. 46 at 7. Plaintiff lacks standing to raise arguments about the restricted speech of renters or residents who live in a non-HOA controlled neighborhood, because she is neither. Plaintiff did not allege harm caused by the speaker-based restrictions. The injury she did raise—the removal of her signs pursuant to the City's prohibition on bandit signs and banner signs—would not be redressed by addressing any speaker-based restrictions in the Sign Code. Accordingly, the Court will not consider these arguments as a basis to alter or amend the judgment. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (describing the "constitutional minimum of standing" as requiring (1) "injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'") (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 38 (1976)).

## CONCLUSION

For the reasons stated herein, Plaintiff's Motion to Alter or Amend Judgment (ECF No. 46) is **DENIED**.

It is so **ORDERED**.

**SIGNED** this 29th day of April, 2020.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE