IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ETTA FANNING AND MARY JANE SMOOT, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | Civil Action No.  5:18-cv-0803-XR |
| | § | |
| CITY OF SHAVANO PARK, TEXAS, | § | |
| | § | |
| Defendant. | § | |
| _____ | § | |

**DEFENDANT CITY OF SHAVANO PARK'S**
**FIRST AMENDED ANSWER**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE XAVIER RODRIGUEZ:

**NOW COMES** the **CITY OF SHAVANO PARK**, Defendant in the above entitled and numbered cause and files this its First Amended Answer to Plaintiffs' First Amended Complaint heretofore filed and in support thereof would respectfully show unto the Court the following:

**I.**
**FIRST DEFENSE**

Plaintiffs' First Amended Complaint fails to state a cause action against this Defendant upon which relief may be granted.

**II.**
**SECOND DEFENSE**

Defendant **CITY OF SHAVANO PARK** admits that this action purports to arise from alleged violations of Plaintiffs' constitutional rights under 42 U.S.C. §1983 as alleged in Plaintiffs' First Amended Complaint; however, Defendant denies that any cause of action exists thereunder.

### III.
### THIRD DEFENSE

Defendant **CITY OF SHAVANO PARK** denies "Preliminary Statement" Paragraphs 1-3 of Plaintiffs' Amended Complaint.  Defendant **CITY OF SHAVANO PARK** denies that its sign ordinance violates the First and Fourteenth Amendments to the United States Constitution or the Texas Constitution as alleged in Plaintiffs' Amended Complaint. Defendant asserts that Plaintiffs' argument that the City lacks authority to impose a sign code has already been decided by the Court.  Plaintiffs' assertion is without merit and the Law of the Case Doctrine dictates that the City of Shavano Park does have authority to impose a sign ordinance, as a matter of law.

### IV.
### FOURTH DEFENSE

Defendant **CITY OF SHAVANO PARK** denies "Statement of Facts" Paragraphs 9-13. Defendants assert unto the Court that Plaintiff Fanning placed the banner signs on common property of the Homeowners' Association not her private property.  Defendant **CITY OF SHAVANO PARK** asserts that Plaintiff Fanning lacks standing, as a matter of law.

### V.
### FIFTH DEFENSE

Defendant **CITY OF SHAVANO PARK** admits Paragraph 14 to the extent that a "Fourth of July Raincheck Block Party" was rescheduled.

### VI.
### SIXTH DEFENSE

Defendant **CITY OF SHAVANO PARK** admits Paragraph 15 to the extent that the banner signs were again hung on common areas of the Homeowners' Association and not on Plaintiff's private property.

## VII.
## SEVENTH DEFENSE

Defendant **CITY OF SHAVANO PARK** admits Paragraph 16 to the extent that HOA President Adam Holzhower complained to the City of Shavano Park concerning the banners that were placed without permission by Plaintiff Fanning.

## VIII.
## EIGHTH DEFENSE

Defendant City of Shavano Park denies Paragraphs 17 through 24 of Plaintiff's Amended Complaint.

## IX.
## NINTH DEFENSE

Defendant **CITY OF SHAVANO PARK** denies "Enforcement of Sign Code Against Plaintiff MJ Smoot's Campaign Signs" Paragraphs 28 through 34 of Plaintiff's Amended Complaint.  Defendant admits Paragraph 35 that Smoot's Campaign was unsuccessful in 2015.

## X.
## TENTH DEFENSE

Defendant **CITY OF SHAVANO PARK** denies Paragraphs 36 through 45 of Plaintiff's Amended Complaint.  Defendants deny that her campaign was defected as alleged in Plaintiff's Complaint.  Defendant denies that Plaintiff Smoot has sustained damages or has standing in this suit, as a matter of law.

## XI.
## ELEVENTH DEFENSE

Defendant **CITY OF SHAVANO PARK** admits Paragraph 46 to the extent Plaintiff Smoot lost the election.  Defendant **CITY OF SHAVANO PARK** denies Paragraphs 49 through

64 of Plaintiffs' Amended Complaint.  Defendant denies that the City of Shavano Park sign ordinance concerning political signage violates Plaintiff's rights under the First or Fourteenth Amendments or the Texas Constitution as alleged in Plaintiffs' Complaint.

## XII.
## TWELFTH DEFENSE

Defendant **CITY OF SHAVANO PARK** admits that Shavano Park enacted comprehensive sign regulation regime was amended on November 22, 2021.  (See, Exhibit A – which is attached for all purposes.)

Defendant **CITY OF SHAVANO PARK** admits Paragraphs 66 through 77 to the extent that it does not conflict with Exhibit A which is attached hereto.  Defendant admits paragraphs 75, 76, 77, 78 and 79 to the extent that it does not conflict with Exhibit A.

## XIII.
## THIRTEENTH DEFENSE

Defendant **CITY OF SHAVANO PARK** denies "Permanent Injunction Relief" Paragraphs 81 through 86 of Plaintiffs' First Amended Complaint.  Defendant denies that Plaintiffs have standing under the First Amendment or the Texas Constitution as alleged in Plaintiffs' Complaint.

## XIV.
## FOURTEENTH DEFENSE

Defendant **CITY OF SHAVANO PARK** denies Count I, Paragraphs 87 and 96 of Plaintiffs' First Amended Complaint.  Defendant City of Shavano Park would show unto the Court that as a Type A General Municipality it has the power to enact sign ordinances. ***Town of Lakewood Village v. Bizios***, 493 S.W.3d 527, 531 (*fn*.3) 2016.  Defendant further assert the Doctrine of Law of the Case, as a matter of law.

## XV.
## FIFTEENTH DEFENSE

Defendant **CITY OF SHAVANO PARK** denies Count II, Paragraphs 97 through 105 of Plaintiffs' First Amended Complaint.  Defendant denies that its sign code is in violation of the First and Fourteenth Amendments to the United States Constitution or the Texas Constitution and Election Code as alleged in Plaintiffs' Amended Complaint.

## XVI.
## SIXTEENTH DEFENSE

Defendant **CITY OF SHAVANO PARK** denies Count III, Paragraphs 106 through 113 Plaintiffs' First Amended Complaint.  Defendant City of Shavano Park asserts that its sign ordinance did not violate the First and Fourteenth Amendments to the United States Constitution as alleged in Plaintiffs' Amended Complaint, as a matter of law.  *City of Austin, Texas v. Reagan National Advertising of Austin, LLC*, ____ U.S. ____ 142 S.Ct. 1464 (2022).

## XVII.
## SEVENTEENTH DEFENSE

Defendant **CITY OF SHAVANO PARK** denies Count IV, Paragraphs 114 through 129 of Plaintiffs' First Amended Complaint.  Defendant asserts that the City of Shavano Park's sign ordinances made the basis of this lawsuit, the original and the amended ordinances are not violative of the First or Fourteenth Amendments or the Texas Constitution as alleged in Plaintiff's Complaint.  See, *City of Austin, Texas v. Reagan National Advertising of Austin, LLC*, ____ U.S. ____ 142 S.Ct. 1464 (2022); *Reed v. Town of Gilbert AZ*, ___ U.S. ___ 135 S.Ct. 2218 (2015).

