## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ETTA FANNING, MARY JANE SMOOT, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Civil Action No. SA-18-CV-00803-XR |
| | § | |
| CITY OF SHAVANO PARK, TEXAS, | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

## ORDER

On this date, the Court considered Defendant City of Shavano Park's motion for summary judgment (ECF No. 66), Plaintiffs Etta Fanning and Mary Jane Smoot's response (ECF No. 70), and Defendant's reply (ECF No. 73), as well as Plaintiffs' motion for summary judgment (ECF No. 67), Defendant's response (ECF No. 68), and Plaintiffs' reply (ECF No. 71). Although the parties filed separate motions for summary judgment, there is significant overlap among the arguments made in the motions and accompanying responses. Accordingly, the Court will address the motions together. After careful consideration, the Court issues the following order.

## BACKGROUND[1]

### I.    Facts

As all parties are extensively familiar with the facts in this case, the Court includes here only those facts necessary to its analysis of the pending motions for summary judgment.

---

[1] These facts are undisputed unless otherwise noted.

### A.  Plaintiff Fanning

Plaintiff Etta Fanning lives in the City of Shavano Park, Texas ("City"), in a gated community called Bentley Manor, which is governed by a homeowners' association ("HOA").[2] ECF No. 66 at 3. Plaintiff Fanning is one of the residents who volunteers to host an annual neighborhood party on the Fourth of July. *Id.* In years past, Plaintiff Fanning and others have used invitations and signs to invite the Bentley Manor community to the Fourth of July party. Plaintiff Fanning and other volunteers pay for the cost of the signs and other materials. In July 2018, Plaintiff Fanning and other volunteers planned the Fourth of July party, and distributed invitations and posted signs to promote it. But before the Fourth of July, a storm knocked down their signs and caused the cancellation of the party due to weather. A "raincheck party" was planned for July 28. On the morning of July 26, Plaintiff Fanning and other volunteers posted signs to promote the raincheck party: they hung banner signs on trees at two gate exits of Bentley Manor and placed three small yard signs on what they believed to be the private property of three homeowners who had given them permission to do so. As in years past, Plaintiff Fanning and other volunteers knocked on doors to ask their neighbors if they could place the yard signs in each yard to promote the party. *Id.* at 3–4. The signs were taken by the Shavano Park Chief of Police on the evening of July 26. *Id.* at 5.

Plaintiff Fanning alleges that, because the City removed and confiscated her signs:

> [S]he was unable to replace them so as to further advertise the Raincheck block party for July 28 and inform more neighbors of the gathering. . . . The City's retention of the signs prevented her from displaying her block party message from the time that the signs were removed by City law enforcement during the afternoon of Thursday, July 26, for all of Friday, July 27, and for all of Saturday, July 28.

*Id.* at 6.

---

[2] This case does not challenge any authority for an HOA to restrict signage in their communities.

### B.  Plaintiff Smoot

Plaintiff Mary Jane Smoot also lives in the City of Shavano Park, in a neighborhood without an HOA. ECF No. 67 at 3 n3. Plaintiff Smoot has run for Shavano Park Alderman three times, in 2015, 2016, and 2017. ECF No. 63 at 7.

When Plaintiff Smoot first ran in 2015, she distributed campaign yard signs that were placed in the residential yards of her supporters, with the homeowners' permission. Some of those signs were 4' x 8' in size. *Id*. at 8. Plaintiff Smoot alleges that her signs during that campaign were removed from a Shavano Creek subdivision but were allowed to stay up on the "old" side of the city, where she resides, which she alleges was a decision made by the City so that she would not notice their removal immediately. *Id*.

Plaintiff Smoot ran again in 2017. As part of her 2017 campaign, Plaintiff Smoot once again distributed campaign yard signs, including some that were 4' x 8'. She also paid for the preparation of a number of vinyl banner signs which were approximately 3' x 5'. Those vinyl signs read: "Vote for MJ and Walk Away." *Id*.

However, on Thursday, April 27, 2017, several weeks after Plaintiff Smoot had already informed City Manager Bill Hill ("Hill") that the signs were displayed with homeowner permission, Hill notified her by text message that she must remove her 4' x 8' signs from City Hall property and must remove all 4' x 8' signs on private property in the City, to comply with the Sign Code. *Id*. at 9. The following day, Hill notified Plaintiff Smoot that she must take down the 4' x 8' signs and vinyl banner signs from residential properties that same day. *Id*. In response to Hill's instructions, and in order to avoid having her signs destroyed or removed and held by the City in the midst of a campaign and during the early voting period, Plaintiff Smoot removed

ten of her campaign signs from different locations around the City that day, including some from residential property. *Id*.