## XVIII.
## EIGHTEENTH DEFENSE

Defendant **CITY OF SHAVANO PARK** denies Plaintiff's "Prayer for Relief" of Plaintiff's Amended Complaint.  Defendant denies that Plaintiff is entitled to any of the relief requested including reasonable attorney's fees under 42 U.S.C. §1988, as a matter of law.

## XIX.
## NINETEENTH DEFENSE

Defendant **CITY OF SHAVANO PARK** denies  any allegations in Plaintiffs' First Amended Complaint not specifically admitted herein and demands strict proof thereof as required by law.

**WHEREFORE, PREMISES CONSIDERED**, Defendant **CITY OF SHAVANO PARK** prays that Plaintiffs' suit be dismissed against it, or in the alternative, that the Plaintiffs take nothing by their lawsuit against it, that Defendant have Judgment herein, that the Defendant be awarded its costs expended, including reasonable attorney's fees and for such other and further relief, both general and special, and at law and in equity, to which it may show itself justly entitled.

Respectfully submitted,

**LAW OFFICES OF CHARLES S. FRIGERIO**
A Professional Corporation
Riverview Towers
111 Soledad, Suite 840
San Antonio, Texas 78205
(210) 271-7877
(210) 271-0602 Telefax

BY: //s// Charles S. Frigerio
     CHARLES S. FRIGERIO
     SBN:  07477500
     Lead Counsel

HECTOR X. SAENZ
SBN: 17514850
ATTORNEYS FOR DEFENDANT
**CITY OF SHAVANO PARK**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing Defendant City of Shavano Park's First Amended Answer filed via CM/ECF has been forwarded on this the 31st day of August, 2022 via the CM/ECF system to the following:

Mr. Jerad Wayne Najvar
Najvar Law Firm PLLC
2180 North Loop West, Suite 255
Houston, Texas 77018                   Via Email: jerad@najvarlaw.com

<u>//s// Charles S. Frigerio                    </u>
CHARLES S. FRIGERIO

EXHIBIT A

TO DEFENDANT'S FIRST AMENDED ANSWER

ORDINANCE NO. O-2021-012

**AN ORDINANCE AMENDING CHAPTER 24, SIGNS OF THE CITY OF SHAVANO PARK CODE OF ORDINANCES TO REMOVE SIGN REGULATIONS THAT DISTINGUISH BETWEEN ON AND OFF PREMISE SIGNAGE AND COMMERCIAL VS NONCOMMERCIAL SPEECH; PROVIDING FOR FINDINGS OF FACT; AMENDMENT; A CUMULATIVE & CONFLICTS CLAUSE, PROVIDING FOR A SEVERABILITY CLAUSE; CODIFICATION; AN EFFECTIVE DATE; AND PROPER NOTICE AND MEETING.**

**WHEREAS**, the City Council of the City of Shavano Park has a substantial interest in protecting the health, safety, welfare, convenience and enjoyment of the general public from injury which may be caused by the unregulated construction of signs; and

**WHEREAS** the City Council of the City of Shavano Park has a substantial interest in enhancing the economic value of the landscape by avoiding visual clutter which is potentially harmful to property values and business opportunities; and

**WHEREAS** the City of Shavano Park is a certified Scenic City and the City Council of the City of Shavano Park desires to implement high-quality scenic standards for public roadways and public spaces; and

**WHEREAS** the City Council has established a dedicated interest in the aesthetics of its community and has determined that this ordinance has been drafted in order to meet the City's compelling interest in the aesthetic beauty of the City; and

**WHEREAS** the City Council of the City of Shavano Park has a substantial interest in promoting the safety of persons and property by providing that signs do not create a hazard due to collapse, fire, collision, weather or negligence; and

**WHEREAS** signs are often placed in or near public rights-of-way and the City Council of the City of Shavano Park has a substantial interest in protecting the safety and efficiency of the City's transportation network by reducing the confusion or distraction to motorists and enhancing the motorists' ability to see pedestrians, obstacles, other vehicles, and traffic signs; and

**WHEREAS** the City Council of the City of Shavano Park has a substantial interest in protecting adjacent and nearby properties from the impact of lighting, size, height and location of signs for the health and safety of its residents as well as the protection of the aesthetic beauty of the City; and

**WHEREAS** the City Council of the City of Shavano Park has a substantial interest in providing for consistent, fair, and content neutral application and enforcement of

regulations pertaining to signs and to ensure that the constitutionally guaranteed right of free speech is protected; and

**WHEREAS** the City Council of the City of Shavano Park desires to update its sign regulations to meet the changing conditions in the City as well as the changed statutory and legal requirements related to sign regulation; and

**WHEREAS** pursuant to Texas Local Government Code Section 51.001, the City of Shavano Park has general authority to adopt an ordinance or police regulation that is for the good government, peace, or order of the City and that is necessary or proper for carrying out a power granted by law to the City; and

**WHEREAS** pursuant to Chapters 211 and 216 of the Texas Local Government Code, the City of Shavano Park has the authority to regulate signs and variance procedures; and

**WHEREAS** the City Council finds that the amendments imposed by this Ordinance are reasonable, necessary, and proper for the good government of the City of Shavano Park.

**NOW, THERFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF SHAVANO PARK, TEXAS:**

# I
## CODE AMENDMENT

Chapter 24, Article I. – IN GENERAL of the City of Shavano Park Code of Ordinances is hereby amended to read as follows:

Sec. 24-1. - Purpose and scope.

These regulations shall apply in the City Limits. These regulations set forth by the City of Shavano Park, pursuant to its authority to regulate structures under Tex. Local Government Code Ch. 211 and any authority it may have under Tex. Local Government Code Ch. 216, combine the need to protect the public safety and welfare, the need to encourage pedestrian movement, the need for a well maintained and attractive community, and the need to adequately convey ideas, provide communication, and identify features within the community. The provisions do not ensure or provide for every property or business owner's desired level of visibility for signs. The sign standards are intended to allow signs to have adequate visibility from streets and rights-of-way that abut a site, but not for visibility from streets and rights-of-way farther away. The regulations for signs and awnings have the following specific objectives:

(1)    To ensure that signs and awnings are designed, constructed, installed and maintained according to standards to safeguard life, health, property, and public welfare, and to eliminate excessive and/or confusing sign displays that create potential hazards to motorists, pedestrians, and to property;

EXHIBIT A

(2)   To allow and promote positive conditions for sign communication while at the same time restrict signs which create continuous visual clutter and hazards at public right-of-way intersections;

(3)   To reflect and support the desired character and development patterns of the various zoning districts in order to plan and promote an attractive environment;

(4)   To allow for adequate and effective signs in business and office districts, while preventing signs from dominating the appearance of the area, thereby encouraging a positive business atmosphere;

(5)   To establish a sign application and sign permit review process that effectively regulates issues pertaining to the location, placement, and physical characteristics of signs in an effort to ensure compatibility with adjoining land uses, architecture, and landscape; and

(6)   To provide for consistent, fair, and content neutral application and enforcement of regulations pertaining to signs and to ensure that the constitutionally guaranteed right of free speech is protected.