Plaintiff Smoot's campaign signs were down and not communicating her campaign messages for four voting days, two of which were 12-hour days, which Plaintiff Smoot alleges negatively impacted her campaign. *Id*.

## II.   City of Shavano Park's Current Sign Code

Defendant City of Shavano Park is a Type A general-law municipality. ECF No. 66 at 6. Defendant City's current Sign Code has been amended since Plaintiffs Fanning and Smoot initially filed suit (in 2018 and 2019, respectively). The Defendant City's Code of Ordinances currently regulates signs in the following manner:

**Sec. 24-3. - Prohibited signs.**

> Except as otherwise provided for in this chapter, it is an offense for a responsible party to install or maintain, or cause to be installed or maintained, on private property located in the City, any advertising bench, animated, or moving sign, awning, canopy, or marquee sign, back-to-back sign, bandit sign, bill poster, electric sign, embellishment, flashing sign, monument sign, prohibited neon, blinking, rotating, moving, or intermittently illuminated sign, pole sign, portable sign, pylon sign, any sign protruding above the building roof line or parapet line, painted or Day-Glo colored sign, banner sign, valance or display constructed of cloth, canvas, light fabric, paper, pliable vinyl, plastic, or other light material, feather banner, pennant, wall sign, any sign installed in exchange for a monetary or bartered benefit, any sign displaying any matter in which the dominant theme of the material taken as a whole appeals to the prurient interest in sex, or is patently offensive because it affronts contemporary community standards relating the description or representation of sexual matters, and is utterly without redeeming social value. Such action is hereby declared to be a public nuisance. Any sign not specifically listed as being allowed in this chapter is expressly prohibited. A responsible party shall not install a sign in the right-of-way or on property owned or controlled by the City without specific written permission of the City Council. All signs installed without the permission of the property owner of the land upon which the signs is installed is considered a prohibited sign.

SHAVANO PARK, TX., CODE OF ORDINANCES § 24-3 (2021).

**Sec. 24-6. - Non-nuisance signs in residential zoning districts.**

In A-l, A-2, A-3, A-4, A-5 PUD, MXD and CE zoning districts the following signs are hereby not deemed to be a public nuisance and do not require a permit unless specifically required below:

(1)   Subdivision sign. Upon final plat approval, a single sign may be installed temporarily on each approved plat or development property, provided, however, that such sign shall not exceed 64 square feet in sign area. Sign area for a subdivision sign shall include its framing, trim and molding, and shall be installed so as not to interfere with the occupancy or use of any lots in the subdivision. All such signs shall be removed upon completion of the sale of 95 percent of the lots in the subdivision. Such sign shall not be more than ten feet in height.

(2)   Temporary sign. Each residential property may erect one temporary sign on the property that conforms to the following requirements:

   a.   A responsible party may install a sign in such a manner that it may be viewed from the public right-of-way for up to 60 days per calendar year;

   b.   The gross sign area shall not exceed six square feet in sign area. Sign area for a temporary sign under this section shall include framing, trim and molding;

   c.   The sign shall not be higher than six feet above grade; and

   d.   The sign cannot be illuminated or backlit.

(3)   Residential signs. Each residential property may erect two signs that conform to the following requirements:

   a.   Each sign cannot exceed four square feet in sign area. Sign area for a temporary sign under this section shall include framing, trim and molding;

   b.   Signs shall be installed within ten feet of the front facing of the primary residence;

   c.   Signs shall not be higher than four feet above grade; and

   d.   The signs shall not be illuminated or backlit.

(4)   During the period the residential property is listed for sale or lease, an additional sign may be installed on the property, subject to the restrictions noted in section 24-6(2)b—d. Residential lots fronting on two streets shall be allowed one sign facing each street.