Sec. 24-2. - Definitions.

The following words, terms, and phrases, when used in this chapter, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:

*Advertising bench* means any bench providing seating to the general public without charge, which may bear advertising.

*Animated or moving sign* means any sign, or part of a sign, which changes physical position or appearance by any movement or rotation or which gives the visual impression of such movement or rotation.

*Awning, canopy, or marquee sign* means a sign that is mounted, painted on, or attached to a building or an awning, canopy, or marquee that is otherwise permitted by this chapter.

*Banner sign* means a sign made of fabric or any non-rigid material with no enclosing framework but does not include a flag, pennant, or feather banner.

*Back-to-back sign* means a structure containing two parallel signs whose faces are oriented in opposite directions and are spaced no more than ten feet apart.

*Bandit sign* means a sign install without the written permission of the land owner which is tacked, nailed, posted, pasted, glued, or otherwise attached to trees, utility poles, street signs, street furniture, stakes, or fences or other objects or installed in the right-of-way, and any temporary sign which is attached to another sign. No sign owned or installed by the City, the State, or a public utility shall be considered a bandit sign. A bandit sign is considered trash and may be discarded in accordance with Sec. 24-14.

*Bill posters* means advertising poster or handbill.

*Chief of Police* means the City's duly appointed Chief of Police.

*City* means the City of Shavano Park, Texas.

*City Code Compliance Officer* means one or more individuals duly appointed by the City to enforce City Code violations.

*Commercial sign* means any sign in zoning districts O-1, B-1 or B-2 that is not a safety or government sign.

*Dilapidation* means any sign where elements of the sign area or background have portions of the finished material missing, broken, or illegible; where the structural support is visibly bent, broken, dented, rusted, corroded, or loose; or where the sign or its elements are not in compliance with the adopted electrical code and/or the building code.

*Early voting period* means that period as prescribed by Tex. Elections Code § 85.001, as amended.

*Electric sign* means:

(1)   Any sign on which letters, figures, designs, or messages are formed or outlined by electric illumination, or by a transparent or translucent medium which is electrically illuminated, whether the illuminating device is contained within or on the sign, including digital signs illuminated by LCD, LED, plasma displays, projected images, or any other illumination format;

(2)   Any outside building outlining;

(3)   Any interim decorative displays; and

(4)   Any gas tube window outlining.

Any portable sign that has electrical components attached, connected to, or part of the sign, or support, whether electrified or not, shall be considered an electric sign and all provisions of this chapter pertaining to electric signs shall apply to such signs.

*Embellishments* means any feature such as a cutout, neon, or plastic letters, clock, electric device, or space extension, which is added to an outdoor advertising structure. All embellishments shall be included when measuring the sign area.

*Feather banner* means any sign that is constructed of lightweight material (such as cloth, canvas, or vinyl) affixed to a pole or building which is similar to a flag, except that it is longer than it is wide. A feather banner resembles a feather, in that it is tall and narrow, having more surface area vertically than horizontally when fully extended.

*Flag,* means any rectangular piece of cloth or similar material, attachable by one edge to a pole or rope and designed to be fully unfurled or displayed in natural wind conditions. A pennant sign is not considered a flag.

*Flashing sign* means any directly or indirectly illuminated sign that exhibits changing natural or artificial light or color effects by any means whatsoever.

*Government sign* means any sign that is installed or maintained by the federal, state, or local government. Local government includes any political subdivision including the county, the City, the school district, the water district, or an emergency services district.

*Install* means to construct, erect, place, affix, display, or attach.

*Loop 1604 frontage* means and shall include all Loop 1604 frontage and access roads.

*Monument sign* means any sign that is a ground-mounted structure of masonry, rock, brick, stone, or stucco. Monument signs shall have a minimum of 90 percent masonry materials such as rock, brick, stone, or stucco. Concrete and cinder blocks may be used structurally if faced with rock, brick, or stucco in accordance with the International Building Code.

*Neighborhood* means a distinct segment of the community, usually consisting of essentially similar housing stock, whose boundaries are defined by physical barriers such as major arterial streets and/or natural features such as creeks and rivers.

*Non-conforming sign* means any sign lawfully in existence on the date the provisions of this chapter are adopted that do not conform to the provisions of this chapter, but which were in compliance with the applicable regulations at the time they were installed or maintained.

*Pennant sign* means any non-rectangular sign of lightweight material suspended from a rope, wire, or string and displayed in a series with or without a message, designed to move in the wind. A pennant sign is not considered a flag.

*Pole sign* means any sign:

(1) Supported by poles, uprights, or braces which are not concealed in an enclosed base but are permanently installed on or in the ground and wholly independent of any building for support, either single- or double-faced;

(2) Whose only structural support consists of exposed poles, posts, beams, or other devices mounted in the ground;

(3) Whose structural support extends sign area at least 10 feet above grade; and

(4) Is commonly referred to as a billboard.

All pole signs require approval in an Urban Corridor sign plan – see Chapter 24, Article II for Urban Corridor sign regulations.

*Portable sign* means any sign that is readily capable of being moved or removed, whether attached or affixed to the ground or any structure that is typically intended for temporary display. Portable signs include, but are not limited to:

(1)  Signs designed and constructed with a chassis or support with or without wheels;

(2)  Menu and "sandwich" board signs;

(3)   "A" and "T" frame signs;

(4)   Posters, flags, or banners affixed to windows, fences, railings, overhangs, trees, hedges, or other structures or vegetation;

(5)   Searchlights; and

(6)   Inflatables.

For the purposes of this definition, no sign owned or installed by the City, the State, or a public utility shall be considered a portable sign.

*Premises* means any site on which a sign is requested, required, or installed including any lot, area, facility, or building which the responsible party owns, leases, or has a right to use.

*Private property* means all property other than public property, as defined herein.

*Prohibited neon* means any use of neon lighting other than for lettering or logos. For the purposes of this chapter, all uses of neon lighting shall be considered a sign.

*Public property* means property owned by, or dedicated to the City, or owned by, or dedicated to other governmental entities. Signs located on public property shall be governed by a separate City policy.

*Pylon sign* means any freestanding sign with visible support structures or with a support structure with a pole cover or pylon cover.

*Responsible party* means the owner/operator of the business being identified on the sign; the owner of the property upon which the sign or sign structure is located; the owner of the sign or sign structure; the person who installs a sign or sign structure, contracts with or directs a person to accomplish the installation; and/or the person who retrieves a sign from the impound.

*Right-of-way* means the area on, below, or above a public road, highway, street, public sidewalk, alley, waterway, or utility easement in which a governmental entity has an interest.