(5)   Voting period signs. During voting periods as defined in section 24-2, each residential property may install additional signs in

addition to those described in section 24-6(2), subject to the
following restrictions:
    a. No sign shall be installed more than 60 days prior to the start
of the voting period;
    b. All signs shall be removed by 11:59 p.m. the day following
the end of the voting period;
    c. The total sign area of all voting period signs shall be no more
than 44 square feet, and no one sign shall be larger than 36
square feet;
    d. A sign shall not be higher than six feet above grade including
its pole or pylon;
    e. The signs shall not be illuminated or backlit; and
    f. Sign area for signs under this section shall include all
including trim, molding, and framing of the sign. The pole or
pylon of the sign shall be considered for height above grade,
but shall not be considered part of the sign area.

[. . .]

(10) Signs installed in violation of these regulations are considered a
nuisance and may be removed by the City Manager or their
designee. A sign so removed under the provisions of this section
which has more than minimal value as determined by the City
Manager shall be kept in storage for a period of ten days, and if it
is not claimed by the responsible party within said period, it may
be disposed of in a lawful manner. The City Manager may send
notice to the sign owner within three business days of removing
the sign if the sign owner's contact information is reasonably
discernible from the sign itself.

SHAVANO PARK, TX., CODE OF ORDINANCES § 24-6 (2021).

## III.   Procedural History

Plaintiff Fanning filed her lawsuit on August 3, 2018. ECF No. 1. After granting

Defendant City of Shavano Park's motion for summary judgment against Plaintiff Fanning (ECF

No. 44), the case was appealed to the Fifth Circuit. The Fifth Circuit determined that the decision

should be vacated and remanded the case to the District Court, but stated that, pending review of

*City of Austin v. Reagan National Advertising of Austin, LLC*, 972 F.3d 696 (5th Cir. 2020) by

the United States Supreme Court, "it would be acceptable if the district court concludes that it

should stay the proceedings on remand until such time as the Court issues its opinion." ECF No. 55 at 2–3.

In the companion case, Plaintiff Smoot filed her complaint on July 19, 2019. *See Mary Jane Smoot v. the City of Shavano Park*, 5:19-cv-00865-XR. Defendant City of Shavano Park and Plaintiff Smoot filed motions for summary judgment and the case was administratively closed pending resolution of *City of Austin*.

The Supreme Court issued its opinion in *City of Austin* on April 21, 2022. Plaintiffs' cases were consolidated into this present case on May 31, 2022. The case was thereafter reopened (ECF No. 57), and Plaintiffs filed their first amended complaint on August 23, 2022 (ECF No. 63). Defendant filed its first amended answer on August 31, 2022. ECF No. 64. On December 16, 2022, Plaintiffs and Defendant each filed a motion for summary judgment. ECF Nos. 66, 67. Responses and replies to each motion were subsequently filed. *See* ECF Nos. 70, 68, 71, 73.

Plaintiffs claim that the City of Shavano Park lacks authority under Texas law to impose a sign code. ECF No. 63 at 19–20. Plaintiffs further claim that, even if the City had authority to impose a sign code, it is preempted to the extent it conflicts with Texas Election Code § 259.003. *Id*. at 21–23. Finally, Plaintiffs claim that the general ban on all signs not otherwise approved, with an allowance for "one sign" that may be displayed no more than "60 days per calendar year," is facially unconstitutional because it is not appropriately tailored to any legitimate government interest. *Id*. at 23–24.

Plaintiffs seek a declaratory judgment that the Sign Code is illegal and unenforceable (because the City has no authority under Texas law to impose one, because it is preempted by Texas Election Code § 259.003, and because it is facially unconstitutional under the First

Amendment), as well as a permanent injunction enjoining Defendant from enforcing the Sign Code against Plaintiffs or any other persons, nominal damages for the violation of Plaintiffs' constitutional rights, both for the past violations and the continuing injury of chilled speech, compensatory damages, and reasonable and necessary attorneys' fees, expenses, and costs. *Id*. at 29.

## DISCUSSION

### I.     Legal Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en banc*, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."

*Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For the Court to conclude that there are no genuine issues of material fact, the Court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the Court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party, *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II.     Analysis

Plaintiffs bring claims for declaratory and injunctive relief, and damages, arising under the First and Fourteenth Amendments to the Constitution of the United States and the Texas Constitution. The Court first turns to two threshold issues, standing and general-law municipal authority to enact a sign ordinance.