*Safety signs* means any sign on an office or business property which point or direct a person or vehicle to a specific place or along a specific course in order to ensure the safe and orderly passage of vehicles and persons around the premises of a building, such as "entrance," "exit," "handicap access," "employee access only" or "patient drop off."

*Setback* means the line within a lot defining the minimum horizontal distance between a building and the property line. Building setback lines include front, rear, and side setbacks that are measured from the front, rear, and side property lines. Signs installed within building setbacks, when authorized, should not obstruct traffic vision.

*Sign* means an outdoor structure, sign, display, light device, figure, painting, drawing, message, plaque, poster, or other thing that is designed, intended, or used to advertise or inform.

*Sign area* means the area of a sign that is used to determine the maximum area of a sign including the entire advertising or communicative area of a sign. Unless otherwise addressed, sign area is measured from the highest, lowest, and widest points in a rectangular or square format. Sign area size restrictions shall apply to each respective side of the sign structure.

*Site* means a parcel of land developed for commercial or residential use. A site may be a single platted lot, or may be a group of lots with a common or shared frontage.

*Voting period* means the period beginning with the first day of the early voting period and ending when the polls close on the designated election day. The voting period corresponds only with elections administered by Bexar County.

*Wall sign* means any sign installed on the wall of a building or structure, with the exposed face of the sign parallel to the surface of the wall of the building.


Sec. 24-3. - Prohibited signs.

Except as otherwise provided for in this chapter, it is an offense for a responsible party to install or maintain, or cause to be installed or maintained, on private property located in the City, any advertising bench, animated, or moving sign, awning, canopy, or marquee sign, back-to-back sign, bandit sign, bill poster, electric sign, embellishment, flashing sign, monument sign, prohibited neon, blinking, rotating, moving, or intermittently illuminated sign, pole sign, portable sign, pylon sign, any sign protruding above the building roof line or parapet line, painted or Day-Glo colored sign, banner sign, valance or display constructed of cloth, canvas, light fabric, paper, pliable vinyl, plastic, or other light material, feather banner, pennant, wall sign, any sign installed in exchange for a monetary or bartered benefit, any sign displaying any matter in which the dominant theme of the material taken as a whole appeals to the prurient interest in sex, or is patently offensive because it affronts contemporary community standards relating the description or representation of sexual matters, and is utterly without redeeming social value. Such action is hereby declared to be a public nuisance. Any sign not specifically listed as being allowed in this chapter is expressly prohibited. A responsible party shall not install a sign in the right-of-way or on property owned or controlled by the City without specific written permission of the City Council. All signs installed without the permission of the property owner of the land upon which the signs is installed is considered a prohibited sign.


Sec. 24-4. - Grandfather provisions.

This chapter is not intended to require the relocation, reconstruction, or removal of a sign which is already in place at the time of the adoption of the ordinance from which this chapter is derived and which was installed in compliance with local ordinances, laws and regulations applicable at the time of its installation, to the extent that Tex. Local

Government Code Chapter 216 preempts the application of this chapter to those signs or to any signs otherwise approved pursuant to Ordinance 100-03-99, as amended from time to time, or by City Council approval, provided that all such signs are constructed in accordance with such approval.

Sec. 24-5. - Non-nuisance signs in business and office districts.

The following signs are not deemed to be a public nuisance and may only be installed within the City limits in accordance with the following terms and conditions:

(1)   *Construction development.* Upon final approval of a construction permit, three signs may be installed temporarily on the property of the approved plat or development, provided however, that such signs shall not exceed a total of 128 square feet in sign area and that no one sign exceeds 64 square feet in sign area. Sign area for construction development shall include its framing, trim and molding. The signs shall be installed so as not to interfere with the occupancy or use of any neighboring lots. Such signs shall only be installed during the time of active and ongoing building construction and shall be removed upon the issuance of the certificate of occupancy for the development. A responsible party shall not install any sign in the right-of-way.

(2)   *Post-certificate of occupancy.* Beginning at the time of the issuance of the certificate of occupancy, a single sign may be installed temporarily on each approved plat or development, provided, however, that such sign shall not exceed 64 square feet in sign area. Sign area for post-certificate of occupancy signs shall include its framing, trim and molding, but shall not include the pole or pylon of the sign. The signs shall be installed so as not to interfere with the occupancy or use of the business or office development. All such signs shall be installed for a maximum of one continuous 90-day period from the issuance of the certificate of occupancy. A responsible party shall not install any sign in the right-of-way.

(3)   *Monument signs.* Monument signs shall be permitted subject to the following specifications:

a.   In general. In business and office districts each property fronting a public or private street shall be allowed one monument sign. Properties fronting two public or private streets shall be allowed one monument sign on each street, for a total of two monument signs. Monument signs may have a sign inserted into the structure provided the sign area of the insert shall not exceed 75 percent of the average height and/or 90 percent of the average width of the structure. The sign insert may be backlit or externally illuminated.

b.   Monument signs fronting Loop 1604 frontage.

1. Monument signs fronting Loop 1604 frontage shall not exceed 25 feet in height from the top of the sign to the ground, except as expressly provided in Sec. 24-5(3)b.2.

2. For properties where the site elevation is below the adjacent driving lanes of Loop 1604, monument signs shall not exceed 25 feet in height as measured from the top of the sign to the adjacent elevation of the Loop 1604 driving lanes, nor shall such monument signs exceed 48 feet in height as measured from the top of the sign to the ground.

3. Each monument sign located along Loop 1604 frontage shall not exceed an average of 25 feet in width at the base and not exceed an average of 20 feet in width above the base. The base shall not be less than 75 percent of the average width of the sign. The base of the monument sign can include safety and directional information.

4. The sign area insert of a monument sign shall not exceed 150 square feet of sign area per side.

c. Monument signs fronting NW Military Highway.

1. Monument signs fronting NW Military Highway shall not exceed 12 feet in height as measured from the top of the sign to the ground.

2. Monument signs located on NW Military Highway shall not exceed an average of 15 feet in width at the base and not exceed an average of ten feet in width above the base. Monument signs on NW Military Highway do not require that a base be constructed. If a base is constructed on the monument sign, the base can include signage for name and/or address of the commercial center.

3. The sign area of the insert of a monument sign shall not exceed 55 square feet of sign area per side excluding the trim and base of the monument sign, if any. The base of the sign shall be considered when determining the height of the sign.

d. Monument signs fronting any other road.

1. Lots with street frontage greater than 250 feet. Monument signs fronting any road other than Loop 1604 frontage or NW Military Highway shall not exceed ten feet in height as measured from the top of the sign to the ground.

2. Lots with street frontage less than 250 feet. Monument signs fronting any road other than Loop 1604 frontage or NW Military Highway shall not exceed six feet in height as measured from the top of the sign to the ground.

3. The sign area of the insert of a monument sign shall not exceed 50 square feet excluding the trim and the base of the sign, if any.

e.   Convenience stores. Each convenience store, as defined by Sec. 36-1 of the City of Shavano Park Code of Ordinances, may install one monument sign with electric display that conforms with this section. Convenience stores fronting on two streets shall be allowed one monument sign with electric display facing each street. The electric sign shall not be neon, blinking, rotating, animated, moving, flashing, or intermittently illuminated. The monument sign shall meet all other requirements in this Code.