A. **Standing / Mootness**

Defendant City of Shavano Park argues that Plaintiffs' complaint suffers from a standing issue. In reality, however, Defendant City's argument is actually related to mootness, and hinges on the argument that Plaintiffs' claims as they relate to banner signs are moot because there is a regulation now in place that bans all banner signs in the city. Plaintiffs contend that these banner sign claims are not mooted, and the Court agrees.

A claim is moot when it "presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents." *Goldin v. Bartholow,* 166 F.3d 710, 717 (5th Cir. 1999). A claim becomes moot when "the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496 (1969). "Mootness in this context is the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Goldin,* 166 F.3d at 717 (citation and quotation marks omitted). "Nor does it matter that the new ordinance differs in certain respects from the old one. . . . The gravamen of petitioner's complaint is that its members are disadvantaged in their efforts to obtain city contracts. The new ordinance may disadvantage them to a lesser degree than the old one, but . . . it disadvantages them in the same fundamental way." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 662 (1993).

The Court concludes that Plaintiffs' claims are not moot—the amended sign ordinances enacted by Defendant City of Shavano Park have not altered the gravamen of Plaintiffs' complaint. Plaintiff Fanning "wants to display banner signs at certain times in her discretion, and the sign code prohibits her from doing so. The injury is the prohibition on her speech. While changes to the structure of the sign code have changed some (not all) of the legal arguments she

raises, the injury remains the same." ECF No. 70 at 4. Plaintiff Smoot has similarly self-censored as she has been unable to display banner signs in her own discretion on her own property, and therefore her injury also remains the same. *Id*. at 5–6.

### B.  General-Law Municipality— Authority to Enact a Sign Ordinance[3]

Under Texas law, there are three types of municipalities: home-rule municipalities, general-law municipalities, and special-law municipalities. *Town of Lakewood Vill. v. Bizios*, 493 S.W.3d 527, 530 (Tex. 2016). These municipalities are "creatures of law" that are "created as political subdivisions of the state . . . for the exercise of such powers as are conferred upon them. . . . They represent no sovereignty distinct from the state and possess only such powers and privileges as have been expressly or impliedly conferred upon them." *Id* (internal quotation marks and citation omitted). While "[h]ome-rule municipalities derive their powers from the Texas Constitution and possess the full power of self[-]government and look to the Legislature not for grants of power, but only for limitations on their power[,]" general-law municipalities like Defendant City of Shavano Park "possess [only] those powers and privileges that the State expressly confers upon them." *Id*.; *see also Payne v. Massey,* 145 Tex. 237, 196 S.W.2d 493, 495 (Tex. 1946) (Type A general law municipalities derive their power from the general laws of the state and may exercise only such authority as is specifically delegated to them by the Legislature.).

There are three generally applicable statutes implicated in this case. First, Texas Local Government Code § 51.012 broadly gives Type A general law municipalities, like Defendant

---

[3] Defendant City of Shavano Park's reliance on the "law of the case doctrine" as it relates to this claim is misplaced. As Plaintiffs correctly contend, this doctrine "posits that ordinarily an issue of fact or law decided on appeal may not be reexamined either by the district court on remand or by the appellate court on subsequent appeal." *United States v. Wills*, 40 F.4th 330, 334 (5th Cir.), *cert denied*, 143 S. Ct. 464 (2022) (internal citations and quotations omitted). The Fifth Circuit opinion previously issued in this case did not discuss any state-law authority arguments. Indeed, it was Plaintiff Smoot's briefing in her original case that discussed at length the arguments about Defendant Shavano Park's ability to enact a sign ordinance under Texas law. Nothing prevents this Court from reviewing this claim.

City of Shavano Park, their ordinance-making powers. It specifically provides that: "The municipality may adopt an ordinance, act, law, or regulation, not inconsistent with state law, that is necessary for the government, interest, welfare, or good order of the municipality as a body politic." Tex. Local Gov't Code § 51.012; *see also* Tex. Local Gov't Code § 51.001 (providing generally that "[t]he governing body of a municipality may adopt, publish, amend, or repeal an ordinance, rule, or police regulation that: (1) is for the good government, peace, or order of the municipality . . . .").

The second statute implicated in this case is Texas Local Government Code § 216.901. This statute provides that "[a] *home-rule municipality* may license, regulate, control, or prohibit the erection of signs or billboards by charter or ordinance." Tex. Local Gov't Code § 216.901 (emphasis added). On its face, this statute appears to indicate that home-rule cities may enact sign ordinances, but makes no mention of the powers of general-law municipalities to enact similar sign ordinances.