(4)   During the period that a property is for sale, rent or lease an additional sign of not more than 64 square feet is permitted, provided such sign is located entirely within the property to which the sign pertains, is not illuminated, and is removed within ten days after the sale, rental or lease has been consummated. Commercial lots fronting on two streets shall be allowed one sign of not more than 64 square feet facing each street. Sign area for a sign under this section shall include framing, trim and molding.

(5)   Multi-tenant buildings.

a.   Each multi-tenant building that has exterior access to individual businesses may attach one wall sign, and one awning sign for each window and/or exterior door, as set forth in this subsection. This sign shall be compatible with the character of the premises upon which it is installed. Each sign shall require a permit, which may be obtained separately or within a building permit. Such signs shall not exceed an aggregate of 50 square feet of sign area per wall per business on up to two walls.

b.   Each multi-tenant building that has interior access to individual businesses or office suites shall be permitted either:

1.   For a building less than 30,000 square feet in area, up to three wall signs may be installed on one side of a building, and said signs shall not collectively exceed 150 square feet in sign area with no one sign exceeding 120 square feet; or

2.   For a building over 30,000 square feet in area, up to five wall signs may be installed on the building, and said signs shall not collectively exceed 250 square feet in sign area with no one sign exceeding 120 square feet.

3.   Sign area for a wall sign under this section shall include all area of the sign including the trim. The sign's framing, trim molding and/or supporting structure shall not protrude above the building roof line or parapet line.

c.   All illuminated signs directed toward residential areas shall comply with Sec. 24-7.

(6)   Single-tenant buildings. Each single-tenant building may have one wall sign, and in addition one awning sign for each window and/or exterior door, subject to the limitations of this section. Such signs shall not exceed an aggregate of 50 square feet of sign area per wall on up to three walls. Sign area for a wall sign

under this section shall include all area of the sign including the trim. The sign's framing, trim molding and/or supporting structure shall not protrude above the building roof line or parapet line.

(7)   If any sign is installed on a building structure, the sign and its framing, trim molding and/or supporting structure shall not protrude above the building roof line or parapet line.

(8)   Safety and directional signs. Signs on office or business property which point or direct a person or vehicle to a specific location or along a specific course in order to ensure the safe and orderly passage of vehicles and persons around the premises of a building, such as "entrance", "exit", "handicap access", "employee access only" or "patient drop off" are allowable provided they are no larger than six square feet in sign area. Sign area for a sign under this section shall include trim, molding, and framing, but shall not include the pole or pylon of the sign, if any.

(9)   Permits.

   a.   No non-nuisance signs in business or office districts shall be installed within the City unless a building permit for such sign has first been issued by the City's building official. The permit application shall be accompanied by engineered drawings and a site plan showing the proposed sign location.

   b.   An electrical permit shall be required for any sign requiring the use of electricity in the operation of such sign.

   c.   The responsible party must make application for a sign permit, shall pay a fee in the amount as specified in the schedule of fees as approved by the City Council, and secure the permit before beginning work.

   d.   If the City Manager or the City Manager's designee finds that the proposed sign conforms in all respects to this chapter, the City Manager shall issue the permit; otherwise the City Manager shall deny it.

   e.   Any permit that does not comply with the provisions of the chapter or which is issued in violation of any provision hereof shall be void, and no right or privilege whatsoever shall accrue thereunder.

   f.   The City Manager shall instruct the building official to immediately inspect all permitted signs upon completion to determine compliance with the permit.

   g.   An applicant or responsible party may appeal any denial of a permit or determination that a sign has not been built in compliance with a permit to the Board of Adjustment as described in Sec. 24-15.

   h.   No responsible party may reinstall, move, alter, modify, or relocate any sign which requires a permit without first obtaining a sign permit from the City. Changing the price of advertised goods or services alone  shall not require an additional permit.

Sec. 24-6. - Non-nuisance signs in residential zoning districts.

In A-l, A-2, A-3, A-4, A-5 PUD, MXD and CE zoning districts the following signs are hereby not deemed to be a public nuisance and do not require a permit unless specifically required below:

(1)   Subdivision sign. Upon final plat approval, a single sign may be installed temporarily on each approved plat or development property, provided, however, that such sign shall not exceed 64 square feet in sign area. Sign area for a subdivision sign shall include its framing, trim and molding, and shall be installed so as not to interfere with the occupancy or use of any lots in the subdivision. All such signs shall be removed upon completion of the sale of 95 percent of the lots in the subdivision. Such sign shall not be more than ten feet in height.

(2)   Temporary sign. Each residential property may erect one temporary sign  on the property that conforms to the following requirements:

   a.   A responsible party may install a sign in such a manner that it may be viewed from the public right-of-way for up to 60 days per calendar year;

   b.   The gross sign area shall not exceed six square feet in sign area. Sign area for a temporary sign under this section shall include framing, trim and molding;

   c.   The sign shall not be higher than six feet above grade; and

   d.   The sign cannot be illuminated or backlit.

(3)   Residential signs. Each residential property may erect two signs that conform to the following requirements:

   a.   Each sign cannot exceed four square feet in sign area. Sign area for a temporary sign under this section shall include framing, trim and molding;

   b.   Signs shall be installed within ten feet of the front facing of the primary residence;

   c.   Signs shall not be higher than four feet above grade; and

   d.   The signs shall not be illuminated or backlit.

(4)   During the period the residential property is listed for sale or lease, an additional sign may be installed on the property, subject to the restrictions noted in Sec. 24-6(2)b—d. Residential lots fronting on two streets shall be allowed one sign facing each street.

(5)   Voting period signs. During voting periods as defined in Sec. 24-2, each residential property may install additional signs in addition to those described in Sec. 24-6(2), subject to the following restrictions:

a.   No sign shall be installed more than 60 days prior to the start of the voting period;

b.   All signs shall be removed by 11:59 p.m. the day following the end of the voting period;

c.   The total sign area of all voting period signs shall be no more than 44 square feet, and no one sign shall be larger than 36 square feet;

d.   A sign shall not be higher than six feet above grade including its pole or pylon;

e.   The signs shall not be illuminated or backlit; and

f.   Sign area for signs under this section shall include all including trim, molding, and framing of the sign. The pole or pylon of the sign shall be considered for height above grade, but shall not be considered part of the sign area.

(6)   Neighborhood monument signs. Neighborhood monument signs may be installed on property owned by a property owner's association and shall be a maximum of ten feet in height and shall not exceed an average of six feet in width above the base, regardless of location. The base shall be included in measuring the maximum height of the sign. This sign requires a permit. This sign shall not be installed in the right-of-way without approval of the City Council.

(7)   Street monument signs. Street monument signs may be installed subject to approval of the City Council.