The question now pending before the Court, then, is how to interpret § 216.901 and § 51.012 together. Defendant City of Shavano Park has offered no explanation regarding its authority to impose its current sign code.[4] For the reasons that follow, the Court concludes that abstention is appropriate and further clarity is needed to resolve the issue of whether state law precludes general-law municipalities from enacting sign ordinances like the ones enacted by Defendant City of Shavano Park in this case.

---

[4] Before the Fanning and Smoot cases were consolidated, Defendant City of Shavano Park, in its motion for summary judgment against Plaintiff Smoot, relied on citations to *Bizios*, 493 S.W.3d at 531 n.3, and a 2004 opinion from the then Attorney-General of Texas, Greg Abbott. GA-0192 (2004), to support its contention that as a Type A general municipality, it has the power to enact sign ordinances. Neither citation, however, supports Defendant's proposition that *general-law* municipalities specifically have the power to enact sign ordinances such as the ones that are the subject of the dispute.

First, the Court notes that the Texas Supreme Court has repeatedly held that "[l]aws expressly applicable to one category of municipalities are not applicable to others." *Bizios*, 493 S.W.3d at 531 (internal quotation marks and citation omitted). Because § 216.901 expressly mentions home-rule municipalities, but not general-law municipalities, and because other sections of Chapter 216 refer to municipalities generally, the Court is of the opinion that the Texas Legislature may have intended to exclude general-law municipalities in this context. *See, e.g.*, Tex. Local Gov't Code § 216.902 ("A *municipality* may extend the provisions of its outdoor sign regulatory ordinance . . . .") (emphasis added).

Second, two canons of construction are potentially implicated in construing these statutes in light of one another. The first canon is known as *expressio unius est exclusio alterius.* It provides that express reference to one matter excludes other matters and is often referred to as the negative-implication canon. The second canon of construction implicated in our analysis is *generalia specialibus non derogant*, which provides that, when there is a conflict between a general provision and a specific provision, the specific provision prevails. In the absence of case law interpreting these statutes, the Court relies on these canons to aid its construction and finds that both would potentially support Plaintiffs' theory that general-law municipalities lack the authority to enact sign ordinances under § 216.901, which would in turn permit the Court to avoid altogether or else substantially modify the constitutional question pending in this case.

Whether the explicit mention of home-rule municipalities in § 216.901 is a question of poor drafting or a deliberate attempt by the Texas Legislature to confine the powers of ordinance-making as it relates to general-law municipalities and the regulation of signs in the manner Defendant City of Shavano Park attempts is unknown and unclear to this Court. No case law directly on point seems to grapple with the tension between Chapters 51 and 216 of the

Texas Local Government Code in this context. Moreover, no relevant legislative history related to the Legislature's mention of home-rule municipalities, but not general-law municipalities, in § 216.901 is available.

The Court therefore concludes that, in light of these conflicting statutes and in the absence of case law interpreting either statute in this context, the Texas law is fairly susceptible to a reading that would prevent general-law municipalities from enacting sign ordinances such as the ones enacted by Defendant City of Shavano Park. While the Texas courts may certainly decide that general-law municipalities do in fact have the authority to enact sign ordinances, this Court is of the opinion that the law is uncertain enough on this issue that it should abstain from ruling on its federal constitutionality.[5]

"Under the *Pullman* doctrine, a federal court should abstain from exercising its jurisdiction 'when difficult questions of state law must be resolved before a substantial federal constitutional question can be decided.'" *Parm v. Shumate*, 73 F. App'x 78, at *2 (5th Cir. 2003) (quoting *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 236 (1984)).

In order for abstention based on *Pullman* to be appropriate, the case must involve: (1) a federal constitutional challenge to a state action and (2) an unclear issue of state law that, if resolved, would make it unnecessary for us to rule on the constitutional question. *Nationwide Mut. Ins. Co. v. Unauthorized Prac. of L. Comm., of State Bar of Texas*, 283 F.3d 650, 653 (5th Cir. 2002).