(8)   Each residential property shall prominently display its address as to be easily legible from the adjacent street. Addresses and monuments displaying the address shall not constitute a sign in terms of limiting or eliminating the rights to a sign as allowed in other sections of this chapter.

(9)   No sign shall be installed on public property including a public easement or right-of-way unless otherwise specified in this chapter.

(10)   Signs installed in violation of these regulations are considered a nuisance and may be removed by the City Manager or their designee. A sign so removed under the provisions of this section which has more than minimal value as determined by the City Manager shall be kept in storage for a period of ten days, and if it is not claimed by the responsible party within said period, it may be disposed of in a lawful manner. The City Manager may send notice to the sign owner within three business days of removing the sign if the sign owner's contact information is reasonably discernible from the sign itself.


Sec. 24-7. - Exterior lighting and hours for business and building wall signs.

Exterior lighting of the building and building wall signs shall not exceed the maximum height of the building or wall sign. Lighting for signs fronting on any street

other than streets adjacent to or abutting commercial property shall be turned off not later than 11:00 p.m. or one-half hour after the business is no longer open to the public, if earlier. All signs shall be compliant with the outdoor lighting requirements of chapter 14 as well as all requirements of this chapter.

Sec. 24-8. - Displayed address of commercial property.

Each commercial establishment shall prominently display its address as to be easily legible from the adjacent street. Addresses and monuments displaying the address shall not constitute a sign in terms of limiting or eliminating the rights to a sign as allowed in other sections of this chapter.

Sec. 24-9. - Authorized signs.

The following signs under this section are authorized in every zoning district or property without a permit, unless specifically required below:

(1)   Government signs.

(2)   Traffic-control devices that are installed and maintained to comply with the Texas Manual on Uniform Traffic-Control Devices.

(3)   Signs required by this chapter.

(4)   Signs required by other law, including federal, state, or local law, including a sign that a property owner is required to post on the owner's property to warn of a danger or to prohibit access to the property either generally or specifically; the owner must comply with the federal, state, or local law to post a sign on the property.

(5)   Official governmental notices and notices installed by governmental officers in the performance of their duties for regulatory purposes such as neighborhood crime watch areas, to identify streets, or to warn of danger including those installed by the City, county, water district, or other governmental entity.

(6)   Signs displayed on trucks, buses, trailers, mobile food units, or other vehicles that have a sign area, including the entire communicative area of the vehicle, which is less than 32 square feet and are being operated as motor vehicles, provided that the primary purpose of the vehicles is not for display of signs and provided that they are parked in areas appropriate to their use as vehicles as regulated by chapter 36 of the Code of Ordinances, are in operable condition, and carry a current and valid license plate and state inspection tag. Vehicle signs shall conform to the following restrictions:

a.   Vehicular signs shall contain no flashing or moving elements;

   b.   Vehicular signs shall not be attached to a vehicle so that the driver's vision is obstructed from any angle; and

   c.   Signs, lights and signals used by authorized emergency vehicles shall not be restricted.

(7)   Vending machine signs where the sign is not larger than the normal dimensions of the machine to which the sign is attached.

(8)   Memorial signs or tablets when cut into any masonry surface or attached to a building when constructed of bronze or other metal up to six square feet as part of a building.

(9)   Any sign wholly within the confines of a building, and oriented to be out of view from outside the building.

(10)   Flags in a business or office zoning district. Each business property is allowed to install up to four flags on up to three flagpoles. Each flag may be no larger than 60 square feet in area. Flagpoles shall be no taller than 40 feet in height nor higher than the highest point of the nearest principal building's roof on the premises.

(11)   Flags in a residential zoning district. Each residential property is allowed to install up to four flags on up to three flagpoles. Each flag may be no larger than 40 square feet in area. Flagpoles shall be no taller than 25 feet in height nor higher than the highest point of the nearest principal building's roof on the premises.


Sec. 24-10. - Destroyed nonconforming signs.

An existing nonconforming sign in the City shall not be repaired or rebuilt in the case of obsolescence, dilapidation, or destruction by fire or other causes. In case of partial destruction by fire or other causes, where the cost of repairing the sign is less than 60 percent of the cost of installing a new sign of the same type at the same location, the City Manager or the City Manager's designee may issue a "no fee" permit for the necessary repairs to be made to the sign. If the necessary repairs are not completed within 60 days of the receipt of written notification to the responsible party by the City Manager or the City Manager's designee, then the sign shall be removed either by the responsible party or by the City at the responsible party's expense. Criminal or civil penalties may also be initiated against the responsible party as provided for in this chapter. If the cost of rebuilding or repair of an existing nonconforming sign exceeds 60 percent of the cost of installing a new sign of the same type at the same location, the sign shall be removed at the responsible party's expense. If the sign is not removed within 30 days of written notification to the responsible party, then it shall be removed by the City or its designated agent(s) at the responsible party's expense. A sign so removed under the provisions of this section shall be kept in storage for a

period of 60 days, and if it is not claimed within said period, it may be disposed of in a lawful manner by the City.

Sec. 24-11. - Abandoned or discontinued signs.

An abandoned or discontinued sign is a sign that advertises a business or project that has ceased operations for more than one year, unless the property is leased, in which case the sign shall be removed after two years. The responsible party shall remove any sign and/or sign structure that has not been used for advertising or promoting a going concern for at least one year. For the purposes of this section, a business or project has ceased to operate when it is no longer engaged in the sale of products or services in the normal course of business. A violation of this section is an offense.

Sec. 24-12. - City Council sign approval.

(a)   On Loop 1604 frontage only and more than 150 feet from NW Military Highway, the City Council may, at its sole discretion, approve pole/pylon signs within the following parameters: one sign per site with a maximum height of 48 feet from the top of the sign to the site grade, but not to exceed 25 feet above the adjacent driving lane of Loop 1604. This sign area shall not exceed 150 square feet per side (two sides maximum) and may be allowed in place of, or in addition to, any signs allowed by other provisions of this chapter. On a corner lot that qualifies for two monument signs the total sign area allowance may be adjusted up to 70/30 for the major artery, (i.e. A total of 100 square feet of sign area may be allocated 70 square feet on Lockhill Selma Road and 30 square feet on DeZavala Road.) Such reallocation shall be at the sole discretion of the City Council.

(b)   The City Council reserves the right to establish policies governing signage on City property.

Sec. 24-13. - Authority to enforce the ordinance; issue citation.

(a)   The City Manager is authorized by City Council to enforce this ordinance. The City Manager or the City Manager's designee shall review sign regulations, permit applications, nonconforming uses and destruction, and other requests under the ordinance unless otherwise defined by this section. Any final decision made by the City Manager may be appealed to the Board of Adjustment by the responsible party.

(b)   In this chapter the term "City Manager" also includes any person designated by the City Manager to act on behalf of the City Manager to carry out the enforcement of this ordinance.

(c)   The City Code Compliance Officer (or such other individual or classification of individuals as may be designated by the City Manager) may issue a citation requiring the removal, relocation, or reconstruction of any sign which does not meet the spacing, height, and size requirements of this chapter and other City ordinances for which the installation began on or after the effective date of the ordinance from which this chapter is derived. All safety signs shall be approved by the City Code Compliance Officer.

Sec. 24-14. - Removal of prohibited bandit signs.

Bandit signs may be removed and discarded without notice notwithstanding any conflicting regulation or requirement within this section. These signs will not be stored by the City but will be discarded.

Sec. 24-15. - Variances.

Any responsible party, business, or other organization desiring to install, continue to install, reinstall, relocate, alter, or use any sign which does not conform to the provisions of this chapter may make application to the Board of Adjustment for a variance to the provisions of this chapter. All variances shall be handled in accordance with the provisions of Article V of Chapter 36 – ZONING of the City of Shavano Park Code of Ordinances.

Sec. 24-16. - Violations to be reported as nuisances.

It is an offense for a responsible party to install a sign in violation of this ordinance. Signs posted or installed in violation hereof are hereby declared to be public nuisances and such violations shall be reported promptly to the Chief of Police or City Code Compliance Officer.

Sec. 24-17. - Provisions cumulative.

This chapter shall be cumulative of all provisions of ordinances of the City of Shavano Park, Texas, except where the provisions of this chapter are in direct conflict with the provisions of such ordinances, in which event the conflicting provisions of such ordinances are hereby repealed. Any and all previous versions of this chapter to the extent that they are in conflict herewith are repealed.

Secs. 24-18—24-50. - Reserved.

# II
# CODE AMENDMENT

Chapter 36, Article II. – URBAN CORRIDOR SIGNAGE of the City of Shavano Park Code of Ordinances is hereby amended to read as follows:

Sec. 24-51. - Purpose.

Within the City's jurisdiction, there may be roadway corridors that have been and/or will continue to be very significant to the City. These corridors are amenities and assets of great value to the City, its inhabitants and its economy. The City Council aims to preserve, enhance and perpetuate the value of these roadway corridors and hereby authorizes the establishment of urban corridors.

Sec. 24-52. - Designation criteria.

To be designated as an urban corridor, an area must meet one or more of the following criteria:

(1)   The corridor serves as a recognized primary entryway to the City.

(2)   There is substantial commitment of private resources for development of at least 50 percent of the street frontage.

(3)   The corridor traverses residential areas where housing is present along at least 50 percent of the street frontage.

Sec. 24-53. - Designation process.

(a)   This article authorizes the establishment of urban corridors within the City's jurisdiction to regulate sign standards. Ordinances designating each urban corridor shall identify the designated street corridor and specify the sign standards for that corridor.

(b)   Application for designation of a specific urban corridor shall be initiated by submission to the City Manager of an application in compliance with Sec. 24-54 through Sec. 25-58. After reviewing the application for its compliance with Sec. 24-54 through Sec. 25-58, the City Manager shall forward any application found to be in compliance to the Planning &Zoning Commission.

(c)   The Planning &Zoning Commission shall hold one or more public hearings on a proposed urban corridor sign application and submit a recommendation to the City Council, and each public hearing shall be subject to the general notice standards that

apply to zoning cases. The City Council shall also hold a public hearing prior to considering a proposed urban corridor sign application, which shall be subject to the general notice standards that apply to zoning cases.

Sec. 24-54. - Sign standards.

(a)   *General.* Ordinances establishing specific urban corridors may include requirements for signs subject to the guidelines included herein. Specific corridor ordinances may include more or less restrictive standards for signs. All signs must be located solely within the specific urban corridors. In the event of a conflict between a specific corridor ordinance and other provisions of this Code, the specific corridor ordinance shall apply.

(b)   *Application.* As part of each application, the applicant must submit proposed terms and conditions for an Urban Corridor Signage Ordinance, subject to approval by both the City's Planning & Zoning Commission and City Council. The application shall be subject to negotiation and approval by the City's Planning & Zoning Commission and final revision and approval by City Council as provided herein. In such agreement between the City and such party or parties establishing a sign corridor with the City (collectively with the City the "Parties"), the Parties shall specifically provide the following in an Urban Corridor Signage Ordinance:

(1)   Agreement term;

(2)   Terms for extensions;

(3)   Replacement schedule;

(4)   Technical drawing of proposed signage;

(5)   Master component list for non-masonry components, including heights, widths, grades, finishes, and types of components;

(6)   Lighting limitations, if any;

(7)   Maintenance, including replacement of faded sign fronts; and

(8)   Other information as follows:

   a.   Legal description and exhibit of the property on a scaled map sufficient to determine details showing the area to be included in the urban sign corridor;

   b.   An exhibit showing the location and type of each sign to be located within the urban corridor sign plan;

   c.   An exhibit showing the height of each sign and the sign area of each sign to be located within the urban corridor sign plan; and

   d.   An exhibit showing the architectural drawings for each sign to be located within the urban corridor sign plan.

(c)   *Acreage limitation.* Such party or parties seeking to establish an urban corridor with the City must own or control by agreement with other property owners not less than 50 acres of real property eligible for commercial development and/or real property previously developed as commercial property located along the west side of Lockhill Selma Road or the within 600 feet of improved roadway for Loop 1604.

(d)   *Prohibited signs.* Unless expressly authorized by the City Council to create a unifying theme in a specific urban corridor, signs otherwise prohibited under this chapter are prohibited as urban corridor signage.

(e)   *Temporary signs.* The City Manager shall have the authority to issue permits and approve temporary signs as urban corridor signage within the following limitations:

(1)   Temporary signs shall only be displayed for a maximum of one continuous 90-day period beginning no earlier than 30 days from the date of the issuance of the certificate of occupancy;

(2)   No more than three temporary signs shall be allowed during the continuous 30-day period noted above; and

(3)   All temporary signs in total shall not exceed more than 200 square feet in sign area, including framing, trim and molding.

Sec. 24-55. - Corridor pole signs.

Corridor pole signs shall be designed with a uniform branding logo approved by the City Council comprised of materials specifically authorized in the Urban Corridor Signage Ordinance. Permitted pole signs shall be placed no more frequently than every 150 linear feet of street frontage. A pole sign shall not be erected closer than every 150 linear feet along one side of the street to another pole sign.

Sec. 24-56. - Urban corridor sign plan.

The City Council, after receiving a recommendation from the Planning & Zoning Commission, shall be responsible for approving the urban corridor sign plan, approving the urban corridor sign plan with conditions, or denying the urban corridor sign plan. In order for the Planning & Zoning Commission and City Council to consider an urban corridor sign plan, the applicant must submit the materials and design information specified in Sec. 24-54 to the City Manager not less than 45 days prior to consideration by the Planning & Zoning Commission.

Sec. 24-57. - Designation of the Loop 1604 urban corridor.

(a)   Location. The commercially zoned area fronting on the south right-of-way of Loop 1604 is hereby designated as the Loop 1604 urban corridor.

(b)   Tracts eligible for inclusion in the Loop 1604 urban corridor shall be those tracts which have a minimum of 1,000 feet of continuous frontage along Loop 1604.

(c)   The maximum height for a pole sign along Loop 1604 shall be 60 feet and a maximum of 12 feet for signage on any other street.

(d)   For 60-foot signs, the maximum allowable sign area for each pole sign in this corridor shall be 680 square feet, and for all other signs, the maximum allowable sign area for each pole sign shall 200 square feet.


Sec. 24-58. - Designation of the Lockhill Selma urban corridor.

(a)   Location. The commercially zoned area fronting on the west side of Lockhill Selma is hereby designated as the Lockhill Selma urban corridor.

(b)   Tracts eligible for inclusion in the Lockhill Selma urban corridor shall be those tracts, which have a minimum of 500 feet of continuous frontage along Lockhill Selma.

(c)   Within 100 feet of the City's city limits with the City of San Antonio, the maximum height for a pole sign in this corridor shall be 25 feet, and a maximum of 12 feet for any other signage.

(d)   The maximum allowable sign area for each pole sign in this corridor shall be 300 square feet.

## III
## CODE AMENDMENT

Chapter 36, Article III. – TABLES of the City of Shavano Park Code of Ordinances is hereby amended to read as follows:


### Table No. 1 - Chart of Sign Design Standards

| Type of Sign | Maximum Sign Area | Maximum Sign Height | Maximum Number of Signs | Permit Required | Conditions (Section Number) | Fee |
|---|---|---|---|---|---|---|
| **All Districts** | | | | | | |
| Government signs | n/a | n/a | n/a | No Permit | 24-9 | No fee |

| Vending machine | Size of machine | Size of machine | Equal to number of machines on site | No Permit | 24-9(7) | No fee |
|---|---|---|---|---|---|---|
| Memorial signs | 6 sq. ft. | n/a | n/a | No Permit | 24-9(8) | No Fee |
| **Residential Districts (A-I, A-2, A-3, A-4, A-5 PUD, MXD and CE)** | | | | | | |
| Neighborhood monument sign | 60 sq. ft. | 10 ft. | one | Permit required | 24-6(6) | No fee |
| Flags | 40 sq. ft. | Flagpole can be up to 25 ft. | four (one flagpole only) | No permit | 24-9(11) | No fee |
| Residential - subdivision sign | 64 sq. ft. | 10 ft. | One until completion of sale of 95 percent of lots | No permit | 24-6(1) | No fee |
| Residential - 4 sq. ft. signs | 4 sq. ft. | 4 ft. | Two signs | No permit | 24-6(3) | No fee |
| Residential - address (required) | n/a | n/a | One (required) | No permit | 24-6(8) | No fee |
| Residential - temporary sign | 6 sq. ft. | 6 ft. | One sign up to 60 days | No permit | 24-6(2) | No fee |
| Signs during the period that a | 6 sq. ft. | 6 ft. | One or Two signs | No permit | 24-6(4) | No fee |

| property is for sale, rent or lease | | | depending on location | | | |
|---|---|---|---|---|---|---|
| Signs during voting periods | 36 sq. ft. (one sign); 44 sq. ft. (aggregate) | 6 ft. | Unlimited so long as aggregate is 44 sq. ft. or less | No permit | 24-6(5) | No fee |
| **Business and Office Districts** | | | | | | |
| Construction development sign | 128 sq. ft. (aggregate) no one sign larger than 64 sq. ft. | | 3 (up to 128 sq. ft. aggregate)- only allowed until Certificate of Occupancy | Permit required | 24-5(1) | Based on sign area size |
| Temporary sign-post Certificate of Occupancy | 64 sq. ft. | | 1-only allowed for 90 days after the Certificate of Occupancy | Permit required | 24-5(2) | Based on sign area size |
| Wall/Window sign (multi-tenant with exterior access) | 50 sq. ft. (aggregate) | Building height | One per window/exterior door | Permit required | 24-5(5)a. | Based on sign area size |
| Wall/Window sign (multi-tenant with | 120 sq. ft. or 150 sq. ft. for up | Building height | Up to 3 wall signs per wall | Permit required | 24-5(5)b. | Based on sign |

| only interior access) | to three walls (aggregate) | | | | | area size |
|---|---|---|---|---|---|---|
| Wall/Window sign (multi-tenant with only interior access) and Building larger than 30,000 square feet. | 120 sq. ft. or 250 sq. ft. for up to three walls (aggregate) | Building height | Up to 5 wall signs total | Permit required | 24-5(5)b.2. | Based on sign area size |
| Wall/Window sign (single tenant) | 50 sq. ft. (aggregate) | Building height | One per window/exterior door | Permit required | 24-5(6) | Based on sign area size |
| Monument signs (1604 Frontage) | 150 sq. ft. | Varies by site elevation in relation to 1604 | One or Two signs depending on location | Permit required | 24-5(3)b. | $200.00 |
| Monument signs (NW Military) | 55 sq. ft. | 12 feet | One or two signs depending on location | Permit required | 24-5(3)c. | $200.00 |
| Monument signs (All other locations) | 50 sq. ft. | Varies by street frontage | One or two signs depending on location | Permit required | 24-5(3)d. | $200.00 |

| Signs during the period that a property is for sale, rent or lease | 64 sq. ft. | | One or two signs depending on location | Permit required | 24-6(4) | Based on sign area size |
|---|---|---|---|---|---|---|
| Flags | 60 sq. ft. | Flagpole can be up to 40 ft. | Four | No permit | 24-9(10) | No fee |

## IV
## CUMULATIVE CLAUSE

That this ordinance shall be cumulative of all provisions of the City of Shavano Park, Texas, except where the provisions of this Ordinance are in direct conflict with the provisions of such Ordinance, in which event the conflicting provisions of such Ordinance are hereby repealed.

## V
## SEVERABILITY

That it is hereby declared to be the intention of the City Council of the City of Shavano Park that the phrases, clauses, sentences, paragraphs, and sections of this Ordinance are severable, and if any phrase, clause, sentence, paragraph or section of this Ordinance should be declared unconstitutional by the valid judgment or decree of any court of competent jurisdiction, such unconstitutionality shall not affect any of the remaining phrases, clauses, sentences, paragraphs or sections of the Ordinances, since the same would have been enacted by the City Council without incorporation in this ordinance of any such unconstitutional phrases, clause, sentence, paragraph or section.

## VI
## PROPER NOTICE AND MEETING

It is hereby officially found and determined that the meeting at which this Ordinance was adopted was open to the public and that public notice of the time, place and purpose of said meeting was given as required by the Open Meetings Act, Chapter 551 of the Texas Government

# VII
# EFFECTIVE DATE

This ordinance shall be effective upon passage and publication as required by State and Local law.

**PASSED AND APPROVED** on the first reading by the City Council of the City of Shavano Park this the 25th day of October, 2021.

**PASSED AND APPROVED** on the second reading by the City Council of the City of Shavano Park this the 22nd day of November, 2021.

_____
**ROBERT WERNER**, MAYOR

Attest:

_____
**TRISH NICHOLS,** CITY SECRETARY