Regarding the first element, Plaintiffs' first amended complaint clearly challenges the federal constitutionality of a state action. *See* ECF No. 63 at 23 ("The general ban on all signs not otherwise approved, with an allowance for 'one sign' that may be displayed no more than '60 days per calendar year,' is facially unconstitutional because it is not appropriately tailored to any

---

[5] *See Bellotti v. Baird*, 428 U.S. 132, 143 n. 10 (1976) (*Pullman* abstention may be raised by the court *sua sponte*.).

legitimate government interest."). With regard to the second element, the unclear issue of state law pending before this Court is whether general-law municipalities, in light of Texas Local Government Code  § 216.901, have the authority to enact sign ordinances like the City of Shavano Park has enacted. Clarity on this statute would, if general-law municipalities lack authority to enact sign ordinances like the ones at issue in this case, render it unnecessary for this Court to rule on the facial constitutionality of the statute. Abstention in light of the *Pullman* doctrine is therefore sufficiently established in this case.

"*Pullman* abstention is generally appropriate only when there is an issue of uncertain state law that is fairly subject to an interpretation [by a state court] which will render unnecessary or substantially modify the federal constitutional question." *Thompson v. Hous. Auth. of New Orleans*, 689 F. App'x 324, 327 (5th Cir. 2017) (internal quotation marks and citation omitted).

It is important to note that the Fifth Circuit has repeatedly emphasized that "abstention is the exception, not the rule." *Nissan Motor Corp. in U.S.A. v. Harding*, 739 F.2d 1005, 1008 (5th Cir. 1984). Moreover, the fact that "state courts have not interpreted the subject statute [or ordinance] is not determinative: federal courts should exercise their jurisdiction if the state law in question is clear." *Id*. In this case, however, the state law in question is ambiguous. Accordingly, having determined that abstention is appropriate, the Court **DISMISSES THE SUIT WITHOUT PREJUDICE**. Plaintiffs shall be afforded a reasonable opportunity to bring appropriate proceedings in the Texas courts. "Because the Supreme Court of Texas has held that it cannot grant declaratory relief as long as a federal court maintains the case on its docket, *United States Life Insurance Co. v. Delaney*, 396 S.W.2d 855 (Tex. 1965), the only way to ensure the sequence of events contemplated by the abstention doctrine is to dismiss the case. *Ibarra v. Bexar County Hospital District*, 624 F.2d 44, 47 (5th Cir. 1980)." *Mireles v. Crosby*

*Cnty.*, 724 F.2d 431, 434 (5th Cir. 1984). "[T]he dismissal must not be used as a means to defeat the appellees' federal claims if and when they return to federal court." *Harris Cnty. Comm'rs Ct. v. Moore*, 420 U.S. 77, 89 (1975).

Finally, the Court notes that the final statute potentially implicated by this case is Texas Election Code § 259.003, as raised by Plaintiffs in their first amended complaint. *See* ECF No. 63 at 21–23. The Texas Election Code, in relevant part, provides:

### Regulation of Political Signs by Municipality

(a) In this section, "private real property" does not include real property subject to an easement or other encumbrance that allows a municipality to use the property for a public purpose.
(b) A municipal charter provision or ordinance that regulates signs may not, for a sign that contains primarily a political message and that is located on private real property with the consent of the property owner:
   (1) prohibit the sign from being placed;
   (2) require a permit or approval of the municipality or impose a fee for the sign to be placed;
   (3) restrict the size of the sign; or
   (4) provide for a charge for the removal of a political sign that is greater than the charge for removal of other signs regulated by ordinance.
(c) Subsection (b) does not apply to a sign, including a billboard, that contains primarily a political message on a temporary basis and that is generally available for rent or purchase to carry commercial advertising or other messages that are not primarily political.
(d) Subsection (b) does not apply to a sign that:
   (1) has an effective area greater than 36 feet;
   (2) is more than eight feet high;
   (3) is illuminated; or
   (4) has any moving elements.

Tex. Elec. Code Ann. § 259.003 (West). Having determined, however, that this Court should abstain from the case until there is clarity from the Texas courts about whether general-law municipalities like the City of Shavano Park may enact sign ordinances like the ones at issue in

this case. If Plaintiffs pursue this case in Texas state court, the tension between Texas Election Code § 259.003 and the other two previously mentioned statutes should also be raised.

## CONCLUSION

For the foregoing reasons, Plaintiffs' suit is **DISMISSED WITHOUT PREJUDICE.** A final judgment pursuant to Rule 58 shall issue separately.

It is so **ORDERED**.

**SIGNED** this 14th day of March, 2023.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE